UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------- x
JANELL WINFIELD, TRACEY STEWART, and
SHAUNA NOEL,

                                                   Plaintiffs,

-against-

                                                                       15 CV 5236 (LTS)(DCF)
CITY OF NEW YORK,

                                                   Defendant.
--------------------------------------------------------------------------- x

## DECLARATION OF COMMISSIONER VICKI BEEN IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**VICKI BEEN**, declares pursuant to 28 U.S.C. §1746, under penalty of perjury, as

follows:

1.      I am the Commissioner of the City of New York Department of Housing

Preservation and Development ("HPD"), a position that I have held since February 2014.   As

Commissioner of HPD, I am responsible for leading the nation's largest municipal housing

agency.  This declaration is based upon my personal knowledge, conversations with employees

of the City of New York, and my review of records maintained by the City of New York.

2.      I submit this declaration in support of defendant's motion to dismiss the

claims asserted in the plaintiffs' First Amended Complaint, and to provide an overview of HPD-

sponsored affordable housing programs, tax incentive programs administered by HPD, and the

New York State Real Property Tax Law ("RPTL") § 421-a Tax Exemption Program.  I also

submit this declaration to provide facts regarding the affordable housing lotteries at the

developments located at 160 Madison Avenue, New York, New York; 200 East 39th Street, New

York, New York; and 40 Riverside Boulevard, New York, New York (the "subject

developments"), and plaintiffs' application status at said developments.

3.     Affordable housing, in safe, high-opportunity neighborhoods, is a basic human need. Every New Yorker deserves a safe and affordable place to live, in a neighborhood that provides opportunities for residents to thrive. Recognizing this essential need, HPD's mission is to promote the construction and preservation of affordable, high quality housing for low and moderate-income families in thriving and diverse neighborhoods in every borough, by enforcing housing quality standards, financing affordable housing development and preservation, and ensuring sound management of the City's affordable housing stock.

4.     The City is deeply committed to fair housing. Indeed, the City's five-borough Housing Plan was developed to "address the City's affordable housing crisis" by "fostering diverse, livable neighborhoods."[1] The five-borough Housing Plan aims to create and preserve 200,000 units of affordable housing throughout the City. The most comprehensive affordable housing plan in the City's history and largest municipal housing plan in the nation, its goal is to help address the City's affordability crisis by providing new, or preserving existing, affordable housing for more than half a million New Yorkers ranging from those with very low incomes to those in the middle class, all of whom face ever-rising rents. The plan incorporates dozens of initiatives "to ensure balanced growth, fair housing opportunity, and diverse neighborhoods."[2]

## HPD-Sponsored Affordable Housing Programs

5.     HPD works with a variety of public and private partners to achieve the City's goals of providing affordable housing for New Yorkers with a range of incomes, from the very lowest to those in the middle class. HPD accomplishes these goals through a combination

---

[1] See Mayor Bill de Blasio's Housing New York: A Five-Borough, 10-Year Housing Plan.

[2] Id. at 7.

of loan programs, tax incentives, disposition of City-owned property, tax credits, and other subsidies and incentives. For example, the City's Voluntary Inclusionary Housing program is designed to preserve and promote affordable housing within neighborhoods where zoning has been modified to encourage new development. In applicable areas, a development may receive a density bonus (allowing the construction of additional market-rate floor area) in return for the new construction, substantial rehabilitation, or preservation of permanently affordable housing.

6.      In addition, HPD finances programs such as the Supportive Housing Loan Program, which provides financing to not-for-profit organizations to develop supportive housing for homeless single adults, including people suffering from disabilities such as mental illness and AIDS. Supportive housing is affordable housing with on-site services to serve the needs of the most vulnerable New Yorkers. HPD's Senior Affordable Rental Apartments (SARA) Program supports the construction and renovation of affordable housing for low-income seniors, including a 30% set-aside for homeless seniors.

7.      Both for-profit and not-for-profit developers can explore a wide range of opportunities to build or preserve affordable rental and homeownership units on publicly-owned or private sites throughout the City. Developers creating new City-subsidized affordable housing are required to follow HPD marketing and tenant selection procedures. The objectives of these procedures are to create housing opportunities for qualified applicants in a way that is fair, open, and accessible to all; to comply with fair housing and equal opportunity requirements; and to ensure that accessible units are made available to those with mobility, visual or hearing impairments.

8.      In some buildings financed through subsidies or density bonuses from New York City, HPD gives eligible current residents of the community district in which a new

affordable housing development is located priority for 50% of the available affordable units (the "City Community Preference Policy"). The City Community Preference Policy is intended to ensure that local residents, many of whom have deep roots in the community and have persevered through years of unfavorable living conditions, are able to remain in their neighborhoods as those neighborhoods are revitalized. As City investment enables a neighborhood to stabilize and become a more desirable location, housing costs may increase to the point where long-term residents are displaced. This is a harsh and inequitable outcome for people who have endured years of unfavorable conditions, and who deserve a chance to participate in the renaissance of their neighborhoods. The City Community Preference Policy ensures that new affordable units will be offered to these residents. In addition, neighborhoods throughout the City and their elected representatives often resist approving land use actions required to allow greater density or site affordable housing because of concern about the other types of burdens that development may impose. They have legitimate concerns about potential negative effects of development both during construction (such as noise and danger) and afterward (as additional residents strain existing infrastructure, potentially leading to things like traffic congestion and school crowding). The City Community Preference Policy ensures that neighborhoods see that new growth and investments in affordable housing provide some benefits to local residents to offset those burdens. This makes it possible for the City to overcome that resistance and achieve its ambitious affordable housing goals despite neighborhoods' understandable concerns about the difficulties that new construction and growth may pose.

9.     If after thorough outreach, the developer is unable to reach the required percentage, it may seek a waiver from HPD with respect to the remaining units. Once the community preference goal is reached or waived, the remaining units are offered to all other

applicants on a random ranking list.  Since every development is also marketed throughout the City, this process ensures that all residents have an opportunity to become part of a revitalized community.

## Tax Incentive Programs Administered by HPD

10.      Tax incentives can either be granted as-of-right or by resolution of the City Council.  Projects that meet the eligibility requirement of an as-of-right tax program administered by HPD are granted benefits pursuant to the statutes and regulations governing the particular program.

11.      As-of-right tax incentive programs administered by HPD may reduce or eliminate the amount of municipal real property taxes a property owner must pay.  Incentives are typically awarded in exchange for investment that benefits the public, such as the creation or preservation of affordable housing, and are used by developers and property owners to offset the cost of investment in the property.

## 421-a Tax Exemption Program

12.      In 1971, the New York State Legislature enacted Section 421-a of the RPTL to spur housing development in New York City at a time when housing market conditions were dire.  To incentivize development of permanent housing, the 421-a tax exemption program provided tax exemptions for housing development throughout the City.  In 1985, after major amendments and the creation by local law of a specified Geographic Exclusion Area ("GEA"), 421-a evolved into a tax exemption program that incentivized the development of affordable housing.  Developments within the GEA were required to provide some affordability — either on-site or by purchasing negotiable certificates generated by off-site affordable housing units —

in order to be eligible for RPTL § 421-a benefits. Outside of the GEA, RPTL § 421-a tax exemption benefits were, and currently are, available without providing affordable housing.

13. Local Law 58 of 2006 and subsequent enactments by the New York State Legislature in 2007 greatly expanded the GEA, requiring developers in areas that were not previously included in the GEA to provide affordable housing units in order to receive RPTL § 421-a benefits.

14. In 2007 and 2008, the New York State Legislature enacted further amendments to RPTL § 421-a, making several major programmatic changes to strengthen the GEA affordability requirement. Relevant to this action, Chapter 618 of the Laws of 2007 added a community preference requirement for 421-a affordable units in the GEA. Within the GEA, residents of the community board in which the building receiving benefits is located have priority for the purchase or rental of 50% of the affordable units upon initial occupancy ("421-a Statutory Community Preference Requirement"). See RPTL § 421-a(7)(d)(ii) (2007).[3] Section 63-l of the Laws of 2015 renumbered RPTL § 421-a(7)(d)(ii) to RPTL § 421-a(7)(d)(iii).

15. Pursuant to RPTL § 421-a(3)(a) and Section 1802(6)(b) of the New York City Charter ("City Charter"), HPD is the local housing agency charged with administering the New York State RPTL § 421-a tax exemption program in the City of New York. RPTL § 421-a developments are usually privately financed, without any HPD involvement. HPD processes the

___
[3] Chapter 110 of the Laws of 2005, which created special requirements for receipt of 421-a benefits in the Greenpoint-Williamsburg Waterfront Exclusion Area and which took effect on June 21, 2005, also had a community preference requirement for affordable units. See RPTL Section 421-a(6)(d).

421-a applications and markets the affordable units. The City has no discretion with regard to applying the statutorily mandated requirements of the 421-a Program.[4]

**Affordable Housing Lotteries at the Subject Developments and Plaintiffs' Application Status**

16.      I understand that the Complaint alleges that the City Community Preference Policy violates the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, et seq., and the New York City Human Rights Law ("NYCHRL"), Administrative Code of the City of New York ("Administrative Code") § 8-107, et seq. Am. Compl. ¶¶ 183-90.

17.      However, the City Community Preference Policy was not and will not be applied at the subject developments. All three subject developments have applied for and received preliminary certificates of eligibility ("PCE") for 421-a tax benefits, and all affordable units in those developments were required to be provided as a condition of receiving those 421-a benefits. Therefore, all affordable units marketed at the subject developments are subject to a the 421-a Statutory Community Preference Requirement mandated by State law, which has nothing to do with the City Community Preference Policy. Put simply, the City had no choice about implementing a community preference with regard to these affordable units because State law specifically required the implementation of such a preference.[5]

---

[4] The State legislature recently enacted Chapter 20 of the Laws of 2015, which amends RPTL § 421-a, and becomes effective January 2016 if representatives of residential real estate developers and construction labor unions sign a memorandum of understanding regarding wages of construction workers performing work on 421-a projects that contain more than 15 units. Under the 2015 amendments, HPD is defined as the agency charged with administering the 421-a tax exemption program. See RPTL § 421-a(16)(a)(xii) (2015).

[5] While some of these 421-a affordable units also qualified the subject developments to receive zoning density bonuses under the City's Voluntary Inclusionary Housing Program, the application of the mandatory 421-a Statutory Community Preference Requirement meant that the City Community Preference Policy never came into play. HPD had no discretion to apply the City Community Preference Policy given the requirements of 421-a.

18.     When marketing subsidized affordable units in 421-a developments, such as the subject developments, HPD and the relevant developer solicit applications for a lottery. An applicant's race or ethnicity is not a factor in the lottery process.   Each application is randomly assigned a number and then placed in order on a "lottery log." The numbers on the logs are not influenced by community preference.   Once the log order is randomly established, the developer then considers preference categories when going down the list.   The developer moves through the list in search of applicants who qualify for an apartment based on household size, income, and, if applicable, current residence.

19.     The status of the lottery logs and plaintiffs' positions on the logs for the three subject developments are as follows:

**200 East 39th Street (Block 919, Lot 59)**
- Approved for Preliminary Certificate of Eligibility ("PCE") for 421-a tax benefits on 5/27/2015
- 19 affordable units
- Ad posted 1/15/15; deadline 3/16/15; Agent received log 4/20/15; interviewing in progress
- *Plaintiff Shauna Noel-Robinson is log number 6,745 and Janell Winfield is log number 12,489*

**40 Riverside Boulevard (Block 1171, Lot 150)**
- Approved for PCE for 421-a tax benefits on 5/20/2015
- 55 affordable units
- Ad posted 2/18/15; deadline 4/20/15; Agent received log 6/25/15; interviewing in progress
- *Plaintiff Shauna Noel-Robinson is log number 55,908 and plaintiff Janell Winfield is log number 16,926*

**160 Madison (Block 862, Lot 20 – condo lot 7504)**
- Approved for PCE for 421-a tax benefits on 5/7/2014
- 64 affordable units
- Ad posted 3/15/15 – deadline 6/1/15 – Agent received log 7/16/15; interviewing in progress
- *Plaintiff Janell Winfield is log number 47,107 and plaintiff Tracey Stewart is log number 22,796*

20.     Given plaintiffs' positions on the logs at the subject developments, and the small number of available apartments, it is extremely unlikely that the State law regarding community preference for community district residents will influence whether or not they receive an apartment.

21.     In any event, the City Community Preference Policy in no way affected the plaintiffs' applications at the subject developments.  HPD is simply administering a State program in accordance with the specific requirements of State law.  It is not applying the City Community Preference Policy to the subject developments.

Dated:        New York, New York
              October 2, 2015

                                          _____
                                          VICKI BEEN

Sworn to before me this
2nd day of October, 2015.

_____
NOTARY PUBLIC

MATTHEW ELLIOTT SHAFIT
Notary Public, State of New York
No. 02SH6043313
Qualified in New York County
Commission Expires June 12, 2018