UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

JANELL WINFIELD, TRACEY STEWART,
and SHAUNA NOEL,

                             Plaintiffs,              15 CV 5236 (LTS)(DCF)

           - against -

CITY OF NEW YORK,

                         Defendant.

-------------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR DISMISSAL
OF THE FIRST AMENDED COMPLAINT**

                                    ZACHARY W. CARTER
                                    Corporation Counsel of the
                                     City of New York
                                    Attorney for Defendant
                                    100 Church Street
                                    New York, New York 10007
                                    (212) 356-2210

SHERYL NEUFELD
JASMINE M. GEORGES
                Of Counsel.

ANDREW FINE
                On The Brief

October 2, 2015

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND...................................................................................4

     HPD-Sponsored Affordable Housing Policy...............................................5

     City Community Preference Policy ............................................................5

     421-a Tax Exemption Program: Community Preference Requirement Mandated By State Law.......................................6

     Affordable Housing Lotteries at the Subject Developments and Plaintiffs' Application Status .......................................7

ARGUMENT .......................................................................................................9

    I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS BECAUSE PLAINTIFFS LACK STANDING............................................9

    II.    EVEN IF THE COMMUNITY PREFERENCE POLICY APPLIED TO THE SUBJECT DEVELOPMENTS AND PLAINTIFFS HAD STANDING, THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR DISCRIMINATION UNDER THE FHA UPON WHICH RELIEF CAN BE GRANTED....................................11

        a.   Plaintiffs Have Not Adequately Pled a Prima Facie Case of Disparate Impact....................................11

        b.   Plaintiffs Fail to State a Prima Facie Case of Disparate Impact Under a Perpetuation-of-Segregation Theory .......................................16

        c.   Plaintiffs Have Not Adequately Pled a Prima Facie Case of Disparate Treatment....................................18

    III.   THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR DISCRIMINATION UNDER THE NYCHRL UPON WHICH RELIEF CAN BE GRANTED..............................................................20

CONCLUSION.................................................................................................22

Defendant the City of New York ("City"), by its attorney, Zachary W. Carter, Corporation Counsel of the City of New York, submits this memorandum of law in support of its Motion to Dismiss the First Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiffs, who identify themselves as three African-American women, seek to challenge a long-standing City policy regarding how certain affordable housing units that the City subsidizes are distributed upon initial occupancy. Since the 1980s, the City, through its Department of Housing Preservation and Development ("HPD"), has required that some housing developments that receive City capital funds provide a "community preference" when filling their affordable units. Currently, the community preference provides eligible current residents of the community district in which a new housing development is located priority for 50% of the available affordable units in such development (the "City Community Preference Policy").[1]

In their First Amended Complaint, plaintiffs claim that this policy violates the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, et seq., and the New York City Human Rights Law ("NYCHRL"), Administrative Code of the City of New York ("Administrative Code") § 8-107, et seq. Am. Compl. ¶¶ 183-90. More specifically, the First Amended Complaint alleges that the City Community Preference Policy perpetuates segregation and causes a disparate impact throughout the City. Plaintiffs also claim that the City Community Preference Policy has injured them by restricting their "ability to compete for housing on an equal basis with persons who already live in these high opportunity areas." Am Compl. ¶ 177. Finally, plaintiffs claim that the City Community Preference Policy has injured other African-Americans and Latinos

---

[1] When it first began, the City Community Preference was 30%.

"who have been eligible for, and who applied for, affordable housing units in high-opportunity and other disproportionately white community districts." Am. Compl. ¶¶ 178-82.

These claims must fail because plaintiffs lack standing to challenge the City Community Preference Policy, and therefore, the Court lacks subject matter jurisdiction. The First Amended Complaint does not allege that plaintiffs applied to any affordable housing development where the City Community Preference Policy has been or will be applied. Rather, plaintiffs applied to three developments located at 160 Madison Avenue, New York, New York; 200 E. 39th St., New York, New York; and 40 Riverside Blvd., New York, New York (the "subject developments"), which received tax incentives under the New York State Real Property Tax Law ("RPTL") § 421-a Tax Exemption Program (the "421-a program") and density bonuses under the City's Voluntary Inclusionary Housing program. The 421-a program incentivizes the construction of affordable housing by requiring developments that are located within a specified area to include some affordable units in order to be eligible for property tax abatements pursuant to RPTL § 421-a. RPTL § 421-a also requires that developments provide a community preference upon initial occupancy, so that residents of the community board in which the development is located have priority in the purchase or rental of 50% of the affordable units. See RPTL § 421-a(7)(d)(iii)[2]. Since all inclusionary units in the subject developments are also 421-a units, the community preference that will be provided is mandated by State law and has nothing to do with the City Community Preference Policy. Thus, plaintiffs cannot establish Article III standing, since any actual or potential alleged injury cannot be traced to the City Community Preference Policy.

---

[2] Section 63-l of the Laws of 2015 renumbered the former RPTL § 421-a(7)(d)(ii) to RPTL § 421-a(7)(d)(iii).

But even if the City Community Preference Policy applied to the subject developments and plaintiffs had standing, this Court should still dismiss the First Amended Complaint because plaintiffs have not adequately pled a prima facie case of discriminatory conduct.[3]  Indeed, plaintiffs have failed to plead any actual facts demonstrating a discriminatory effect, and plaintiffs do not allege any statistics that even suggest that the City Community Preference Policy, or the community preference mandated by State law, perpetuates racial segregation throughout the City.  Furthermore, plaintiffs allege absolutely no facts evidencing that any decision, by the City or the State, to use a community preference was made in the face of evidence that other alternatives would have been more pro-integrative, or that the City or State was conscious of policies that it thought particular groups "wanted," or that the City or State responded to racially influenced opposition.

Despite plaintiffs' lack of standing and failure to meet the pleading standards, plaintiffs would have this Court abolish a policy that is intended to ensure that local residents are able to remain in their neighborhoods as those neighborhoods are revitalized with affordable housing development.  If accepted, plaintiffs' claims that the City Community Preference Policy is discriminatory would turn the FHA on its head.  Contrary to plaintiffs' claims, the City is deeply committed to fair housing, as is evidenced by the City's five-borough Housing Plan, which was developed to "address the City's affordable housing crisis" by "fostering diverse, livable neighborhoods."[4]  In the face of striking increases in the demand for housing in New

---

[3] And even if the First Amended Complaint acknowledged that the community preference to be applied to the marketing of the projects to which plaintiffs applied was required by 421-a, plaintiffs' pleadings would be insufficient because plaintiffs have not plead a prima facie case of discriminatory conduct.

[4] See Declaration of Jasmine M. Georges ("Georges Decl.") Exhibit ("Ex.") B (Mayor Bill de Blasio's Housing New York: A Five-Borough, 10-Year Housing Plan).

York City, the continued development of affordable housing throughout the City is vital. Community preference, whether applied through State or City policy, is a critical tool to ensuring that low income households, who are often disproportionately racial and ethnic minorities, are able to stay in the neighborhoods they wish to live in when investment results in rising housing and rental prices.  It also is an important tool for overcoming local resistance to growth and new construction, which allows the City to build affordable housing throughout the City's neighborhoods.  Plaintiffs' efforts to thwart the application of community preference in the construction of affordable, high quality housing for low and moderate-income families in thriving neighborhoods throughout the City should not be endorsed by this Court.

For all these reasons, plaintiffs' First Amended Complaint should be dismissed.

### FACTUAL BACKGROUND

Solely for purposes of this motion to dismiss, the facts alleged in the First Amended Complaint are deemed to be true, except for any facts which are contradicted by the undisputable facts set forth in the exhibits submitted with the Declaration of Jasmine M. Georges, dated October 2, 2015 ("Georges Decl."),[5] of which the Court may take judicial notice. In addition, the Court is respectfully referred to the Declaration of the City of New York Department of Housing Preservation and Development ("HPD") Commissioner Vicki Been, dated October 2, 2015 ("Been Decl."), for a description of the 421-a program that developed, financed and constructed the subject developments, and plaintiffs' application status at said developments, of which the Court may also take judicial notice.

---

[5] All Exhibits referenced herein are annexed to the Georges Decl.

**HPD-Sponsored Affordable Housing Programs**

HPD works with a variety of public and private partners to achieve the City's goals of providing affordable housing for New Yorkers with a range of incomes, from the very lowest to those in the middle class.  HPD accomplishes these goals through a combination of disposition of City-owned property, loan programs, tax incentives, tax credits, and other subsidies and incentives.  See Been Decl. ¶ 5.

Both for-profit and not-for-profit developers can explore a wide range of opportunities to build or preserve affordable rental and homeownership units on publicly-owned[6] or privately-owned sites throughout the City.  Developers creating new City-subsidized affordable housing are required to follow HPD marketing and tenant selection procedures.  The objectives of these procedures are to create housing opportunities for qualified applicants in a way that is fair, open, and accessible to all; to comply with fair housing and equal opportunity requirements; and to ensure that accessible units are made available to those with mobility, visual or hearing impairments.  See Been Decl. ¶ 7.

**City Community Preference Policy**

The City Community Preference Policy, which gives eligible current residents of the community district in which a new affordable housing development is located priority for 50% of the available affordable units in some buildings financed through subsidies or density bonuses from New York City, is intended to ensure that local residents, many of whom have deep roots in the community and have persevered through years of unfavorable living conditions, are able to remain in their neighborhoods as those neighborhoods are revitalized.  See Been Decl. ¶ 8.  In addition, the City Community Preference Policy ensures that neighborhoods see that new

---

[6] Publicly-owned sites are sold to private owners before development.

growth and investments in affordable housing provide some benefits to local residents to offset the burdens that development may impose, making it possible for the City to overcome local resistance and achieve its ambitious affordable housing goals.  See Been Decl. ¶ 8.  If after thorough outreach, the developer is unable to reach the required percentage, it may seek a waiver from HPD with respect to the remaining units.  Once the community preference goal is reached or waived, the remaining units are offered to all other applicants on a randomly ranked list.  Since every development is also marketed throughout the City, this process ensures that all residents have an opportunity to become part of a revitalized community.  See Been Decl. ¶ 9.

**421-a Tax Exemption Program: Community Preference Requirement Mandated By State Law**

The New York State Legislature enacted Section 421-a of the RPTL in 1971 to incentivize development of permanent housing throughout the City by providing tax exemptions for said development.  In 1985, the 421-a program was amended by local law to create a specified Geographic Exclusion Area ("GEA"), wherein developments were required to provide some affordability in order to be eligible for RPTL § 421-a benefits.  Outside of the GEA, RPTL § 421-a tax exemption benefits were, and currently are, available without providing affordable housing.  See Been Decl. ¶ 12.

Pursuant to RPTL § 421-a(3)(a) and Section 1802(6)(b) of the New York City Charter ("City Charter"), HPD is the local housing agency charged with administering the New York State RPTL § 421-a tax exemption program in the City of New York.  RPTL § 421-a developments are usually privately financed, without any HPD involvement.  HPD processes the 421-a applications and markets the affordable units.[7]  See Been Decl. ¶ 15.

---

[7] The State legislature recently enacted Chapter 20 of the Laws of 2015, which amends RPTL § 421-a, and becomes effective January 2016 if representatives of residential real estate developers and

In 2007 and 2008, the New York State Legislature enacted further amendments to RPTL § 421-a, including the addition of the requirement that residents of the community board in which the building receiving benefits is located be given priority for the purchase or rental of 50% of the affordable units upon initial occupancy.  See RPTL § 421-a(7)(d)(iii).  See Decl. ¶ 14.

## Affordable Housing Lotteries at the Subject Developments and Plaintiffs' Application Status

All three subject developments have applied for and received preliminary certificates of eligibility ("PCE") for 421-a tax benefits, and all affordable units in those developments were required to be provided as a condition of receiving those 421-a benefits.  See Georges Decl. Ex. C (PCEs for subject developments).  Therefore, RPTL § 421-a requires the application of a community preference in the marketing of those affordable units.  Since the community preference is required by State law, the City Community Preference Policy was not applied at the subject developments and HPD has no discretion about whether to apply the preference. [8]  See Been Decl. ¶ 17.

As the local housing agency obligated to administer the 421-a tax exemption program, HPD processed the 421-a applications and marketed the subject developments' affordable units.  See RPTL § 421-a and City Charter § 1802(6)(b).  The City has no discretion

_____

construction labor unions sign a memorandum of understanding regarding wages of construction workers performing work on 421-a projects that contain more than 15 units.  Under the 2015 amendments, HPD is defined as the agency charged with administering the 421-a tax exemption program.  See RPTL § 421-a(16)(a)(xii) (2015).

[8]  While some of these 421-a affordable units also qualified the subject developments to receive zoning density bonuses under the City's Voluntary Inclusionary Housing Program, the application of RPTL § 421-a's statutorily mandated community preference requirement meant that the City Community Preference Policy never came into play.

with regard to applying the statutorily mandated requirements of the 421-a Program. <u>See</u> Been Decl. ¶ 15.

When marketing subsidized affordable units in 421-a developments, such as the subject developments, HPD and the relevant developer solicit applications for a lottery. An applicant's race or ethnicity is not a factor in the lottery process. Each application is randomly assigned a number and then placed in order on a "lottery log." The numbers on the logs are not influenced by community preference. Once the log order is randomly established, the developer then considers preference categories when going down the list. The developer moves through the list in search of applicants who qualify for an apartment based on household size, income, and, if applicable, current residence. <u>See</u> Been Decl. ¶ 18.

The status of the lottery logs and plaintiffs' positions on the logs for the three subject developments are as follows:

**200 East 39th Street (Block 919, Lot 59)**
- Approved for Preliminary Certificate of Eligibility ("PCE") for 421-a tax benefits on 5/27/2015
- 19 affordable units
- Ad posted 1/15/15; deadline 3/16/15; Agent received log 4/20/15; interviewing in progress
- *Plaintiff Shauna Noel-Robinson is log number 6,745 and Janell Winfield is log number 12,489*

**40 Riverside Boulevard (Block 1171, Lot 150)**
- Approved for PCE for 421-a tax benefits on 5/20/2015
- 55 affordable units
- Ad posted 2/18/15; deadline 4/20/15; Agent received log 6/25/15; interviewing in progress
- *Plaintiff Shauna Noel-Robinson is log number 55,908 and plaintiff Janell Winfield is log number 16,926*

**160 Madison (Block 862, Lot 20 – condo lot 7504)**
- Approved for PCE for 421-a tax benefits on 5/7/2014
- 64 affordable units
- Ad posted 3/15/15 – deadline 6/1/15 – Agent received log 7/16/15; interviewing in progress

- *Plaintiff Janell Winfield is log number 47,107 and plaintiff Tracey Stewart is log number 22,796*

Been Decl. ¶ 19; Georges Decl. Ex. D (Printouts from the NYC Housing Connect database showing plaintiffs' status on the lottery logs for the subject developments).

### ARGUMENT

**I.    This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims Because Plaintiffs Lack Standing.**

Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss plaintiffs' First Amended Complaint. A claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). "Standing is a proper ground upon which to challenge a court's subject matter jurisdiction: 'If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.'" Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 62 (2d Cir. 2012) (citations omitted). "In order to have standing to bring suit, a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." Woods v. Empire Health Choice, Inc., 574 F.3d 92, 96 (2d Cir. 2009).

In deciding a motion to dismiss under Rule 12(b)(1), a Court "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," but "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014); see also Ray Legal

Consulting Grp. v. Gray, 37 F. Supp. 3d 689, 696 (S.D.N.Y. Aug. 8, 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

Plaintiffs cannot establish one of the fundamental components of Article III standing: that the alleged injury "be fairly traceable to the challenged action…." Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'm, 192 L. Ed. 2d 704, 721 (2015) (quoting Clapper v. Amnesty Int'l USA, 185 L. Ed. 2d 264, 275 (2013)).

Fatal to plaintiffs' claim, the First Amended Complaint does not allege that plaintiffs applied to an affordable housing development where the challenged City Community Preference Policy has been or will be applied.  Although a preference for community district residents will be provided when the affordable units at 160 Madison Avenue, 200 E. 39th St., and 40 Riverside Blvd. are marketed, this preference is a requirement mandated by State law, since the subject developments were required to provide all of these affordable units in order to be eligible for RPTL § 421-a benefits.  See Been Decl. ¶ 17.  The community preference requirement mandated by State law has nothing to do with the City Community Preference Policy.  See id.  HPD processed the 421-a applications and marketed the affordable units at the subject developments in its capacity as the City of New York's local housing agency.  See RPTL § 421-a and City Charter § 1802(6)(b).  But the City has no discretion with regard to applying the State law concerning community preferences in these developments receiving 421-a benefits. See Been Decl. ¶ 15.  Accordingly, plaintiffs cannot establish Article III standing, since any alleged injury cannot be traced to the challenged action, i.e. the City's Community Preference Policy.

Moreover, plaintiffs, who identify themselves as three African-American women, and who have not alleged a causal connection between their alleged injury and the City Community Preference Policy, do not have standing to assert discrimination claims on behalf of other African-Americans or on behalf of a minority group to which they do not belong, namely Latinos.  See, e.g., Sidari v. Orleans County, 174 F.R.D. 275, 284 (W.D.N.Y. 1996) (holding that "[t]o have standing to assert such claims, the plaintiff must allege 'a violation of his or her own, not a third party's,  rights'" (citing Application of Dow Jones & Co. Inc., 842 F.2d 603 (2d Cir. 1988)).

## II.    Even if the City Community Preference Policy Applied to the Subject Developments and Plaintiffs Had Standing, the First Amended Complaint Fails to State a Claim for Discrimination Under the FHA Upon Which Relief Can Be Granted.

Defendant also moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiffs' First Amended Complaint.  In deciding such a motion, a Court may look to the facts alleged in the complaint, documents attached thereto or incorporated by reference, and documents that are "integral" to plaintiffs' claims, as well as matters of public record and documents in plaintiffs' possession.  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  A motion to dismiss should be granted where a complaint fails to plead enough facts to state a claim that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The factual allegations must be more than speculative, and show the grounds on which a plaintiff is entitled to relief beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555.

### a.    Plaintiffs Have Not Adequately Pled a Prima Facie Case of Disparate Impact.

The FHA prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection

therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).   Even if the above jurisdictional deficiencies were cured, and even if the City Community Preference Policy applied to the three subject developments, plaintiffs fail to state a claim that the community preference creates a disparate impact under the FHA.[9]

Plaintiffs allege that the City Community Preference Policy imposes a disparate impact on African-American and Latino applicants for City-subsidized affordable housing on the basis of race (Am. Compl. ¶¶ 184-86), because the City Community Preference Policy "serves to bar City residents living outside of the community district from competing on an equal basis for all available units." Am. Compl. ¶ 7.   Plaintiffs further assert that as a result of the City Community Preference Policy "access to [neighborhoods of opportunity] is effectively prioritized for white residents who already live there and limited for African-American and Latino New Yorkers who do not."   Am. Compl. ¶ 7.   In support of their assertions, plaintiffs provide general statistics regarding patterns of housing segregation in New York City.   See Am. Compl. ¶¶ 47-102.

"Disparate impact analysis focuses on facially neutral policies or practices that may have a discriminatory effect. 'To establish a prima facie case under this theory, the plaintiff must show: (1) the occurrence of certain outwardly neutral practices, and (2) *a significantly adverse or disproportionate impact on persons of a particular type* produced by the defendant's facially neutral acts or practices.'" Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 574-75

---

[9] For the same reasons plaintiffs have failed to state a claim that the City Community Preference Policy creates a disparate impact, even if the First Amended Complaint acknowledged that the community preference to be applied to the marketing of the projects to which plaintiffs applied was required by 421-a, plaintiffs' pleadings would be insufficient.

(2d Cir. 2003) (quoting <u>Reg'l Econ. Cmty. Action Program v. City of Middletown</u>, 294 F.3d 35, 52-53 (2d Cir. 2002) (emphasis in original)).

The U.S. Supreme Court recently clarified that "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity.  A robust causality requirement ensures that '[r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create." <u>Tex. Dept. of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.</u>, 192 L. Ed. 2d 514, 538 (U.S. 2015) (citing <u>Wards Cove Packing Co. v. Antonio</u>, 490 U.S. 642, 653 (1989)).  "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." <u>Id.</u> at 538.

Even if plaintiffs had standing, under this pleading standard, the First Amended Complaint fails to state a <u>prima facie</u> disparate impact claim.  Plaintiffs have failed to plead any actual facts demonstrating a discriminatory effect.  Instead, plaintiffs provided limited statistics in their Amended Complaint regarding: 1) racial segregation in the City as a whole; 2) racial segregation in community districts; and 3) disparities between the racial and ethnic demographics of community districts versus the City as a whole for all residents and for residents of particular incomes.  They did not allege facts suggesting that the challenged policy caused the alleged segregation or disparities, or that the alleged segregation or disparities caused the policy to have a disparate effect.  They did not allege facts demonstrating that the City Community Preference Policy has contributed in any way to racial or ethnic segregation either in the City as a whole or in any particular community district, as discussed more fully in part B, below.  Nor did they allege any facts evidencing that the City Community Preference Policy has

a disparate impact on African-American or Latino income-eligible households who applied to the three lotteries (in Community Districts 5, 6, and 7) at issue in the First Amended Complaint. They fail even to present statistics regarding the race and ethnicity of income-eligible potential applicants for the three community districts in which the plaintiffs applied for housing versus the potential applicant pool as a whole.

Further, there is no reason to believe that current address, income, and race or ethnicity are the sole determinants of whether a person applies for affordable housing.  Many other factors influence who applies for affordable housing, e.g., the level of rent burden and housing insecurity a household faces, household size and composition, the specific characteristics of the housing being offered, and the household's experience with other government-assisted housing.  Even if the income-eligible households in a particular community district differ in race or ethnicity from the income-eligible households in the entire applicant pool, therefore, there is no necessary causal link between the City Community Preference Policy and the race and ethnicity of those who apply for, are selected for, and accept affordable housing opportunities.

Moreover, while plaintiffs have challenged the City Community Preference Policy as it applies City-wide (Am. Compl. ¶ 7-10), they have not pled specific statistics for all 59 community districts throughout the City, which would be necessary to allege a prima facie disparate impact case challenging the City Community Preference Policy as it applies City-wide. Plaintiffs' asserted statistical disparity evidence only relates to the history of segregation throughout the City as a whole.  Am. Compl. ¶¶ 47-102.  Plaintiffs did not allege any evidentiary facts regarding the effect of the City Community Preference Policy on income-eligible African-Americans or Latinos who enter housing lotteries, as opposed to income-eligible non-Hispanic

- 14 -

white applicants, in any particular one of the City's 59 community districts, or in the City as a whole.  Thus, the First Amended Complaint fails to state a <u>prima facie</u> disparate impact claim.  <u>See</u> <u>Frederick v. Wells Fargo Home Mortg.</u>, 2015 U.S. Dist. LEXIS 41328, *16-19 (E.D.N.Y. Mar. 30, 2015) (granting the defendant's motion to dismiss the plaintiffs' FHA disparate impact claims where "plaintiffs did not plead any actual facts of discriminatory impact based on race; otherwise said, Plaintiffs [did not plead] the requisite adverse effect on the protected group.").

Even if plaintiffs had alleged facts showing that the City Community Preference Policy caused or will cause a statistically significant disparity in the allocation of affordable housing, courts may also consider whether a statistically significant disparity has practical significance in assessing a <u>prima face</u> case.  <u>See</u> <u>United States v. City of New York</u>, 637 F. Supp. 2d 77, 94 (E.D.N.Y. 2009) (holding that "[t]he significance of Plaintiffs' statistics is bolstered by evidence that the disparities have been significant as a practical matter").  Here, plaintiffs' First Amended Complaint does not plead that any alleged disparities have been or will be significant as a practical matter.

Given plaintiffs' positions on the logs at these developments, and the small number of available apartments, it is extremely unlikely that the 421-a statutorily required community preference for community district residents will influence whether or not they receive an apartment.[10]  <u>See</u> Been Decl. ¶ 19.  Thus, plaintiffs cannot allege facts showing a significant effect as a practical matter at the subject developments.  Accordingly, plaintiffs have failed to meet their burden of pleading a "sufficiently substantial" or "statistically or practically

---

[10] At 200 East 39th Street, there are 19 affordable units; plaintiff Janell Winfield is log number 12,489 and plaintiff Shauna Noel-Robinson is log number 6,745.  At 40 Riverside Blvd., there are 55 affordable units; plaintiff Janell Winfield is log number 16,926 and plaintiff Shauna Noel-Robinson is log number 55,908.  At 160 Madison Avenue, there are 64 affordable units; plaintiff Janell Winfield is log number 47,107 and plaintiff Tracey Stewart is log number 22,796.

significant" disparity, as required by the Supreme Court in <u>Tex. Dept. of Hous. & Cmty. Affairs</u> <u>v. Inclusive Cmtys. Project, Inc.</u>

      b.    **Plaintiffs Fail to State a <u>Prima</u> <u>Facie</u> Case of Disparate Impact Under a Perpetuation-of-Segregation Theory.**

          Plaintiffs also allege that the City Community Preference Policy illegally perpetuates housing segregation. <u>See</u> Am. Compl. ¶ 184. Even if all the above deficiencies were cured, and even if the City Community Preference Policy applied to the three subject developments, plaintiffs fail to state a claim that community preference perpetuates segregation.[11] The Second Circuit, like all circuits that have addressed the issue, recognizes that the FHA prohibits certain actions that have the effect of perpetuating segregation in a community. <u>See</u> <u>Huntington Branch, N.A.A.C.P. v. Town of Huntington</u>, 844 F.2d 926, 937 (2d Cir. 1988), <u>aff'd</u> <u>Town of Huntington v. Huntington Branch, N.A.A.C.P.</u>, 488 U.S. 15 (1988). Perpetuation-of-segregation claims "require[] an analysis of existing housing patterns and the impact that the proposed project is likely to have on those patterns." <u>In re Malone</u>, 592 F. Supp. 1135, 1166 (E.D. Mo. 1984). To state a <u>prima</u> <u>facie</u> cause of action based on a perpetuation-of-segregation theory, plaintiffs must provide statistical evidence concerning the degree of residential segregation in the area and the likely effect of the Community Preference Policy on the racial and ethnic demographics of proposed developments. <u>See</u> <u>id.</u>; <u>Metropolitan Housing</u> <u>Development Corp. v. Village of Arlington Heights</u>, 558 F.2d 1283 (7th Cir. 1977).

          Plaintiffs claim that the City Community Preference Policy perpetuates racial segregation in New York City, and they also assert that "[r]esidential racial segregation in the

---

[11] For the same reasons plaintiffs have failed to state a claim that the City Community Preference Policy perpetuates segregation, even if the First Amended Complaint acknowledged that the community preference to be applied to the marketing of the projects to which plaintiffs applied was required by 421-a, plaintiffs' pleadings would be insufficient.

City is widely present at the community district level." Am. Compl. ¶ 48.  However, plaintiffs do not allege any statistics that even suggest that the City Community Preference Policy perpetuates racial segregation throughout the City.  Plaintiffs have not asserted any statistics regarding the racial demographics of the particular community districts where plaintiffs entered affordable housing lotteries (Community Districts 5, 6, and 7), nor have plaintiffs asserted statistics regarding the racial demographics of the potential applicant pools as compared to the entire communities in which the affordable housing developments are located.

In addition, plaintiffs have failed to plead a sufficient City-wide challenge because the First Amended Complaint is devoid of statistics relating to the effect of the City Community Preference Policy on the racial makeup of the 59 community districts throughout the City from the time the community preference was first implemented to now.  Thus, plaintiffs have failed to allege a prima facie case of disparate impact under a perpetuation-of-segregation theory.  As plaintiffs acknowledge, racial segregation of African-Americans for the City as a whole has declined, yet, plaintiffs have not alleged facts showing that without the challenged City Community Preference Policy, the same amount of affordable housing would have been built, or that that housing would have led to less segregation, but for the City Community Preference Policy.  Plaintiffs also did not allege facts showing that the housing vacated by community members taking the affordable housing is not then open to, and likely to be occupied by, households of all races.

### c.  Plaintiffs Have Not Adequately Pled a <u>Prima</u> <u>Facie</u> Case of Disparate Treatment.

Plaintiffs further assert that the City intentionally discriminated on the basis of race when creating the City Community Preference Policy.[12]  <u>See</u> Am. Compl. ¶ 188.  When challenging a municipal policy, plaintiffs' burden of proof under a disparate treatment theory of discrimination is very high.  "To establish a prima facie case of discrimination under [disparate treatment], the plaintiff must present evidence that animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive."  <u>Smith v. New York City Housing Authority</u>, 410 Fed. Appx. 404, 406 (2d Cir. 2011); <u>see also</u> <u>Tsombanidis</u>, 352 F.3d at 579 ("To establish intentional discrimination, plaintiffs must prove that a motivating factor behind the City's refusal to classify OH-JH as a single family household was the residents' status as recovering drug addicts and alcoholics.").  Proof of disparate impact discrimination does not independently support a disparate treatment claim.  <u>City of Los Angeles v. Wells Fargo & Co.</u>, 2015 U.S. Dist. LEXIS 93451, *19 (C.D. Cal. 2015).   A court will analyze five factors to determine if intentional discrimination undergirds the challenged policy:

> Factors to be considered in evaluating a claim of intentional discrimination include: '(1) the discriminatory impact of the governmental decision; (2) the decision's historical background; (3) the specific sequence of events leading up to the challenged decision; (4) departures from the normal procedural sequences; and (5) departures from normal substantive criteria.'

<u>Tsombanidis</u>, 352 F.3d at 580 (citing <u>Village of Arlington Heights v. Metro Housing Development Corp.</u>, 429 U.S. 252, 266-68 (1977)).

---

[12] Plaintiffs have not even attempted to suggest that the 421-a community preference requirement was a result of racial animus.

Here, plaintiffs claim that the City intentionally discriminated on the basis of race when creating the City Community Preference Policy because "its decisions to establish, maintain, and expand the policy: (a) were made in the face of a history of discrimination and segregation encouraged by and participated in by the City; (b) were made knowing, or being deliberatively indifferent to, the policy's clear disparate impact on opportunity to participate on equal terms and its tendency to perpetuate segregation; (c) constituted choices to reject more pro-integrative alternatives; (d) are reflective of the City's consciousness of what policies it thought that particular racial and ethnic groups "wanted," as well as other race-awareness; and (e) responded to racially- and ethnically-influenced community and political opposition."   Am. Compl. ¶ 8; see also Am. Compl. ¶¶ 9, 113-32, 171.

These allegations do not constitute a prima facie case of disparate treatment against a municipality.  Plaintiffs allege absolutely no facts evidencing that the decision to use a community preference was made in the face of evidence that other alternatives would have been more pro-integrative, or that the City was conscious of policies that it thought particular groups "wanted," or that the City responded to racially influenced opposition.  Although plaintiffs identify their protected class as African-Americans, there is no allegation that the City defendant intentionally treated the plaintiffs differently based on animus toward their race, or that the City Community Preference Policy was created as a result of animus toward African-Americans. Furthermore, the plaintiffs do not specifically identify what other groups are similarly situated to their protected class and how these groups are provided differential treatment by the City defendant in the application of the City's community preference.   Accordingly, the First Amended Complaint fails to allege sufficient facts for the court to find an inference of

intentional discrimination on the basis of race.   Thus, plaintiffs' disparate treatment discrimination claims must be dismissed.

**III.     The First Amended Complaint Fails to State a Claim for Discrimination Under the NYCHRL Upon Which Relief Can Be Granted.**

As an initial matter, pursuant to 18 U.S.C. § 1367, the court should decline to exercise supplemental jurisdiction over plaintiffs' State law claims in the absence of any viable federal claims.   See Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("Federal courts normally decline to exercise jurisdiction over state law claims when all the federal claims have been dismissed before trial.").   As demonstrated above, plaintiffs fail to state a cause of action for discrimination under the FHA.   Thus, the court in this action may within its discretion decline to assert supplemental jurisdiction over plaintiffs' NYCHRL claims after dismissing plaintiffs' FHA discrimination claims.

Moreover, because RPTL § 421-a(7)(d)(iii) mandates the application of the community preference at the three subject affordable housing developments, the requirements of NYCHRL are preempted.   Where it is determined that the State has preempted an entire field, a local law regulating the same subject matter is deemed inconsistent with the State's overriding interests because it either (1) prohibits conduct which the State law, although perhaps not expressly speaking to, considers acceptable or at least does not prescribe or (2) imposes additional restrictions on rights granted by State law." Jancyn Mfg. Corp. v. County of Suffolk, 71 N.Y.2d 91, 96 (1987).

In any event, even if the Court asserts supplemental jurisdiction over plaintiffs' State law claims, and even if plaintiffs' NYCHRL claims were not preempted, plaintiffs fail to plead a prima facie cause of action for intentional discrimination under the NYCHRL.   To plead a cause of action for intentional discrimination in violation of the NYCHRL, a plaintiff must

plead facts suggesting that "she has been treated less well than other [similarly situated individuals] because of her [protected characteristics]." Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 78 (1st Dep't 2009). While the NYCHRL is to be construed more liberally than its federal and state law counterparts, "the broader purposes of the City HRL do not connote an intention that the law operate as a 'general civility code.'" Id. at 79 (internal citation omitted). Where a plaintiff fails to plead facts suggesting that "discrimination was one of the motivating factors for the defendant's conduct," she fails to plead a cause of action for intentional discrimination under the NYCHRL. Chin v. N.Y.C. Hous. Auth., 106 A.D.3d 443, 445 (1st Dep't 2013).

Here, plaintiffs' discrimination claims under the NYCHRL rely on the same factual allegations asserted for their FHA claims. As described in more detail above, plaintiffs have not provided statistics regarding the racial demographics of the particular community districts in which the affordable housing developments to which plaintiffs applied are located (Community Districts 5, 6, and 7), nor have plaintiffs provided statistics regarding the race and ethnicity of income-eligible potential applicants for the three community districts in which the plaintiffs applied for housing versus the potential applicant pool as a whole. Moreover, plaintiffs have not pled specific statistics for all 59 community districts throughout the City, which would be necessary to allege a prima facie disparate impact case challenging the City Community Preference Policy as it applies City-wide. In addition, the City Community Preference Policy as applied to the three subject affordable housing developments does not have a significant effect as a practical matter because of plaintiffs' positions on the lottery logs and the small number of available apartments. Finally, the First Amended Complaint does not allege that plaintiffs

applied to an affordable housing project where the City Community Preference Policy has been or will be applied.

Plaintiffs have also failed to assert statistics relating to the effect of the City's community preference on the racial makeup of each of the 59 community districts throughout the City from the time the community preference was first implemented to now.   Moreover, the First Amended Complaint is devoid of any allegation that the City defendant intentionally treated the plaintiffs differently based on animus toward their race, or that the City's Community Preference Policy was created as a result of animus toward African-Americans.   Without more, the First Amended Complaint fails to allege facts to support a plausible inference of discrimination under the NYCHRL.

## CONCLUSION

For the reasons set forth above, the plaintiffs' First Amended Complaint fails to state a cause of action, and consequently this action should be dismissed.

Dated:      New York, New York
            October 2, 2015

> ZACHARY W. CARTER
> Corporation Counsel of the City of New York
> Attorney for Defendant
> 100 Church Street
> New York, New York 10007
> (212) 356-2210
>
> *Jasmine Georges*
> Jasmine M. Georges
> Assistant Corporation Counsel