UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

JANELL WINFIELD, TRACEY STEWART,        :
and SHAUNA NOEL,

        Plaintiffs,        :        15-CV-5236 (LTS) (DCF)

  -against-        :

CITY OF NEW YORK,        :

        Defendant.        :

---------------------------------------------------------------x

PREMIMINARY PRE-TRIAL STATEMENT

Pursuant to the Initial Conference Order of July 16, 2015 (ECF No. 9), counsel for the parties state that they met and conferred on June 29, November 15, and November 23, 2016, and further state that:

**Item (a).** This action alleges that the preference policy in the City's affordable housing lotteries given to residents of the community district in which the affordable housing is built (the "City's preference policy"):[1] (1) perpetuates residential segregation; (2) causes a disparate impact to the detriment of African-Americans and Latino New Yorkers; and (3) constitutes intentional discrimination against African-American New Yorkers.  Plaintiffs characterize the preference policy, applicable to 50 percent of units in a new housing development, as dividing otherwise qualified applicants into two categories of New York City residents: those current residents of the community district where the housing development is located, regardless of how

---

[1] According to Defendant, a preference is sometimes applied pursuant to NY RPTL section 421-a, and that preference is not part of the City's preference policy.  Defendant incorporates this disclaimer in respect to all references to "City's preference policy" that occur throughout this document.

1

short a time they have been residents, and those who are not currently residents of that community district, regardless of how rent-burdened they are or how difficult their housing situation is or has been.  Plaintiffs assert that the City's preference policy, where applicable, always prefers the current community district resident to the New Yorker who currently lives outside of the community district.

According to Defendant, the City's preference policy, which gives eligible current residents of the community district in which a new affordable housing development is located priority for up to 50 percent of the available affordable units in some buildings financed through discretionary subsidies or density bonuses from New York City is intended to ensure that local residents, many of whom have deep roots in the community and have persevered through years of unfavorable living conditions, are able to remain in their neighborhoods as those neighborhoods are revitalized.  In addition, Defendant asserts that the City's preference policy ensures that neighborhoods see that new growth and investments in affordable housing provide some benefits to local residents to offset the burdens that development may impose, making it possible for the City to overcome local resistance and achieve its ambitious affordable housing goals.

The Plaintiffs assert claims under the Fair Housing Act, and Plaintiffs have asked the Court to assume supplemental jurisdiction over their New York City Human Rights Law claims.

**Item (b)**. There are no pending related criminal or civil actions.

**Item (c).** Plaintiffs assert that this Court has federal question jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 2201; and 42 U.S.C. § 3613, and points out to the Court that Defendant has admitted in its answer that, "Defendant admits that this Court has

subject matter jurisdiction over Plaintiffs' federal claims" (ECF No. 49, ¶ 8).[2]  Defendant asserts that the Court lacks subject matter jurisdiction insofar as Plaintiffs lack standing to challenge the City's preference policy, and even if they have standing, lack standing to challenge the City's preference policy as having a discriminatory intent or impact as against racial or ethnic groups other than African-Americans.  However, if Plaintiffs are found to have standing, the Court has jurisdiction over Plaintiff's claims under the Fair Housing Act.  The parties agree that this Court is permitted to assume supplemental jurisdiction over Plaintiffs' New York City Human Right Law claims pursuant to 28 U.S.C. § 1367.  However, if the Court were to exercise supplemental jurisdiction, Defendant contends that the standing issues articulated above are likewise applicable and further that there would not be jurisdiction over Plaintiff's perpetuation of segregation claim as no such claim exists under the New York City Human Rights Law, and there would not be jurisdiction over Plaintiffs' purported cause of action pursuant to NYC Admin. Code section 8-107(5)(a)(2) as Plaintiff fails to allege facts to state a claim for such relief.

   **Item (d).**  Plaintiffs assert that the material uncontested or admitted facts at this time, including facts admitted by the operation of Rule 8(b)(6) of the Federal Rules of Civil Procedure, are as follows:

   (1) The City's preference policy was established in the mid-to-late 1980s.

   (2) The City's preference policy was modified in 2002 such that the percentage of affordable units in a lottery for which residents of district in which the affordable housing is developed have priority increased from 30 percent to 50 percent (as alleged in First Amended Complaint ¶¶ 81 and 83, and not denied in Defendant's

---

[2] Defendant intends to amend this paragraph of its answer to be consistent with its affirmative defense that Plaintiffs lack standing, which is a matter of subject matter jurisdiction.

answer).

(3) The City's preference policy that is being challenged in this action was formulated, proposed, and continues to be administered by HPD (as alleged in First Amended Complaint ¶ 16, and not denied in Defendant's answer).

(4) The City's current "Housing New York" plan does not have among its "guiding principles" reducing or avoiding the perpetuation of segregation (as alleged in First Amended Complaint ¶¶ 148, and not denied in Defendant's answer).

(5) New York City has a long history of residential segregation and continues to be characterized by extensive residential segregation on the basis of race, ethnicity, and national origin.  This was true during the first half of the 20 century, and continued in the post-World War II period (as alleged in First Amended Complaint ¶¶ 1, 17, 32, and 33, and not denied in Defendant's answer).

(6) Over the last several decades and continuing, there is substantial overlap between the neighborhoods where public housing is concentrated and the neighborhoods where African-American or Latino populations are concentrated (as alleged in First Amended Complaint ¶ 25, and not denied in Defendant's answer).

(7) Neighborhoods where African-American populations are highly concentrated were and are characterized by high concentrations of poverty (as alleged in First Amended Complaint ¶ 4, and not denied in Defendant's answer).

(8) Over the last several decades and continuing, there is an inverse correlation between concentration of public housing and neighborhoods where the white population is concentrated (as alleged in First Amended Complaint 26, and not denied in Defendant's answer).

(9) When the City's preference policy was instituted, the City did not evaluate whether the policy would perpetuate residential segregation. When the preference was increased from 30 percent to 50 percent, the City did not evaluate whether doing so would perpetuate residential segregation, and did not modify that stated justification for the policy (as alleged in Complaint ¶¶ 82, 85, and 86, and not denied in Defendant's answer).

Defendant agrees that Item 1 is uncontested.  Defendant asserts that items (2) through (9) on Plaintiffs' list are not uncontested or material facts because Defendant intends to amend its answer to either deny or deny knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff asserts are admitted material facts, and because even if uncontested facts, some or all of the purported facts are not material.

Defendant denies that any of the foregoing material uncontested or admitted facts constitute conduct contrary to the law or in violation of Plaintiffs' rights.

**Item (e).**  There are no uncontested legal issues at this time.

**Item (f).**  In Plaintiffs' view, the Court will be called on to determine the legal standards applicable to disparate impact and intentional discrimination claims, including intentional discrimination claims based in whole or part on a Defendant's being influenced by those who wish to retain a racial or ethnic status quo.  The application of these standards to the facts in this case will be determined by a jury.  The Court will also be called on to determine the applicable burdens of proof and to determine the equitable and injunctive relief to be ordered in the event of a jury finding of liability.

In Defendant's view, the legal issues to be decided by the Court include, but are not limited to: how to measure disparate impact; what constitutes a disparate impact; what

constitutes the counterfactual against which policy's impact is to be compared; what constitutes racial segregation; how to measure the perpetuation of racial segregation; whether preventing displacement of existing residents or responding to the fear of displacement by existing residents in neighborhoods in which there is new construction are legitimate government purposes; to what extent some or all of Plaintiffs' claims are barred by the statute of limitations; whether Plaintiffs have standing to assert the claims, and whether they have standing to assert there has been a disparate impact on any racial or ethnic group that is not African-American.

**Item (g).** Plaintiffs' statement of material disputed facts: In respect to the first step of Plaintiffs' disparate impact and perpetuation-of-segregation claim, Plaintiffs claim that the City's preference policy takes a highly diverse Citywide eligible applicant pool (between approximately 25 and 30 percent African-African, Latino, and White), and shrinks that pool into much more segregated individual community district eligible applicant pools, pools that strongly favor the dominant racial or ethnic group in the community district.  The City's preference policy, Plaintiffs allege, thereby perpetuates segregation and deprives members of the racial and ethnic groups underrepresented in the community district of the right to compete equally for the units subject to the City's preference policy.

Plaintiffs believe that, to the extent that Defendant assert that factors other than the City's preference policy (for example, different residential preferences of racial and ethnic groups) accounts for any disparity, Defendant's theories are speculative and, even if they were not, the City's preference policy independently operates to perpetuate segregation more than would be the case with a policy of equal access for all New Yorkers who are income-eligible.

In respect to the second step of the disparate impact and perpetuation-of-segregation claim, the Plaintiffs believe, to the extent that the City asserts that its preference policy serves

what it claims are important Defendant interests (to wit: (1) giving long-term residents of community districts that have faced challenging conditions in decades back preferential treatment in gaining access to new affordable housing in their existing community districts; and (2) overcoming "community opposition" to the building of affordable housing), those claims are without merit. Plaintiffs assert that the first identified interest, above, is not significant when considered in the context of Defendant's failure even to assess the desire of many of its citizens for residential mobility and in the context of the consequences of the City's failure to meet its obligations to affirmatively further fair housing, and Plaintiffs also assert that, even if the first cited interest rose to the requisite level to constitute a defense, the City's preference policy is not tailored to achieving the articulated interest. In respect to "community opposition," Plaintiffs assert first that the housing lottery equivalent of bowing to discriminatory customer preference can never be a legitimate interest of Defendant. Plaintiffs also assert that the City is in control of and, indeed, is constituted by, the actors (such as City Council members and Community Boards) that have all necessary authority to approve affordable housing. As such, the desire of a Defendant to convince itself to act cannot be a legitimate interest to justify a policy that perpetuates segregation and has a disparate impact.

In respect to the third step of the disparate impact and perpetuation-of-segregation claim, if needed, Plaintiffs assert there are a variety of alternatives that meet Defendant's interests in distributing the limited resource of new affordable housing in a way that is better targeted to need, including, of course, simply using household income, regardless of current place of residence within New York City, as a proxy for housing need.

In respect to Plaintiffs' intentional discrimination claim, Plaintiffs assert that Defendant has been influenced by community boards, local politicians, advocacy groups, and other

community-based opponents of allowing existing racial or ethnic demographics (or "culture," or "look," or "feel') of a neighborhood or a community district to change. That is, such influence played a role in Defendant's decisions to establish, expand, and maintain its preference policy. Defendant denies this influence. Plaintiffs also point to evidence of disparate impact and perpetuation of segregation, Defendant's history of pro-segregation conduct, pretextual explanations offered by Defendant for its conduct, and Defendant's ignoring considerations that counselled against the application of its preference policy (including the consequences of failing to adhere to its affirmatively furthering fair housing obligations, the need to overcome other of Defendant's policies that perpetuate segregation (such as Defendant's policy in respect to the siting of affordable housing), and the failure to consider the needs and desires of many of its citizens for residential mobility, particularly residential mobility into neighborhoods of opportunity to which those residents, disproportionately African-American and Latino, have traditionally been excluded).

Defendant states that Plaintiffs' above-mentioned assertions are in dispute but does not concede they are all material facts or that they represent all the material facts in dispute, especially since discovery has not yet been conducted. Defendant further asserts the following contested facts:

(1) The City's preference policy was modified in 2002 such that the percentage of affordable units in a lottery for which residents of district in which the affordable housing is developed have priority increased from up to 30% to up to 50%.

(2) RPTL section 421-a requires that developments receiving benefits pursuant to 421-a provide residents of the community board where the multiple dwelling which receives the benefits shall, upon initial occupancy, have priority for the purchase or rental of fifty percent of the affordable units.

8

(3) A community preference given to a building in the City that receives RPTL section 421-a benefits is given pursuant to the state law mandate.

**Item (h).**  Plaintiffs' first cause of action (disparate impact and perpetuation of segregation under federal law) arises under the Fair Housing Act, 42 U.S.C. §§ 3604 (a) and (b) and under 24 C.F.R. § 100.500.  Relevant case law includes *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project,* 135 S. Ct. 2507 (2015) (reconfirming the existence of the cause orf action); and *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926 (2d Cir. 1988), *MHANY Mgmt., Inc. v. Incorporated Village of Garden City,* 985 F. Supp. 2d 390 (E.D.N.Y. 2013), *vacated in part on other grounds and remanded* by *MHANY Mgmt., Inc. v. County of Nassau,* 819 F.3d 581 (2nd Cir. 2016), *Langlois v. Abington Hous. Auth.*, 234 F. Supp. 2d 33 (D. Mass. 2002), *United States v. Incorporated Village of Island Park*, 888 F. Supp. 419 (E.D.N.Y. 1995), and *Dews v. Town of Sunnyvale, Tex.*, 109 F. Supp. 2d 526 (N.D. Tex. 2000) (all speaking to methods of proving impact and/or perpetuation and the required extent of such impact and/or perpetuation).  *Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994), makes clear that the deprivation of the right to compete equally is a cognizable injury, and *Connecticut v. Teal*, 457 U.S. 440 (1982) established the principle that a lack of impact at the "bottom line" does not excuse disparate impact at an earlier stage of the process.

Plaintiffs' second cause of action (disparate impact and perpetuation of segregation under the New York City Human Rights Law) arises under NYC Admin. Code §§ 8-107(5)(a) and (b) and under NYC Admin. Code § 8-107(17).  Section 1 of the 2005 New York City Local Civil Rights Restoration Act, Local Law 85 of 2005 (the "Restoration Act"), provided the federal law can be a guide to the interpretation of the City Law only insofar as federal law represents a floor below which City Law cannot fall, not a ceiling beyond which City Law cannot rise.  The

Restoration Act provided that the City Law's provisions must be interpreted to accomplish the City Law's "uniquely broad and remedial" purposes, a provision now codified in NYC Admin. Code § 8-130(a).  Local Law 35 of 2016, now codified as NYC Admin. Code §§ 8-130(b) and (c), ratified the way that three cases understood the Restoration Act requirements regarding broad construction, the interpretative process used in those cases as illustrative of the process that must be used in respect to all provisions of the City Human Rights Law, and the application of the construction requirements to particular issues.  Those cases are: *Albunio v. City of New York*, 16 N.Y.3d 472 (2011) (every provision of the law must be given the most Plaintiff-friendly interpretation reasonably possible), *Bennett v. Health Management Systems, Inc.*, 92 A.D.3d 29 (1st Dep't 2011) (there are no issues that are exempt from the requirement of "uniquely broad interpretation), and the majority opinion in *Williams v. New York City Housing Authority, 61 A.D.3d 62* (1st Dep't 2009) ("[T]he Restoration Act notified courts that (a) they had to be aware that some provisions of the City HRL were textually distinct from its state and federal counterparts, (b) *all* provisions of the City HRL required independent construction to accomplish the law's uniquely broad purposes, and (c) cases that had failed to respect these differences were being legislatively overruled).  *Williams* and *Bennett* also identified the factors that were supposed to guide interpretation in all instances.

Plaintiffs' third cause of action (intentional discrimination under federal law) arises under the Fair Housing Act, 42 U.S.C. § 3604 (a) and (b).  Key case law on the principle that being influenced by those who act in part for discriminatory reasons (even if the Defendant itself holds not discriminatory animus) are *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181 (2d Cir. 1987) and *MHANY Mgmt., Inc. v. County of Nassau,* 819 F.3d 581 (2nd Cir. 2016).  *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) identifies factors among

those to be considered in a discrimination-by-government-entity case. *Robinson v. 12 Lofts Realty*, 610 F.2d 1032 (2d Cir. 1979) established that there was no room under the Fair Housing Act for partial racial discrimination. And *Desert Palace v. Costa*, 539 U.S. 90 (2003) made clear that mixed-motive analysis was available regardless of the type of proof available to a Plaintiff.

Plaintiffs' fourth cause of action (intentional discrimination under the New York City Human Rights Law) arises under NYC Admin. Code §§ 7-107 (5)(a) and (b). Plaintiffs refer the Court to the case law cited in respect to Plaintiffs' second cause of action, and note in particular *Bennett v. Health Management Systems, Inc.*, 92 A.D.3d 29 (1st Dep't 2011) (a Defendant's providing of false, incomplete, or misleading reasons for its conduct allows the inference of guilt that traditionally arises from evidence of consciousness of guilt), and *Williams v. New York City Housing Authority, 61 A.D.3d 62* (1st Dep't 2009) (discrimination is not permitted to play any role in activities covered by the City Law).

**Item (i).** The City's defenses include that the City's preference policy does not violate the Fair Housing Act or the New York City Human Rights Law, as it has not caused Plaintiffs to suffer a disparate impact based upon their race, has not perpetuated segregation, nor does it constitute intentional discrimination against African-Americans or based upon race. In the alternative, even if there is a disparate impact or there is perpetuation of segregation caused by the City's community preference policy, the City's community preference policy is necessary to achieve a substantial, legitimate, nondiscriminatory governmental interest, and for the purposes of the Human Rights Law, the City's community preference policy likewise bears a significant relationship to a significant governmental interest. The City further asserts that the City has not violated the Plaintiffs' rights under the United States Constitution, the laws of the United States, the State of New York or the City of New York.

The City additionally asserts that this court lacks subject matter jurisdiction to the extent some of Plaintiffs claims are barred by the applicable statute of limitations.  Further, Plaintiffs do not have standing to challenge the City's preference policy as they have not suffered a concrete, particularized injury that is traceable to the City's preference policy.  The community preference applied to the developments in which Plaintiffs sought affordable housing was implemented pursuant to the requirements New York State Real Property and Tax Law § 421-a, and not pursuant to the City's community preference policy.[3]  Plaintiffs also lack standing to assert a disparate impact on racial or ethnic groups other than African-Americans.  Finally, Plaintiffs fail to state a cause of action for a violation of NYC Admin. Code section 8-107(5)(a)(2) and no cause of action exists under the New York City Human Rights Law for perpetuating segregation.  The Defendant will rely upon several cases, rules, and statutes, including, but not limited to, Texas Dep't of Housing and Com. Affairs v. The Inclusive Comms. Project, 135 S. Ct. 2507 (2015).

**Item (j).**   The measure of proof is preponderance of the evidence, except where the Admin. Code requires substantial evidence.  The burden of persuasion is on Plaintiffs, except that, in Plaintiffs' view:

 (1) in respect to the disparate impact and perpetuation-of-segregation claims arising under the Fair Housing Act, if Plaintiffs demonstrate either that: (1) the City's preference policy creates, increases, reinforces, or perpetuates segregation more than would be the case in the absence of the policy, or (2) the City's preference policy either actually or predictably results in a material disparate impact based on race or national origin at any stage of the affordable housing application or qualification process, regardless of whether there is a "bottom-line" racial or

---

[3] Defendant acknowledges that its motion to dismiss on this ground was denied.

national origin balance, then, it is Defendant's burden to demonstrate that its preference policy is necessary to achieve a substantial, legitimate, and non-discriminatory governmental interest. The burden then shifts back to the Plaintiffs to demonstrate that an alternative to the policy would serve the City's substantial, legitimate, and non-discriminatory governmental interest equally well with a less discriminatory effect.

(2) in respect to the disparate impact or perpetuation of segregation claim arising under the New York City Human Rights Law, if Plaintiffs make out their prima facie case, it is Defendant's burden to demonstrate that its preference policy bears a significant relationship to the satisfaction of a significant interest of Defendant; Plaintiffs would then have a burden of producing substantial evidence that an alternative policy with less disparate impact is available to Defendant, and Defendant then has the burden of persuasion to demonstrate that Plaintiffs' alternative or alternatives would not serve Defendant as well;

(3) in respect to the intentional discrimination claim arising under the Fair Housing Act, if Plaintiffs demonstrate that discrimination played a role in Defendant's conduct, Defendant has the burden of persuasion on the issue of whether Defendant would have pursued its preference policy even in the absence of the discriminatory factor, and, if successful, Defendants would thereby limit the damages available to Plaintiffs; and

(4) in respect to the intentional discrimination claim arising under the New York City Human Rights Law, if Plaintiffs demonstrate that discrimination played a role in Defendant's conduct, liability is established and remedies are not limited.

In Defendant's view:

To establish its intentional discrimination claim under the Fair Housing Act, Plaintiff must establish that the City's preference policy was enacted to intentionally discriminate against

African-Americans (or other racial or ethnic groups if the Court finds Plaintiff has standing). The burden then shifts to Defendant to demonstrate a legitimate, non-discriminatory reason for its policy. To establish its disparate impact claim under the Fair Housing Act, Plaintiff must establish that the City's preference policy causes a disparate impact on African Americans by establishing a significantly adverse or disproportionate impact on African Americans, actually caused by the City's preference policy. If Plaintiff establishes the above, to defeat the disparate impact claim, the Defendant must show that the City's preference policy furthers a legitimate, bona fide governmental interest. The Plaintiffs can then rebut by establishing an alternative to the policy that would serve the City's interest equally well with a less discriminatory effect. Defendants agree with Plaintiffs statement in paragraph (2) except do not agree that a cause of action for perpetuating segregation exists under the New York City Human Rights Law.[4]

**Item (k).** It is Defendant's position that Plaintiffs' time to further amend their pleadings and to add or substitute parties has expired; it is Plaintiffs' position that it is appropriate to permit the First Amended Complaint to be amended and to permit the addition or substitution of parties for a period of 21 days after the disclosures required under Fed. R. Civ. P. 26(a)(1) have been made.

**Item (l).** All parties have *not* consented to the transfer of the case to a magistrate judge for all purposes, including trial.

**Item (m).** The parties will make the disclosures required under Fed. R. Civ. P. 26(a)(1) on or before December 22, 2016.

**Item (n).** Among the subjects as to which Plaintiffs believe disclosure will be needed are: (1) the existence, content, and impact of the City's preference policy; (2) the existence, scope,

---

[4] Defendant is still evaluating the standard for discriminatory intent under the New York City Human Rights Law.

and impact of residential segregation in the City; (3) the motivations for the City's preference policy; (4) the nature of support from public officials and from the public for the City's preference policy; (5) the nature of opposition from public officials and from the public to abandoning the City's preference policy; (6) the interests of the City, if any, that are advanced by the City's preference policy; and (7) the interests of the City, if any, that are harmed by the City's preference policy.

Among the subjects as to which Defendant believes disclosure will be needed are: (1) studies, analysis and documents supporting the Plaintiffs' allegations in the first amended complaint; (2) Plaintiffs' residential history; (3) Plaintiffs' applications for affordable housing and reasons for applying to affordable housing lotteries; (4) Plaintiff's financial eligibility for affordable housing.

Each party reserves the right to supplement this list of subjects, and reserves the right to object to disclosure of information, including information within the subjects listed.

Plaintiffs propose September 8, 2017 for the cut-off of fact discovery (approximately nine months from initial conference); Defendant proposes April 9, 2018 (approximately 16 months from initial conference). All parties note that it may be necessary to adjust these dates to take account of that which develops in the course of discovery.

**Item (o).** The parties agree that expert testimony will likely be required in respect to analysis of the operation and impact of the City's preference policy and in respect to the existence of residential segregation and the impact of the City's preference policy. Plaintiffs believe that additional areas of expert testimony will include the impact of residential segregation on the lives of the City's residents, the history of intentional segregation in and by the City; the scope of the City's affirmatively furthering fair housing obligations under federal

grant programs; residential preferences, if any, held by any racial or ethnic groups; and factors having an impact on the openness of households to geographic mobility in residential housing.

Defendant believes that expert testimony will be required regarding the racial and income demographics and trends in the City, gentrification and other changes in some of the City's neighborhoods, displacement and fear of displacement from gentrification and other changes, impact of displacement and fear of displacement, and responses, resolutions and prevention of displacement and fear of displacement.

This list is necessarily incomplete, and the parties anticipate supplementing this statement.

Defendant proposes a six-month period for expert discovery, to take place after the conclusion of fact discovery; in the event that the Court accepts Plaintiffs' proposal regarding fact discovery, Plaintiffs propose a four-month period, for expert discovery, to take place after the conclusion of fact discovery.  In the event that the Court directs a longer period for fact discovery, Plaintiffs propose that a four-month expert discovery period commence on September 11, 2017.

The parties agree that Plaintiffs must identify their experts and produce the reports of those experts within 30 days after the commencement of the expert discovery period; and that Defendant must identify its experts and produce the reports of those experts within 30 days after that.  The parties inquire of the Court as to its preference for identifying rebuttal experts and producing rebuttal reports, if any.

**Item (p).** Plaintiffs will endeavor to be maximally efficient with respect to depositions, but believe that they will need to take in the range of between 15 and 20 party and non-party depositions in light of the fact that the scope of the case will require testimony from current City

officials, testimony from former City executive branch officials during the periods that City policy was modified or enforced, and testimony from some of those persons and organizations who have, in Plaintiffs' opinion, worked to influence the City to preserve existing neighborhood demographics. Defendant reserves the right to object to the proposed number of depositions, as well as to object to who is being deposed. Defendant believes that it will want to depose Plaintiffs and others as necessary. Defendant does not anticipate requesting more than 10 depositions at this time. Both parties reserve the right to object to topics of depositions.

**Item (q).** The parties do not believe that settlement discussions would be fruitful at this time.

**Item (r).** Plaintiffs, having requested a jury trial, believe that they are entitled to have the matter tried by a jury, but acknowledge that the question of whether equitable or injunctive relief should be ordered, and, if so, what that relief should be, is a question for the Court.

The Defendant asserts that the case should be tried without a jury, and that Plaintiffs are not entitled to a jury for the injunctive relief sought.

The parties are unable to estimate at this time the number of trial days needed.

**Item (s).** The parties reserve their respective rights to seek orders pursuant to Rules 16(b), 16(c), and 26(c) of the Federal Rules of Civil Procedure, and advise the Court that they are currently determining whether agreement can be reached in respect to: (1) confidentiality and claw-back orders; (2) issues related to electronic discovery; (3) the scope and time frame of document discovery.

The parties' statements herein are based upon their involvement in the case to date, and because discovery has not yet been conducted, are by their nature incomplete. Consequently, they reserve their rights to add or amend the content of this Statement once discovery is

completed.

Dated: New York, New York
December 1, 2016

                                              */s/ Craig Gurian*
                                              Craig Gurian
                                              Anti-Discrimination Center, Inc.
                                              1745 Broadway, 17th Floor
                                              New York, New York 10019
                                              (212) 537-5824
                                              *Attorney for Plaintiffs*


                                              */s/ Melanie V. Sadok*
                                              ZACHARY W. CARTER
                                              Corporation Counsel of the
                                              City of New York
                                              Melanie V. Sadok, Of Counsel
                                              100 Church Street
                                              New York, New York
                                              (212) 356-2210
                                              *Attorney for Defendant*