

OFFICE OF THE MAYOR
THE CITY OF NEW YORK

ALICIA K. GLEN
DEPUTY MAYOR FOR HOUSING
AND ECONOMIC DEVELOPMENT

July 2, 2015

Regulations Division
Office of the General Counsel
Department of Housing and Urban Development
451 7th Street SW, Room 10276
Washington, D.C. 20410-0500

Re: Small Area Fair Market Rents; Advanced Notice of Proposed Rulemaking; Docket No. FR–5855-A-01

To Whom it May Concern:

Thank you for the opportunity to comment on advanced notice of proposed rulemaking to amend HUD's fair market rent (FMR) regulations applicable to the Housing Choice Voucher (HCV) program. I am submitting the comments below on behalf of the New York City Housing Authority (NYCHA) and the New York City Department of Housing Preservation and Development (HPD), which administer the largest and fifth-largest HCV programs in the country respectively, and collectively administer approximately 120,000 vouchers.

New York City appreciates HUD's intent of offering Small Area Fair Market Rents (SAFMRs) to establish more localized payment standards and thereby increase neighborhood choice.

New York City voucher holders live in 146 different ZIP codes across our five boroughs. We would welcome the flexibility to adjust payment standards to render them commensurate with the actual fair market rent of our many neighborhoods, and believe that a limited use of these standards would be interesting to explore on a trial basis.

We are concerned, however that a requirement for NYCHA, HPD and other PHAs to only utilize SAFMRs would be harmful to existing voucher holders, administratively burdensome for the agencies, confusing for voucher holders seeking apartments and could be confusing for landlords and property managers with units in more than one ZIP code. We are also deeply concerned about the unpredictable budget implications of the change and the potential reduction of vouchers available in New York City during a time when we are focused on increasing housing resources to address a severe affordable housing shortage that has led to our crisis of homelessness.

### Impact on existing voucher holders

HPD and NYCHA conducted analyses of where our voucher holders live by ZIP code in order to assess the impact of this proposal if it were mandated. Both agencies' analyses show that more voucher holders live in

ZIP codes that would experience a decrease in payment standard under SAFMRs than those that would experience an increase in payment standard. We estimate more than 60,000 households would find themselves living in areas with rents above the SAFMR.

Of families receiving HPD vouchers, only 155 households out of 21,000 currently live in the 10 ZIP codes that would have the greatest increased payment standard. The average voucher payment standard across these ZIP codes would increase by an amount between $590 and $818 per month. Fewer than 4% of NYCHA's 82,000 tenant-based[1] voucher holders currently live in the 10 ZIP codes with the greatest increase payment standard and these households would see a rent increase of $269 to $455 per month.

New York City has a declared rental emergency due to the 3.45% vacancy rate; voucher holders frequently need up to 6 months to locate a unit that qualifies for subsidy. Vacancy rates in neighborhoods of higher opportunity are even more limited. Further, HPD witnessed families' reluctance to move when we reduced payment standards from 110% FMR to 105% FMR as part of efforts to prevent termination as a result of funding shortfall in 2013. Only a limited number of households have moved to reduce rent burden because there are a limited set of available units. For all of these reasons, the City is deeply concerned that increased FMRs will not result in increased residency for Section 8 voucher holders even in ZIP codes experiencing an increased standard.

A significantly higher number of HPD voucher holder households – 2,200 – live in the 10 ZIP codes that would experience the greatest decrease of payment standards, between $352 and $459 per month. For NYCHA voucher holders, the decrease in payment standards in these ZIP codes would be similarly impactful, with decreases of up to $421 per month.

We recognize that this data may reaffirm HUD's concern about the concentration of voucher holders in lower-income neighborhoods, however, a tenet of both the SAFMR program and the Housing Choice Voucher program is to provide tenants with the opportunity to choose their housing. Given the preference of many households to remain close to family, friends and support networks it is crucial HUD considers the immediate impact that a mandatory change to SAFMRs would have on existing voucher holders.

If households moved to new apartments under this new policy, as many as 60,000 voucher holders might be seeking apartments simultaneously in the years following the policy change. Securing an apartment with a voucher is already a challenging process for households; finding an apartment in a tight market, regardless of neighborhood can be a lengthy and involved process, and finding landlord that will accept a voucher, despite New York's income discrimination laws, can be challenging. If voucher holders that experience a decrease in voucher payment standard do not move, we estimate that a change to SAFMRs would more than double the number of rent burdened households paying more than 30-percent of their income on rent.

There could be no worse outcome of this policy change than to force so many of our city's most vulnerable families to limit them to choosing between a significantly increased rent burden or breaking community ties by moving to a new neighborhood.

HUD recognizes the impacts that moving may have on households given the extensive support, including counseling, moving assistance and post-move stabilization, funded in the mobility initiatives in Baltimore and Philadelphia. The New York households that would be affected by the SAFMRs will experience the disruption of a move without any of this support that HUD has provided for other households participating in mobility initiatives. Will HUD propose some funding source or other tool to mitigate the impact of the changed standards on existing households?

---

[1] Analysis based on 80,000 of NYCHA's 82,000 vouchers.

**Impact on budget and total vouchers available**

As HUD can appreciate, there is no greater administrative challenge for PHAs across the country than to maximize the use of our budget authority without falling short of resources. Should SAFMRs be implemented as mandatory we are concerned about our ability – particularly in the first several years - to manage our PHAs' budgets given potential volatility in moving patterns.

We are also concerned that the budget uncertainty caused by this volatility will result in issuing fewer new vouchers and decrease leasing activity overall.

**Voucher holders seeking apartments**

New York City's vacancy rate is 3.45% making apartment search extremely difficult particularly for our voucher holders, who are disproportionately disabled and elderly. We are concerned about the use of ZIP code lines to delineate the maximum rent that apartment seekers are looking for. For example, in the neighborhood of St. Albans, Queens, ZIP codes 11412 and 11413 are delineated by a street that is unimportant to any neighborhood boundary yet the FMRs would vary by nearly $200. We can conceive of no easy way to communicate and explain this difference to our voucher holders.

**Impact on landlords and property managers with properties in more than one ZIP code**

Many New York City landlords and even more property managers control properties in more than one ZIP code across the City. Given New York City's extremely tight rental market, landlords who are offering rents that are affordable to Section 8 voucher holders are crucial partners to addressing our affordable housing crisis. We urge HUD to consider what impact these new rent standards may have on landlords, and consider how landlords would be trained on the implementation of the new market rent standards, especially for building owners that own properties in multiple ZIP codes. If information has been collected on landlord satisfaction with SAFMRs in the six demonstration areas, HUD should share this information with stakeholders.

**Project Based Vouchers (PBVs)**

HUD requested comments on whether SAFMRs should apply to Project based Section 8 vouchers. PBVs are an important tool for preserving and creating affordable housing. Vouchers allow HPD to alleviate rent burden for low and moderate income households paying higher rent than they can afford, while also making preservation and new construction projects financially viable by increasing rental income to maximize private debt that can be underwritten. Reducing FMR for PBVs in areas with lower market rents would create a financing gap in our projects by reducing the amount that private funding could leverage. Another form of government subsidy would be needed or the projects would not work. This would be counterproductive to HUD and HPD's work to leverage private financing sources to create and preserve affordable housing.

**City investment in all neighborhoods**

We recognize the goal of a SAFMR program is to improve opportunities for voucher holders. New York City is dedicated to improving neighborhoods and the quality of life of all New Yorkers. Mayor de Blasio's Housing New York Plan is a 10-year, $41 billion plan to create and preserve 200,000 units of affordable housing. In addition, the Mayor is investing nearly $2 billion in citywide infrastructure improvements for neighborhoods to accommodate additional development. The goal is to increase opportunities in all neighborhoods across the City. We are concerned that SAFMRs could lead to the rush of subsidy away from growing neighborhoods that have seen increased opportunities for residents because of investments made by the City. It takes a

significantly long period of time for rents to catch up with the opportunities that are increasingly available in gentrifying neighborhoods. A mandatory SAFMR reduces opportunities in many growing neighborhoods where investments by the City are showing results.

### Comment on methodology

We have concerns, similar to those discussed in the literature (Krieger et al, 2002; Grubesic and Matisziw, 2006), regarding the utilization of ZIP code as the unit of analysis. ZIP codes are an arbitrary geographic designation, created by the United States Postal Service. As a result, both the geographic extent and population can vary drastically across ZIP codes. In New York City, this can be seen with ZIP codes representing a single complex, or even a single building, which is substantively different from an area that spans dozens of blocks. Furthermore, while the Census now provides a limited amount of data by ZCTA, none of the additional data sources that we rely on for a multitude of policy analyses are at a ZCTA level. It is worthwhile to note that ZIP codes and ZCTAs are not entirely coterminous and therefore additional data would be needed to be available at a ZCTA, not ZIP code, level for comparison.

Per comments submitted in the past, we have concerns with HUD's use of the American Community Survey (ACS) as it does not allow for reliable methodology in calculating FMRs. The ACS does not allow for the exclusion of public housing units and HUD's proxy based on rent level fails to adequately represent public housing units in New York. The ACS also does not take into consideration the one million rent regulated units in New York City, all of which skew the distribution of rents in a given area. With the shift to using ZCTAs as the geography of analysis, we are forced into exclusively using the ACS for analysis since it is the only demographic data available at this geography. This limits the City of New York from conducting the rigorous and in depth analyses that HUD expects across a variety of policies and programs.

### Recommendations

Although the Advanced Notice does not indicate HUD's intention to require the use of SAFMRs, we strongly recommend they not be mandated, particularly in high density, low vacancy, and high cost market areas. HUD might consider as an alternative to allow these PHAs to offer a small subset of vouchers with greater payment flexibility to act as mobility vouchers while ensuring the number of vouchers that our PHAs administer does not decrease due to increased cost. If New York City were allowed to take a small number of vouchers and use a payment standard of 130% this would help test the appetite for mobility within our market area. We also urge HUD to share data from its pilot before deciding whether to make SAFMRs mandatory so that New York City's PHAs can assess how pilot findings may apply uniquely to apply to our region.

If HUD moves forward with requiring the use of SAFMRs or an alternative model, we urge HUD to do so on a trial basis that is subject to reevaluation depending on the impacts demonstrated.

We also urge HUD to consider FMR areas larger than ZIP codes but smaller than the current metro regions. Models in other large cities where multiple ZIP codes have been consolidated into a manageable number of regions for both tenants and administrators could inform the appropriate number for a city the size of New York. Alternately, perhaps PHAs should be afforded the ability to designate other borders for FMR boundaries, such as New York City's community districts or even by borough.

Lastly, we urge HUD to pair such a change with development of a program to support households seeking to move with their neighborhood selection, housing search, moving and relocation costs, and with their post-move stabilization.

Request for public comments on replacing the 50th percentile Fair Market Rent (FMR) with the use of Small Area FMRs

*1) What poverty rate and concentration level should be used in determining the criteria for selecting SAFMRs?*

New York City is concerned about HUD potentially targeting areas with poverty levels as low as 20 percent due to the overall impact that the SAFMRs would have on a large urban area such as New York City. The City's poverty rate hovers around 20% yet there is significant variation in the opportunities presented within the boroughs and within neighborhoods. Additionally, nearly half the population of New York City lives in boroughs with poverty rates higher than 20%. As illustrated earlier, this mass concentration would require tens of thousands of households to disrupt their lives by severing community ties, moving to other neighborhoods, and relocating without support. The City would advise HUD to use a higher threshold of relative poverty concentration.

If HUD moves forward with SAFMRs, targeting the program to areas defined with the highest concentrations of vouchers or where the concentration of vouchers is higher than the concentration of rental units could have a better impact than a city-wide strategy. The City would suggest measuring the concentration of vouchers compared to rental units over defining SAFMR areas through poverty level alone.

*3) In terms of number or percentage of metropolitan-area vouchers, what should be the size of the SAFMR program?*

New York City believes that participation in an SAFMR program should be voluntary. Requiring participation would impose a significant administrative burden on New York City's housing agencies as there are over 100 ZIP codes in the City. Shifting from a system of FMRs to one that recognizes more than 100 standards would require extensive redesign of the voucher administration process and require additional ongoing administrative review. New York's housing agencies urged HUD in comments submitted earlier in 2015 to continue to streamline its existing administrative requirements of PHAs and implementing an SAFMR system would instead increase the administrative burden, both in the implementation stage and ongoing.

*4) Should SAFMRs apply to all PHAs in a metropolitan area or only to PHAs that display a pattern of HCV tenant concentration in high poverty census tracts?*

If HUD moves forward with SAFMRs, New York City strongly urges HUD to have these rents apply to all PHAs in a metropolitan area. The City believes that navigating SAFMRs would be sufficiently challenging for tenants and landlords and that having different standards for housing agencies would increase complications of securing a rental unit. If a City had multiple rent standards for PHAs this could create competition between voucher holders within a given area as landlords may prefer to lease to households with vouchers subject to a higher FMR/SAFMR.

*5) Should a PHA be allowed to use SAFMRs even if the PHA or the underlying metropolitan area would not qualify for the use of SAFMRs?*

New York City urges HUD to provide PHAs with the greatest flexibility possible to address the unique housing markets of their regions and believes that participation in SAFMR should be only voluntary for all PHAs. The City recognizes the importance of providing opportunities for households to move to areas that current FMRs would prohibit and urges HUD to work with PHAs on developing strategies to achieve this goal in metropolitan areas where SAFMRs may not provide greater benefit to Section 8 program participants.

*6) Should SAFMRs be applied to PBVs at least for future PBV projects?*

See above. The City urges HUD not to apply SAFMRs to existing or future Project-Based Vouchers projects, many of which are serving as supportive housing for New York City's formerly homeless households.

Adjusting these contract rents could negatively impact owners and New York City does not believe that the SAFMRs would significantly impact our ability to site these projects.

Thank you for considering our comments. If you have any questions please do not hesitate to contact our respective agencies.

Sincerely,

Alicia K. Glen

Deputy Mayor for Housing and Economic Development