UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JANELL WINFIELD, TRACEY STEWART,
and SHAUNA NOEL

                                   Plaintiffs,                **OPINION AND ORDER**

-against-                                                      15-cv-05236 (LTS) (KHP)

CITY OF NEW YORK,

                                   Defendant.
---------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

At a discovery conference before this Court on June 5, 2017, counsel for Plaintiffs Janell Winfield, Tracey Stewart and Shauna Noel moved for permission to file on ECF a preliminary expert report. The report is covered by a Protective Order issued by this Court on February 2, 2017 (Doc. No. 82), which restricts disclosure of analyses of certain confidential data except to counsel for the parties, employees and witnesses involved in this litigation, experts, and Court personnel. For the reasons set forth below, Plaintiffs' request is denied.

**BACKGROUND**

This case concerns a challenge to a New York City policy regarding affordable housing lotteries. The City's policy allocates 50% of units in affordable housing lotteries to individuals who already reside in the community district where the new affordable

1

housing units are being built. This policy is referred to herein as the "community preference policy."

Plaintiffs are three African-American residents of New York City who have applied for but never received low-income housing through a housing lottery. They state that New York City neighborhoods are highly segregated by race. Further, they contend that "neighborhoods of opportunity" (defined as those with high-quality schools, nicer parks, lower crime rates, among other favorable attributes) are predominantly white, whereas less desirable neighborhoods are predominantly non-white. Plaintiffs contend the community preference policy prevents African-Americans and Latinos from competing equally for affordable housing in, and gaining entrance to, better neighborhoods – the neighborhoods of opportunity. (Doc. No. 16, First Amended Complaint ¶¶ 1, 2, 6, 7). They also assert the policy perpetuates and exacerbates segregation in neighborhoods throughout New York City. Hence, they contend that the policy discriminates against them and others because of race in violation of the federal Fair Housing Act, 42 U.S.C. § 3604, and New York City Human Rights Law, NYC Admin. Code § 8-107. They assert both intentional and disparate impact theories of discrimination.

The City denies the allegations of discrimination and asserts that the community preference policy is lawful. In connection with a motion to dismiss that was denied by the Honorable Laura Taylor Swain (Doc. No. 42), the City submitted the declaration of Vicki Been, former Commissioner of the City's Department of Housing Preservation and

2

Development ("HPD"), who explained that the community preference policy "is intended to ensure that local residents, many of whom have deep roots in the community and have persevered through years of unfavorable living conditions, are able to remain in their neighborhoods as those neighborhoods are revitalized." (Doc. No. 18 ¶ 8). Former Commissioner Been also explained that "neighborhoods throughout the City and their elected representatives often resist approving land use actions required to allow greater density or site affordable housing because of concern about the other types of burdens that development may impose." (Doc. No. 18 ¶ 8). The community preference policy, she explained, "makes it possible for the City to overcome that resistance and achieve its ambitious affordable housing goals despite neighborhoods' understandable concerns about the difficulties that new construction and growth may pose." (Doc. No. 18 ¶ 8). In short, the City contends the policy is needed to overcome resistance to building more affordable housing.

After Judge Swain denied the City's motion to dismiss, the parties commenced discovery in earnest. Early in the discovery process, and in order to facilitate the exchange of information, the parties attempted to negotiate a stipulation of confidentiality and proposed protective order. In a conference before this Court concerning the protective order, the City expressed concern over producing raw data about individuals who apply for affordable housing. This data is not available to the general public through the Freedom of Information Law ("FOIL") in order to both safeguard the confidentiality of highly sensitive private information and prevent the

3

incorrect manipulation of complex, sensitive data. Ultimately, on February 10, 2017, this Court found that there was good cause for entry of a Protective Order governing discovery and signed a Protective Order explicitly providing that "[a]ny information, including but not limited to analyses derived from or obtained about the [data], will solely be used in connection with the action and subject to the terms" of the Protective Order. (Doc. No. 82, Appendix A at ¶ 4). This Court ruled, however, that Plaintiffs would be permitted to seek leave to publicly file their data analyses later in the litigation, if necessary. (Doc. No. 85 at 19:23-20:22). The City then produced a substantial portion of the affordable housing lottery data pursuant to the Protective Order.

Plaintiffs commenced analysis of the data produced by the City in anticipation of the need to present statistical evidence as part of their case in chief. Several days before a June 5, 2017 conference scheduled to discuss discovery motions related to the timing and production of documents and depositions, Plaintiffs submitted for *in camera* review a preliminary expert report containing initial analyses of the data exchanged in discovery. The analyses go to Plaintiffs' arguments on the merits of their claim, but were submitted to this Court purportedly to justify expediting discovery. In reality, the analyses were irrelevant to the discovery issues before the Court. At the discovery conference, Plaintiffs orally requested that they be permitted to publicly file their preliminary expert analyses on ECF. The City objected to Plaintiffs' request because, among other reasons, the exchange of expert reports is not contemplated until a later

phase in discovery, the City believes Plaintiffs' preliminary report is misleading and based on incomplete data, and the analyses are subject to the Protective Order. The City explained it is still confirming the accuracy of the data produced, obtaining answers to questions from Plaintiffs about the data, and preparing to produce the remaining data. This Court then ordered further briefing on whether this Court's Protective Order's restriction on publication of Plaintiffs' preliminary expert report should be lifted.

In their letter brief, Plaintiffs argue that good cause does not exist for their preliminary expert report to be subject to the Protective Order, citing *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) ("holding that, '[o]rdinarily,' good cause for a protective order requires a showing of 'clearly defined, specific and serious injury'"). (Doc. No. 138 p. 1). They also contend that because the report was submitted to this Court in connection with a discovery dispute, it is a "judicial document" subject to a presumption of public access.

The City argues that good cause remains for the preliminary expert report to be protected as confidential because:

- The data analyses in the report are subject to a Protective Order entered to facilitate and manage discovery;
- The preliminary analyses do not analyze the totality of relevant data, are misleading, and flawed analytically;
- The City has not had an opportunity to review and respond to the analyses;
- The filing of a preliminary report and acceleration of expert discovery will undermine and interfere with the parties efforts to settle the matter;

- The request to publicly file the analyses is made to titillate the public and wage a media campaign; and

- The analyses are based on non-public data which is private to avoid incorrect manipulation and analyses.

Having considered both parties' arguments, the Court's decision denying Plaintiffs' request is discussed below.

## DISCUSSION

A. **Protective Orders**

The trial court has substantial latitude to fashion protective orders. *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984); *see also In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007). Although Federal Rule of Civil Procedure 26(c)(1) requires good cause for issuance of a protective order, in complex cases such as this one, the Court has discretion to provide for broad protection of discovery during the pretrial stages of litigation even absent a highly particularized finding of good cause. *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d at 222. This is so because under the Federal Rules of Civil Procedure, parties are entitled to broad discovery. These rules have a potential for abuse. There is an opportunity for litigants to obtain information about each other and non-parties that is tangential, sensitive and confidential, as well as information that if publicly released, could be damaging to a party's reputation or exploited for improper purposes. *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("courts have the power to insure that their records are not 'used to gratify

private spite or promote public scandal'") (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

The Second Circuit also has recognized that protective orders serve "the vital function . . . of 'secur[ing] the just, speedy, and inexpensive determination' of civil disputes . . . by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice." *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (*quoting Martindell v. Int'l Tel. & Tel. Corp.,* 594 F.2d 291, 296 (2d Cir. 1979)). Parties and witnesses may be more forthcoming in discovery when a protective order is in place and a protective order may help facilitate settlement. *See id.* at 230; *see also In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2004 WL 3520247, at *1 (E.D.N.Y. Aug. 9, 2004) (stating that the purposes of the protective order are "[t]o expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, adequately protect confidential material, and ensure that protection is afforded only to material so entitled . . ."); *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) (protective orders are "useful to prevent discovery from being used as a club by threatening disclosure of matters which will never be used at trial.").

Given the City's stated concerns about the confidential nature of the affordable housing data – which includes sensitive personal data about affordable housing applicants – and misuse or public disclosure of such data, as well as this Court's desire to reduce conflicts about and expedite production of confidential information and to

7

manage discovery in carefully planned stages, this Court already found there was good cause for the issuance of the Protective Order governing discovery in this case. The Order explicitly protects the affordable housing data and analyses derived from that data from disclosure. Good cause existed for the data analyses specifically because the public generally is not entitled to obtain affordable housing data for analyses and it contains highly sensitive information.

B.  **Public Right of Access to Litigation Documents**

It is well established that the public has no right to access information obtained through discovery and that is subject to a protective order. *See, e.g.*, *Seattle Times Co.*, 467 U.S. at 32-36 ("A litigant has no First Amendment right of access to information made available only for purposes of trying his suit."). Indeed, the majority of documents and information exchanged in discovery are never even submitted to the Court in connection with dispositive motions or trial. In contrast, there is a presumption of a public right of access to "judicial documents." *Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500, 516-17 (E.D.N.Y. 2011). Judicial documents consist of testimony or documents that a court relies on to perform its Article III duties and substantively adjudicate a matter. *See, e.g., Amodeo*, 71 F.3d at 1048-50; *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Judicial documents are presumptively public so that the federal courts "have a measure of accountability" and so that the public may "have confidence in the administration of justice." *Amodeo,* 71 F.3d at 1048. Additionally, litigants have a First Amendment right to speak. *Seattle Times Co.*, 467 U.S. at 36. Thus,

a threshold issue this Court must address is whether the preliminary expert report Plaintiffs seek to file publicly on ECF is a judicial document, because the standard for sealing a judicial document is higher than the standard for issuing a protective order governing discovery.

In determining whether a document is a judicial record, the Court must evaluate the "relevance of the document's specific contents to the nature of the proceeding" and the degree to which "access to the [document] would materially assist the public in understanding the issues before the . . . court, and in evaluating the fairness and integrity of the court's proceedings." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 166-67 (2d Cir. 2013). The mere filing of a paper or document with the court, however, is insufficient to render it a judicial document. *United States v. Amodeo*, 44 F.3d 141, 145 (2d. Cir. 1995). The document filed "must be relevant to the performance of the judicial function and useful in the judicial process" for it to be designated as a judicial document. *Id.* Material designated as confidential under a protective order governing discovery "might not overcome the presumption of public access once it becomes a judicial document." *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 155 (S.D.N.Y. 2015).

In this case, Plaintiffs filed the preliminary expert report in connection with a discovery dispute. While there is no question that statistical analysis of the affordable

housing lottery data is an essential component of Plaintiffs' case on the merits,[1] the preliminary analyses were not relevant to the discovery issues before this Court. Thus, under applicable Second Circuit law, the preliminary expert report is not a judicial document. *See Newsday LLC*, 730 F.3d at 166-67; *see also Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 621 F. Supp. 2d 55, 66 (S.D.N.Y. 2007) (documents submitted in connection with Rule 12(b)(6) motion do not qualify as judicial documents because they are excluded from the court's purview and are of no value to someone wishing to evaluate the court's decision).

Further, even assuming Plaintiffs' preliminary expert report were relevant to the discovery disputes decided by this Court, at least one court in this District has held that "discovery materials filed with the court in connection with discovery-related disputes are not covered by the qualified right of access." *United States v. Smith*, 985 F. Supp. 2d 506, 520 (S.D.N.Y. 2013). While the Second Circuit has not explicitly held that documents submitted in connection with discovery motions are not judicial documents, both the Ninth and the Third Circuit have so held. *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993) (holding that there is no presumptive right

---

[1] Plaintiffs must prove their theory of disparate impact discrimination by statistical proof of disparate impact. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S.Ct. 2507, 2523-24 (2015) (holding that disparate impact discrimination claims may be brought under the federal Fair Housing Act and discussing plaintiff's burden of showing racial disparity through statistics as part of prima facie case). Statistical proof is often part of a plaintiff's evidence in support of an intentional discrimination claim as well. *United States v. City of New York*, 717 F.3d 72, 84 (2d Cir. 2013) (recognizing that statistics may be used to prove intentional discrimination) (*citing Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307-08 (1977)).

of public access to materials right in connection with discovery motions); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006) (finding exception to presumption of access for sealed discovery documents attached to non-dispositive motions); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). This Court likewise holds that documents filed with the court in connection with discovery-related disputes are not judicial documents.

There is good reason for excluding documents filed in connection with discovery matters from the definition of judicial documents. During discovery, the parties are simply exchanging information, developing claims and defenses, learning information relevant to settlement and identifying possible exhibits for trial. Many documents exchanged in discovery, even if relevant, may never be admitted in trial or in connection with a dispositive motion. This is also true of expert opinions. In a later phase of discovery in this case, final expert reports will be exchanged, expert depositions will be conducted, and motions may be filed to exclude expert testimony at trial or in connection with summary judgment motions pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[2]

This Court has been closely managing discovery in this case, including by implementing a phased discovery schedule to focus the parties on exchanging key

---

[2] Expert reports themselves are typically the subject of hearsay objections and not admitted into evidence at trial. *See Murphy v. Metro. Trans. Auth.*, No. 05-cv-376 (LMM), 2009 WL 1044604, at *5 (S.D.N.Y. Apr. 14, 2009).

documents and information and minimizing disputes over issues that will not ultimately advance the litigation.  Through their motion, Plaintiffs seek to accelerate disclosure of expert opinions and reveal their characterizations of underlying confidential data to the public in contravention of the phased discovery plan implemented by this Court.

Permitting Plaintiffs to publicly file their preliminary analyses now would thwart the spirit and objectives of the Court's phased discovery plan because, as the City has articulated, it has a serious concern about data being analyzed incorrectly and being placed into the public sphere without having an opportunity to contemporaneously refute Plaintiffs' analyses. Although no personally identifying information is contained in the analyses, there is no dispute that the data is not available to the public even in the aggregate.  At this juncture in discovery, this Court does not see any legitimate reason for the City to focus its efforts on preparing a rebuttal to Plaintiffs' preliminary analyses. Rather, the Court has ordered the parties to complete document production and depositions of key witnesses.  And, while the Court has encouraged the parties to begin data analysis, neither party has completed – or can complete – its analyses until all of the data is produced and questions about it are answered.  Plaintiffs' expert's preliminary opinions are certainly not ones that will ultimately be admitted at trial. Moreover, while it is conceivable that final expert reports, or portions of them, may be filed with the Court at a later date in connection with evidentiary or dispositive motions,

it is also conceivable that expert reports and analyses may be stricken.[3]  In sum, it is premature at this stage of the litigation to lift the Protective Order as to the preliminary expert report.  *See In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d at 222 (a "court may impose an initial protective order based upon a general showing of good cause, and may modify that order at a later time if more specific grounds for its continuance remain indiscernible").

      If and when final expert reports may need to be filed with the Court, the parties can address whether the Protective Order should be lifted and the reports publicly filed. In the meantime, analyses of the confidential affordable housing lottery data will remain subject to the Protective Order.

**SO ORDERED.**

Dated: July 5, 2017
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge

---

[3] This Court makes no findings whatsoever about the outcome of potential future motions regarding statistical analyses.  Nor has this Court analyzed the substantive arguments made by the parties in their letters (Doc. Nos. 136 and 138) about the validity of the preliminary analyses.