UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JANELL WINFIELD, TRACEY STEWART,
and SHAUNA NOEL,

                              Plaintiffs,                    USDC SDNY
                                                            DOCUMENT
                                                            ELECTRONICALLY FILED
                                                            DOC #:_____
                                                            DATE FILED: 02/01/2018

              -against-                              **OPINION AND ORDER**

                                                    **15-cv-05236 (LTS) (KHP)**
CITY OF NEW YORK,

                              Defendant.
-----------------------------------------------------------------X
**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

        Plaintiffs commenced this action to challenge a New York City policy regarding

affordable housing lotteries. The City's policy allocates 50% of units in affordable housing

lotteries to individuals who already reside in the Community District where the new affordable

housing units are located. This policy is referred to herein as the "Community Preference

Policy." Plaintiffs allege that the Community Preference Policy violates the federal Fair Housing

Act ("FHA"), 42 U.S.C. § 3604 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), NYC

Admin. Code § 8-107, *et seq.*, because it perpetuates racial segregation and disparately impacts

racial minorities. They also claim that the City's decision to establish, expand, and maintain the

policy constitutes intentional discrimination.

        Currently pending before this Court is a series of related disputes over the City's claims

of privilege. These disputes concern: (1) Plaintiffs' objections to the City's demand to claw back

a document that the City produced but claims is protected by the deliberative process privilege;

(2) Plaintiffs' objections to the City's claims of deliberative process privilege, legislative

1

privilege, work product privilege, and/or attorney-client privilege over documents listed on its privilege log; and (3) the City's invocations of the deliberative process privilege, work product privilege, and/or attorney-client privilege during the depositions of former Commissioner of the City's Department of Housing Preservation and Development ("HPD") Vicki Been and former Chairman of the City Planning Commission and Director of the City's Department of City Planning ("DCP") Carl Weisbrod. For the reasons that follow, Plaintiffs' objections to the City's clawback demand are denied, Plaintiffs' objections to the City's Privilege Log are granted in part and denied in part, and the City's assertions of privilege during depositions are sustained in part and overruled in part.

## BACKGROUND

The facts pertaining to the underlying action have been set forth in the Court's prior decisions. *See Winfield v. City of New York*, No. 15-cv-5236 (LTS) (DCF), 2016 WL 6208564, at *1-3 (S.D.N.Y. Oct. 24, 2016); *Winfield v. City of New York*, No. 15-cv-5236 (LTS) (KHP), 2017 WL 5664852, at *1-6 (S.D.N.Y. Nov. 27, 2017); *see also Winfield v. City of New York*, No. 15-cv-5236 (LTS) (KHP), 2017 WL 2880556, at *1-2 (S.D.N.Y. July 5, 2017), *objections overruled by* 2017 WL 5054727, at *1-2 (S.D.N.Y. Nov. 2, 2017). Only the facts relevant to this motion are set forth below.

### A. *HUD Compliance Review*

In September 2013, the Office of Fair Housing and Equal Opportunity of the U.S. Department of Housing and Urban Development ("HUD") notified the City that it was commencing a compliance review of HPD and DCP. The purpose of the review was to ensure

that HPD and DCP were in compliance with certain federal nondiscrimination statutes as well as to ensure that the City was meeting its obligation to affirmatively further fair housing. In particular, HUD was investigating the City's policies and practices regarding the development of affordable housing. The City represents that this compliance review is ongoing.

In connection with the review, HUD requested that the City submit an array of information and data about its housing policies and practices. Terri Feinstein Sasanow, then Assistant Corporation Counsel in the Legal Counsel Division of the New York City Law Department ("Law Department") and Chief of the Grants and Compliance Unit, who was closely involved in formulating the City's strategies, defenses, and settlement proposals for the review, stated in her declaration that she was concerned the compliance review could lead to litigation against the City by HUD or others. In an attempt to settle the investigation and avoid litigation, HPD and HUD engaged in more than one round of discussions regarding potential modifications to the Community Preference Policy.

Both Ms. Sasanow and Ms. Been state in their declarations that they understood that HUD considered the compliance review to be a non-public, confidential investigation and that all documents and communications exchanged in connection therewith would be kept confidential. They also point out that communications with HUD state the City's understanding that the compliance review process and related communications would be kept confidential. According to the City, HUD did not inform HPD that its understanding was incorrect or that discussions and documents exchanged in the review were not confidential. Ms. Sasanow also requested the complaint that triggered the compliance review under the Freedom of

Information Act ("FOIA"), but her request was denied by HUD based on an assertion of the confidentiality of an ongoing law enforcement investigation.

**B. *Clawback Demand***

During a conference on June 5, 2017, Plaintiffs' counsel handed up to the Court several documents that the City had produced in discovery in redacted form, including a presentation Bates-stamped 21052-21089 entitled "Affirmatively Furthering Fair Housing: A Preliminary Guide to NYC's Submission." As the title suggests, the presentation is a preliminary overview of the City's prospective submission in response to HUD's new Affirmatively Furthering Fair Housing ("AFFH") rule, which requires HUD program participants, such as New York City, to submit an Assessment of Fair Housing ("AFH") in 2019. Upon reviewing the presentation, counsel for the City indicated that she believed the document should have been withheld in its entirety on privilege grounds and that it had been inadvertently produced.

The City subsequently served Plaintiffs with a letter seeking to claw back the document Bates-stamped 21052-21089 as well as what appears to be an identical document that was produced and Bates-stamped 22822-22859 (collectively, the "AFFH Presentations"), pursuant to a Protective Order in place in this case. (*See* Doc. No. 76.) The City asserted that the AFFH Presentations were not responsive and, furthermore, were largely protected by the deliberative process privilege.

Plaintiffs objected to the City's clawback demand and sought a ruling on the issue. Plaintiffs argue that the AFFH Presentations are responsive to their discovery requests and relevant to the issues in this case because they reference, *inter alia*, community opposition to

the development of affordable housing and levels of segregation within the City. With respect to privilege, Plaintiffs assert that: (i) since the City's decisionmaking process is at issue in this litigation, the deliberative process privilege cannot be invoked to preclude discovery; (ii) even if the privilege can be asserted in this case, it does not apply to the AFFH Presentations; and (iii) the City failed to properly present its privilege claim.

In its response, the City points out this Court previously limited discovery concerning AFFH to only those documents that "discuss or consider AFFH obligations in the context of the community preference policy." (*See* Doc. No. 87, Transcript from Feb. 16, 2017 conference at 38:14-21.) The City contends that, in light of this ruling, the AFFH Presentations are not responsive because they make only passing references to the Community Preference Policy and do not substantively address the Policy. It also claims that the deliberative process privilege may be invoked in this case and that the privilege applies to the AFFH Presentations. The City argues that the privilege must be upheld in order to ensure that policymakers can have open and honest deliberations in connection with making policy decisions.

In opposition to Plaintiffs' objections to the City's clawback demand, the City also submitted a Declaration of David Quart, the Deputy Commissioner for Strategy, Research and Communications of HPD. Quart averred that the AFFH Presentations were created by HPD's Division of Strategic Planning ("Strategic Planning"), with his input and oversight, to facilitate discussions about HPD's and the City's response to the new AFFH rule. Upon the Court's request, the City provided an unredacted copy of the AFFH Presentation for *in camera* review.

### C. City's Privilege Log

In addition to challenging the City's claim of privilege over the AFFH Presentations, Plaintiffs also have repeatedly asserted that the City has over-designated other responsive documents as privileged, particularly with respect to the deliberative process privilege. During a conference on July 21, 2017, the Court directed Plaintiffs to identify a subset of 80 documents from the City's privilege log that the City had withheld on the basis of the deliberative process privilege. (Doc. No. 167 at 74:16-18.) The Court further ruled that the City would have an opportunity to re-review the 80-document subset identified by Plaintiffs and determine whether it intended to maintain its privilege claim as to each document.

Following the City's review of the sample set of 80 documents, the City advised that it maintained a claim of privilege(s) over only 27 documents. It also withdrew its privilege designation as to 51 documents and produced them. This Court subsequently ordered the City to submit all 80 documents to this Court for *in camera* review as well as a more detailed log for purposes of assessing the validity of the remaining privilege designations. The City submitted the documents and detailed privilege log, according to which the City maintains privilege assertions with respect to the following documents:

| Bates Number | Privilege(s) Claimed |
|---|---|
| NYCPRIV00017 | Deliberative Process; Work Product |
| NYC _0067301 | Legislative |
| NYCPRIV01218 | Legislative |
| NYCPRIV01728 | Legislative |
| NYCPRIV00090 | Deliberative Process |
| NYCPRIV00548 | Deliberative Process |
| NYCPRIV02127 | Legislative |
| NYCPRIV00242 | Deliberative Process; Work Product |
| NYCPRIV00845 | Work Product |

| | |
|---|---|
| NYCPRIV00885 | Deliberative Process |
| NYCPRIV01023 | Deliberative Process |
| NYCPRIV00726 | Deliberative Process |
| NYCPRIV00731 | Deliberative Process; Legislative |
| NYCPRIV00183 | Deliberative Process |
| NYCPRIV01556 | Deliberative Process; Attorney-Client; Work Product |
| NYCPRIV00218 | Deliberative Process; Work Product |
| NYCPRIV01648 | Deliberative Process; Work Product |
| NYC_0056994 | Deliberative Process; Work Product |
| NYCPRIV02154 | Work Product |
| NYCPRIV01387 | Work Product |
| NYCPRIV01399 | Deliberative Process; Work Product |
| NYCPRIV00281 | Deliberative Process; Work Product |
| NYCPRIV00393 | Deliberative Process; Work Product |
| NYCPRIV01840 | HUD Confidentiality |
| NYCPRIV00399 | Deliberative Process |
| NYC_0067432 | Work Product |
| NYCPRIV02361 | Deliberative Process |

### D. Privilege Assertions Raised During Depositions

On July 27, 2017 and August 2, 2017, Plaintiffs conducted the depositions of Mr. Weisbrod and Ms. Been, respectively. During both depositions, counsel for the City directed the witnesses not to respond to certain questions on the basis of attorney-client, work product, and/or deliberative process privilege. Pursuant to the Court's directions, the parties did not seek immediate privilege rulings from the Court during the depositions and, instead, continued the depositions and raised disputes as to the claims of privilege after the depositions had concluded. On September 1, 2017, Plaintiffs submitted a letter to the Court seeking privilege rulings on 20 questions to which the City's witnesses were directed not to respond – specifically, four questions posed to Mr. Weisbrod and 16 questions directed to Ms. Been. Plaintiffs' submission also annexed copies of the deposition transcripts and relevant exhibits.

The City subsequently withdrew its privilege objections as to the four questions directed at Mr. Weisbrod, as well as to Been Deposition Question Nos. 15 and 16, and provided Plaintiffs with responses to these questions in declarations. The City maintained its privilege objections to the following 14 questions posed to Ms. Been:

| ID No. | Transcript Citation | Privilege(s) Claimed |
|---|---|---|
| Been No. 1 | 39:25 - 41:11 | Work Product |
| Been No. 2 | 69:12 - 70:12 | Deliberative Process |
| Been No. 3 | 178:4 - 180:8 | Deliberative Process; Attorney-Client; Work Product |
| Been No. 4 | 180:9 - 184:3 | Deliberative Process; Attorney-Client; Work Product |
| Been No. 5 | 184:18 - 185:17 | Deliberative Process; Attorney-Client; Work Product |
| Been No. 6 | 223:18 - 224:17 | Attorney-Client; Work Product |
| Been No. 7 | 224:18 - 225:6 | Attorney-Client; Work Product |
| Been No. 8 | 227:23 - 228:11 | Attorney-Client |
| Been No. 9 | 228:19 - 229:20 | Deliberative Process; Work Product |
| Been No. 10 | 236:12 - 237:23 | Deliberative Process; Attorney-Client; Work Product |
| Been No. 11 | 262:9 - 265:17 | Attorney-Client |
| Been No. 12 | 275:10 - 280:16 | Work Product |
| Been No. 13 | 280:20 - 282:15 | Attorney-Client; Work Product |
| Been No. 14 | 282:16 - 283:23 | Attorney-Client |

At the Court's direction, the City submitted a privilege log stating the basis for its objections. Ms. Been also explained some of the claims of privilege in her declaration, dated October 6, 2017.

**LEGAL STANDARDS**

A. *Federal Rule Of Civil Procedure 26*

Under Federal Rule of Civil Procedure 26(b) ("Rule 26"), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the

parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery.") (internal citation omitted); *Allison v. Clos-ette Too, L.L.C.*, No. 14-cv-1618 (LAK) (JCF), 2015 WL 136102, at *8 (S.D.N.Y. Jan. 9, 2015).

**B.** ***Deliberative Process Privilege***

The City asserts that the documents and information at issue in this motion are protected from disclosure under the deliberative process privilege. The deliberative process privilege, also referred to as the executive privilege, protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks and citation omitted). It applies to both the ultimate decisionmaking executive and the executive's staff members. *See Hopkins v. H.U.D.*, 929 F.2d 81, 85 (2d Cir. 1991) (work product, opinions, and recommendations of staff are part of the deliberative process). It also applies to both inter- and intra-agency deliberative communications. *See In re Delphi Corp.*, 276 F.R.D. 81, 84 (S.D.N.Y. 2011) (citing *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 77 (2d Cir. 2002)).

The privilege "'protects the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions.'" *Marisol A. v. Giuliani*, No. 95-cv-10533 (RJW), 1998 WL 132810, at *6 (S.D.N.Y. Mar. 23, 1998) (quoting *Hopkins*, 929 F.2d at 84). It is motivated by "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news" and the desire to "enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, No. 11-cv-6189 (DLC), 2014 WL 1909446, at *1 (S.D.N.Y. May 13, 2014) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)); *see also Marisol A.*, 1998 WL 132810, at *6 (the deliberative process privilege is premised upon the notion that "effective decisionmaking requires a free flow of information amongst government officials and that this free flow would be constrained if these communications had the potential to be revealed to outsiders") (internal citations omitted).

The privilege protects the documents and communications used in the decisionmaking process when such documents are both (1) predecisional and (2) deliberative. *Marisol A.*, 1998 WL 132810, at *6. A document is "predecisional" when it is prepared to aid the decisionmaker in arriving at a decision. *Hopkins*, 929 F.2d at 84; *Marisol A.*, 1998 WL 132810, at *6. In assessing whether a document is predecisional, courts also consider whether the government can: "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal

sequence, the decision to which it relates." *Nat'l Congress for Puerto Rican Rights ex rel Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) (internal quotation marks and citation omitted). This analysis is designed to distinguish predecisional documents from those that are "merely part of a routine and ongoing process of agency self-evaluation," which are not covered by the privilege. *Tigue*, 312 F.3d at 80; *see also Charles v. City of New York*, No. 11-cv-0980 (KAM) (JO), 2011 WL 5838478, at *1 (E.D.N.Y. Nov. 18, 2011).

A document is "deliberative" when it relates to the process by which policies are formulated. *Hopkins*, 929 F.2d at 84. "[D]raft documents, by their very nature, are typically predecisional and deliberative. They reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors." *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, No. 11-cv-6749 (RKE), 2015 WL 3404111, at *3 (S.D.N.Y. May 27, 2015) (internal quotation marks and citation omitted).

Although some district courts within this Circuit have held that the deliberative process privilege is *per se* inapplicable in a case where the government's decisionmaking process itself is the subject of the litigation, *see, e.g., Children First Found., Inc. v. Martinez,* No. 04-cv-0927 (NPM/RFT), 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007), other courts in this Circuit have applied a five-factor balancing test to determine whether the deliberative process privilege should be upheld in such cases. *See Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 99-101 (S.D.N.Y. 2003) (observing that if the legislative or deliberative privileges were unavailable in any case where the government's decisionmaking process was at issue, "there would be few, if any, cases in which state legislators could shield their personal thought processes from view" and

applying a five-factor balancing test to assess whether "'reason and experience' suggest[s] that the claim of privilege should not be honored"); *In re Delphi Corp.*, 276 F.R.D. at 85 ("[t]his Court concludes that a claimed exception to the privilege, because the litigation 'involves a question concerning the intent of the governmental decisionmakers or the decisionmaking process itself' . . . is subject to the five factor balancing test."); *Five Borough Bicycle Club v. City of New York*, No. 07-cv-2448 (LAK), 2008 WL 4302696, at *1 (S.D.N.Y. Sept. 16, 2008) (observing that "the difference between the parties as to whether the privilege is categorically inapplicable or dependent on a balancing of factors where the information sought is important to resolution of the dispute is more stylistic than substantive"). For the reasons articulated by other courts in this district, this Court agrees that a balancing approach that considers the competing interests of the party seeking disclosure and of the government – specifically, its  need to engage in policy deliberations without the omnipresent threat of disclosure – is more appropriate than a *per se* rule requiring disclosure in every case where the decisionmaking process is at issue.

In assessing whether and to what extent the privilege bars disclosure, courts "must balance the extent to which production of the information sought would chill the [government's] deliberations concerning such important matters . . . against any other factors favoring disclosure." *Rodriguez*, 280 F. Supp. 2d at 100-01. Relevant factors for the Court to consider include:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.* (quoting *In re Franklin Nat'l Bank Secs. Litig.,* 478 F. Supp. 577, 583 (E.D.N.Y. 1979)).

**C.    *Legislative Privilege***

The City next asserts that some of the documents listed on its privilege log are protected under the legislative privilege. The concept of legislative privilege, and the parallel doctrine of legislative immunity, "developed in sixteenth- and seventeenth-century England as a means of curbing monarchical overreach, through judicial proceedings, in Parliamentary affairs." *Favors v. Cuomo*, 285 F.R.D. 187, 207 (E.D.N.Y. 2012) ("*Favors I*") (citing *United States v. Johnson*, 383 U.S. 169, 177-80 (1966); *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951)). For federal legislators, the privilege is enshrined in the Speech or Debate Clause of the federal Constitution, which provides that "for any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. The Clause has been construed as providing Members of Congress with two distinct, but related, absolute protections: (1) immunity from suit for their legislative acts and (2) protection from being compelled to testify in court and produce information about acts that fall within the "legitimate legislative sphere." *See, e.g., Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975); *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731-33 (1980); *Gravel v. United States*, 408 U.S. 606, 613-16 (1972); *United States. v. Brewster*, 408 U.S. 501, 525 (1972); *see also Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 242 (S.D.N.Y. 2015) (the "[t]estimonial privilege is thus at the heart of the Speech or Debate Clause protections.").

The Speech or Debate Clause, by its own terms, is limited to Members of Congress. Based on principles of comity, however, the Supreme Court has held that state and local legislators, like Members of Congress, are entitled to absolute "immunity from liability for their legislative acts" as a matter of federal common law. *Supreme Ct. of Va.,* 446 U.S. at 732-33 (citing *Tenney*, 341 U.S. at 379*); Bogan v. Scott-Harris*, 523 U.S. 44, 48-49 (1988); *see also Rodriguez*, 280 F. Supp. 2d at 94-95 (explaining that "[t]he doctrine of absolute immunity for state legislators is an outgrowth of the Speech or Debate Clause of the United States Constitution")*.* In *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267-68 (1977), the U.S. Supreme Court implicitly recognized in dicta that the common law legislative privilege also extends to protection from compelled testimony in civil cases. The Second Circuit likewise has recognized the shared origins of and justifications for the Speech or Debate Clause protections and common law protections afforded to state lawmakers. *See Star Distribs., Ltd. v. Marino*, 613 F.2d 4, 6-9 (2d Cir. 1980) (holding that because of the privileges' common roots, it is inappropriate to "differentiate the scope of the two without good reason"). District courts within the Second Circuit also have repeatedly held that state and local lawmakers are entitled to protection against discovery into their legislative acts in civil cases, explaining that such protection is needed to "shield legislators from civil proceedings which disrupt and question their performance of legislative duties to enable them to devote their best efforts and full attention to the public good." *See, e.g., Searingtown Corp. v. Inc. Vill. of N. Hills*, 575 F. Supp. 1295, 1299 (E.D.N.Y. 1981) (precluding discovery into motivation of local legislators for rezoning decision that plaintiffs claimed violated their constitutional rights) (internal quotation marks

and citations omitted); *see also ACORN v. Cnty. of Nassau*, No. 05-cv-2301 (JFB) (WDW), 2007 WL 2815810, at *2 (E.D.N.Y. Sept. 25, 2007). The legislative privilege extends to both the legislator and legislative staff. *See Ways & Means*, 161 F. Supp. 3d at 233. However, the privilege is "a personal one," meaning that it can only be asserted, or alternatively, waived, by each individual lawmaker. *See Favors v. Cuomo*, No. 11-cv-5632 (DLI) (RR) (GEL), 2015 WL 7075960, at *8-9 (E.D.N.Y. Feb. 8, 2015) ("*Favors III*").

Legislative acts that are protected under the privilege include any activity that is "'an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.'" *Eastland,* 421 U.S. at 504 (quoting *Gravel*, 408 U.S. at 625 and citing *McMillan*, 412 U.S. at 313); *see also Bogan*, 523 U.S. at 54-55 (actions are legislative in nature when they are "integral steps in the legislative process"). For example, legislative acts may include, but are not limited to: "delivering an opinion, uttering a speech, or haranguing in debate; proposing legislation; voting on legislation; making, publishing, presenting, and using legislative reports; authorizing investigations and issuing subpoenas; and holding hearings and introducing material at committee hearings." *Ways & Means*, 161 F. Supp. 3d at 236 (citing *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 10-11 (D.C. Cir. 2006)) (internal quotation marks omitted).

The legislative privilege also protects fact- and information-gathering activities about the subject of potential legislation, as well as documents regarding or reflecting the fruits of this

research. *See id.* at 236-37, 245; *see also United States v. Biaggi*, 853 F.2d 89, 102-03 (2d Cir.

1988) (holding that legislative fact-finding activity is protected under the Speech or Debate

Clause); *McSurely v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976) (*en banc*) ("information

gathering, whether by issuance of subpoenas or field work by a Senator or his staff, is essential

to informed deliberation over proposed legislation" and hence is protected legislative activity),

*cert. dismissed*, 438 U.S. 189 (1978). The gathering of facts and other information—whether by

formal means, such as a subpoena, or informal means, such as field work—is protected because

"[a] legislative body cannot legislate wisely or effectively in the absence of information

respecting the conditions which the legislation is intended to affect or change." *Eastland*, 421

U.S. at 504 (citation omitted); *see also Ways & Means*, 161 F. Supp. 3d at 236-37. To the extent

there is a question as to whether particular research activities are privileged, the court must

determine "whether 'the information is acquired in connection with or in aid of an activity that

qualifies as 'legislative' in nature,' not what the source of the information is." *Ways & Means*,

161 F. Supp. 3d at 237 (quoting *Jewish War Veterans*, 506 F. Supp. 2d at 57). Thus, it is not just

the motives of lawmakers that are protected by the privilege, but factual information as well

(so long as it was collected and summarized in connection with a legislative activity).

Certain routine activities of legislators fall outside of the privilege. *See Gravel*, 408 U.S.

at 624–25; *Biaggi*, 853 F.2d at 102. Activities concerning the administration of a law, speeches

delivered outside of the legislative body and preparation for the same, the making of

appointments with government agencies, newsletters and press releases to constituents and

drafts thereof are among the activities that fall outside of the protection of the privilege.

*Brewster,* 408 U.S. at 512; *Hutchinson v. Proxmire*, 443 U.S. 111, 130-33 (1979). Similarly, the privilege does not attach to documents or communications that are "merely administrative or personal in nature." *Ways & Means*, 161 F. Supp. 3d at 246 (citing *Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 522 (3d Cir. 1985) ("Private conversations—even between officials of governments—do not necessarily involve official business."); *Fields*, 459 F.3d at 11 (personnel decisions lacking a nexus to legislative acts are beyond the scope of the Clause's protections)).

Unlike the absolute privilege that is afforded under the Speech or Debate Clause, *see Ways & Means,* 161 F. Supp. 3d at 242, the common law legislative privilege is qualified and "must therefore depend on a balancing of the legitimate interests on both sides." *Rodriguez*, 280 F. Supp. 2d at 96; *see also Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, No. 16-cv-9592 (RMB) (KHP), 2017 WL 3836057, at *18 (S.D.N.Y. Sept. 1, 2017) ("when there is a challenge to a claim of legislative privilege by state lawmakers, the court may consider whether the private parties' interest in exploring the motivations and fact-finding efforts of individual legislators (1) rises to a level of public need for full development of relevant facts that is sufficient to overcome the competing public interests in ensuring that legislators devote their full efforts and attention to legislative duties; (2) outweighs the threat of chilling legislative deliberations; and (3) warrants federal intrusion into the independence of state lawmakers."). Courts in this Circuit use the same balancing factors to weigh whether the legislative privilege should yield to the need for discovery as they do when weighing whether the deliberative process privilege should yield to the need for discovery. *See Rodriguez*, 280 F. Supp. 2d at 100-01.

**D.    *Work Product Privilege***

The work product privilege protects documents and other tangible things "that are prepared in anticipation of litigation or for trial by or for another party or its representative," Fed. R. Civ. P. 26(b)(3)(A), as well as deposition testimony concerning the substance of such work product. *See Bowne of N.Y.C., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993). Documents "should be deemed prepared 'in anticipation of litigation' . . . if, 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original) (internal citation omitted). "Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation," it is protected as work product. *Id.* at 1195. "Conversely, protection will be withheld from 'documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation.'" *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) (quoting *Adlman*, 134 F.3d at 1202).

Like the deliberative and legislative process privileges, the protection afforded by the work product doctrine is not absolute. A party seeking discovery may overcome work product protection and obtain disclosure of material otherwise discoverable under Fed. R. Civ. P. 26(b)(1) by showing (1) substantial need for the material; and (2) an inability to obtain its substantial equivalent from another source without undue hardship. Fed. R. Civ. P. 26(b)(3)(A); *Obeid v. Mack,* No. 14-cv-6498 (LTS) (HBP), 2016 WL 7176653, at *5 (S.D.N.Y. Dec. 9, 2016).

Although factual materials "may generally be discovered upon a showing of substantial need," *Obeid*, 2016 WL 7176653, at *5 (internal quotation marks and citations omitted), courts "*must* protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B) (emphasis added). Thus, "[d]ocuments or portions of documents that qualify as 'opinion work product' are 'entitled to virtually absolute protection.'" *United States v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 390 (S.D.N.Y. 2016) (quoting *United States v. Ghavami*, 882 F. Supp. 2d 532, 540 (S.D.N.Y. 2012)).

### E.   *Attorney-Client Privilege*

Finally, the City has invoked the attorney-client privilege in response to certain deposition questions and as to one document on its privilege log. The attorney-client privilege is one of the "oldest recognized privileges for confidential communications." *Swindler & Berlin v. United States*, 524 U.S. 399, 403 (1998). The attorney-client privilege "exists for the purpose of encouraging full and truthful communications between an attorney and his client and 'recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.'" *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). At the same time, courts should construe assertions of privilege narrowly, sustaining the privilege "only where necessary to achieve its purpose." *In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)); *see also In re Grand Jury*

*Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000). The party seeking to invoke the privilege bears the burden of establishing its applicability. *In re Cnty. of Erie*, 473 F.3d at 418.

When the government asserts a claim of attorney-client privilege, it must establish: (1) a communication between government counsel and their clients that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. *See id.* at 419 (internal citation omitted). "[I]n civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on a par with the claim of an individual or a corporate entity." *Id.*

The question of whether a communication is protected under attorney-client privilege often turns on whether the communication was made for the purpose of obtaining or providing legal advice, rather than policy advice. "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct," and requires an attorney to rely upon "legal education and experience to inform judgment." *Id.* Accordingly, the key inquiry is whether the "predominant purpose" of the communication is to solicit or provide legal advice. *Id.* at 419-20 (collecting cases). When legal advice is the predominant purpose, "other 'considerations and caveats' are not severable and the entire communication is privileged." *Fox News I*, 739 F. Supp. 2d at 560 (citing *In re Cnty. of Erie*, 473 F.3d at 420). On the other hand, if the legal advice is merely "incidental to the nonlegal advice that is the predominant purpose of the communication," then the legal portions of the document may be redacted. *In re Cnty. of Erie*, 473 F.3d at 420 n.8.

**DISCUSSION**

### A.  *The City's Clawback Demand*

The City contends that it should be permitted to clawback the AFFH Presentations because they are not responsive and, even if they are deemed to be responsive, they are protected by the deliberative process privilege.

### 1.  *Responsiveness*

The Court need not spend much time addressing the City's first argument concerning responsiveness. While portions of the AFFH Presentations are not relevant to the claims and defenses in this case, they do contain at least some information that is responsive to Plaintiffs' discovery requests. By way of one example only, the presentations mention community opposition to affordable housing, which is one of the City's primary defenses. The City, in its responses and objections to Plaintiffs' discovery requests, agreed to produce documents regarding opposition by community members to affordable housing. (*See* Doc. No. 62-2 p. 18). Other portions of the AFFH Presentations implicate issues that are similarly pertinent to the claims and defenses in this litigation.

### 2.  *Application Of The Deliberative Process Privilege*

The City's assertion that the AFFH Presentations are protected by the deliberative process privilege is meritorious, however. The presentations are indisputably predecisional, as they were prepared to aid City decisionmakers in their early policy decisionmaking that will eventually be reflected in the City's AFFH submission to HUD, which is not due until 2019.  *See Hopkins*, 929 F.2d at 84.

The presentations also reflect deliberative content. In particular, the City has represented that the AFFH Presentations were prepared by Strategic Planning and reflect the preliminary thoughts of that agency alone, not HPD or the City as a whole. (Quart Decl. ¶¶ 7-13.) It points out, as an example, that the AFFH Presentations reflect Strategic Planning's selection of certain "contributing factors" to fair housing issues from a HUD-published list, as well as Strategic Planning's early efforts to address issues related to the contributing factors it selected, but that the presentations do not contain the City's final decisions or positions on these matters. (Quart Decl. ¶ 8); *see Grand Cent. P'ship*, 166 F.3d at 482 (deliberative process privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency").

Additionally, the AFFH Presentations include limited, preliminary analyses of HUD-provided data, identified in the presentations themselves as "Data Issues" and "Preliminary Findings." (Quart Decl. ¶ 9.) These "findings" are not the City's findings on the relevant issues, nor are they final. (*Id.*) Rather, the City intends to supplement HUD's data and to undertake the comprehensive analyses required by HUD as part of the AFH process. (*Id.*) The preliminary analyses "reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors," and thus are deliberative in nature. *See Auto. Club of N.Y., Inc.*, 2015 WL 3404111, at *3.

Plaintiffs contend that portions of the presentations, including the slides addressing Strategic Planning's selection of "contributing factors," cannot be protected under the

deliberative process privilege because such material is factual, not policy-oriented. This position oversimplifies the City's obligations under the AFH, however. The AFH requires participants, like the City, to prioritize the contributing factors that it identifies and to establish goals for overcoming the effects of the selected contributing factors, including identifying milestones and metrics for determining what fair housing results will be achieved. *See* 22 C.F.R. § 5.154(d)(4). This means that the City's selection and prioritization of the contributing factors from HUD's list are inextricably intertwined with the City's deliberations over its future fair housing policies. Thus, Strategic Planning's selection and discussion of contributing factors is more akin to an advisory opinion or recommendation, which is privileged, than purely factual material, which is not. *See Grand Cent. P'Ship*, 166 F.3d at 482. It is also not clear from the presentation that the contributing factors selected will ultimately be deemed to be contributing factors by the City in its submission to HUD in 2019 after it further analyzes the items identified in the preliminary presentation.

This Court does agree with Plaintiffs, however, that other portions of the AFFH Presentations reflect nonprivileged factual material. For example, the City concedes that Table 3 on page 8, Table 12 on page 9, Table 6 on page 34, Table 7 on page 35, and pages 36 and 37 "are 'pure' facts, data or information provided from HUD[] that do not reflect the City's deliberations, and could be disclosed." (Defendant's Supplemental Memorandum of Law, dated Oct. 6, 2017, p. 23.) Since pages 31-33 also appear to reflect HUD-provided data, these pages can also be produced.

### *3. Application Of The* Rodriguez *Balancing Test*

Having concluded that the AFFH Presentations are protected in part by the deliberative

process privilege does not end the inquiry, as this Court next must consider whether the

privilege should be upheld in light of the competing interests of the parties. *See Rodriguez*, 280

F. Supp. 2d at 99-101. As set forth above, relevant factors for the Court to consider include:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of
> other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv)
> the role of the government in the litigation; and (v) the possibility of future timidity
> by government employees who will be forced to recognize that their secrets are
> violable.

*Id.* (quoting *In re Franklin Nat'l Bank Secs. Litig.,* 478 F. Supp. 577, 583 (E.D.N.Y. 1979)). "If

consideration of the first four factors leads to the conclusion that they outweigh the risk

addressed by the fifth – possible future timidity – then the demanded document ought to be

disclosed," despite the claim of privilege. *Favors II*, 2013 WL 11319831, at *11; *see also*

*Rodriguez*, 280 F. Supp. 2d at 101.

Relevance for purposes of invading a privilege is a narrower concept than relevance for

purposes of establishing the scope of discovery. Information that is presumptively privileged

will be deemed relevant only if it is central "to the proper resolution of the controversy." *See*

*Five Borough Bicycle Club*, 2008 WL 4302696, at *1; *cf. Torres v. City Univ. of New York*, No. 90-

cv-2278 (LAP), 1994 WL 502621, at *4 (S.D.N.Y. Sept. 14, 1994) (holding that balancing test

weighed against disclosure of confidential information where such information was "not

necessary to [the plaintiff's] case" and did not "have any significant probative value in proving

discriminatory intent"). The Court also notes that "[d]rafts, by their very nature, rarely satisfy the test of relevance." *Grossman v. Schwarz*, 125 F.R.D. 376, 385 (S.D.N.Y. 1989).

The AFFH Presentations amount to a preliminary overview of the City's prospective AFH submission – due in 2019 – pursuant to HUD's new AFFH rule. In that regard, the presentations have even less relevance than a draft of the City's submission, which itself would be subject to "repeated revisions, including changes in language and style, correction of typographical errors, editing by superiors of subordinates' work, incorporation of new legal research or a more detailed review of the facts, or simply a more focused view of the issues with each reading," diminishing any prior draft's probative value. *See id.* Moreover, the AFHH Presentations were created after this litigation was commenced and provide no insight into the City's decisions to implement, expand, or maintain the Community Preference Policy, which, significantly, are the only City decisions at issue in this case.

Although Plaintiffs are correct that circumstantial evidence may be considered in an intentional discrimination analysis, the scope of evidence relevant to that analysis has been circumscribed by the courts. *See Vill. of Arlington Heights*, 429 U.S. at 267; *United States v. Yonkers*, 837 F.2d 1181, 1221 (2d Cir. 1987). Factors to be considered in establishing discriminatory intent include: whether the official action bears more heavily on one race than another, the decision's historical background, the specific sequence of events leading up to the decision, departures from normal procedure, substantive departures, and contemporary statements by members of the decisionmaking body). *Id.* Notably, the privileged information contained in the AFFH Presentations does not assist Plaintiffs in establishing any of the

aforementioned *Arlington Heights* factors with respect to the policy at issue in this case. The presentations are not tailored to New York City community districts and do not otherwise reveal information central to the City's decisions concerning the Community Preference Policy.

Certainly, the *Arlington Heights* factors are not exhaustive. However, Plaintiffs' arguments as to the relevance of the document are unpersuasive. Nothing in the document reflects any analysis of the racial impact of the Community Preference Policy on affordable housing applicants, let alone the Policy's impact on the demographics of community districts. Nothing in the document bears on the reasons for the implementation, expansion, or maintenance of the Community Preference Policy. Rather, the document reflects that HUD listed a number of factors that can contribute to segregated housing and that the City identified certain of these factors for further discussion in connection with planning how to comply with a new federal rule. The document does not reflect a disregard of federal fair housing requirements; rather, it reflects the opposite – that the City takes its obligations seriously and created a preliminary presentation to fully analyze and discuss how to comply with the new rule. Further, the City's alleged knowledge that segregation exists – according to HUD's data and suggested initial methodology – does not indicate any acceptance of the data or methodology or bear on knowledge about the impact, if any, of the Community Preference Policy on the racial demographics of community districts. There is nothing in the presentations that indicates the Community Preference Policy is designed to placate race-based community opposition to affordable housing. In short, there are no admissions or analyses in the draft presentations that are specific to the Community Preference Policy and, accordingly,

consideration of the "relevance" factor (pursuant to the narrower definition discussed above) weighs against disclosure here.

The second *Rodriguez* factor – availability of other evidence – also weighs against disclosure in this instance. Significantly, Plaintiffs have been provided data by the City that can be analyzed by their own expert and, accordingly, have no need for the City's preliminary analyses of HUD-provided data. The HUD data itself, reflected in the AFFH Presentations' tables and maps, also will be produced to Plaintiffs pursuant to this Court's order, as it is not subject to the protections of the deliberative process privilege. Plaintiffs' expert can analyze this data as well. Any remaining privileged material in the AFFH Presentations that cannot be gathered from the data is nonetheless, as discussed, not central to this litigation. On the whole, this factor tips the balance against permitting an invasion of the City's privilege.

The third factor – the seriousness of the case and issues involved – goes to the nature of the claims themselves. *Citizens Union of City of N.Y.*, 2017 WL 3836057, at *28. Because "every federal case is serious," the outcome of this factor "hinges on the interest of the public." *Id.* In other words, this Court must ask whether the public interest weighs in favor of disclosure or in favor of protecting the ability of City officials to function properly in their roles without the distraction of civil litigation. *Id.* It is indisputable that claims of racial discrimination raise serious issue of public concern and that, in such cases, the public has a significant interest in a plaintiff's ability to obtain all the information needed to prosecute her claims. But, nothing in the presentations provides information establishing the core issues in this case – whether the Community Preference Policy was adopted or maintained for discriminatory motives and/or has

a racially disparate impact. Rather, the presentations concern the City's preliminary assessment of new HUD requirements pertaining to affordable housing. If all preliminary internal assessments of federal requirements were subject to disclosure, internal communications on these topics would be chilled. Accordingly, this factor too weighs against disclosure.

The fourth *Rodriguez* factor looks to the role of government in the litigation. *Id.* This refers, specifically, to the government's role in the allegedly unlawful conduct. *See Favors II*, 2013 WL 11319831, at *12. In this litigation, the City's decisionmaking clearly is the central issue challenged by Plaintiffs. Although the fourth factor favors disclosure here, the Court notes that this factor will not always favor disclosure under the *Rodriguez* analysis – for example, in instances where privileged government documents are sought pursuant to a third-party subpoena and the government did not serve a central role in the allegedly unlawful conduct.

When these first four *Rodriguez* factors are balanced against the fifth factor – the potential chilling effect that disclosure will have on government employees – this Court concludes that disclosure of the AFFH Presentations, with the exception of the factual portions mentioned above, is not warranted. A key rationale for the deliberative process privilege is the need to ensure that government officials are able to engage in robust deliberations about, and analysis of, proposed policies that are essential to the effective functioning of our government. *See Citizens Union of City of N.Y.*, 2017 WL 3836057, at *29.  City officials cannot engage in open, productive deliberations about how to best address the City's fair and affordable housing needs if all communications are subject to disclosure. It is in all parties' interests – including the interests of Plaintiffs and all other individuals who seek affordable housing in New York City – to

allow the City to engage in the candid exchange of ideas and opinions concerning the future of its fair and affordable housing policies.

### B. The City's Privilege Log

Out of the 80-document sample for which the City reassessed its privilege claims, the City continues to assert that 27 documents are protected from disclosure by at least one privilege. Having reviewed these 27 documents *in camera*, this Court will first address whether each document is privileged and, if so, then will address whether the competing interests of the parties weigh in favor of upholding, or circumventing, the deliberative process privilege.

### 1. Application Of The Asserted Privileges

- **NYCPRIV00017**: This draft, internal memorandum is protected under the work product and deliberative process privileges. It was prepared in anticipation of this litigation and reflects potential alternatives to the Community Preference Policy as part of the City's formulation of its settlement position in this case. With respect to the deliberative process privilege, the document is predecisional because the City's deliberations have not resulted in a final policy decision. It is also deliberative, as it reflects non-final thoughts and assessments for the purpose of reaching a final policy decision as to possible changes to the Community Preference Policy. Given that disclosure of this document also would reveal the City's settlement strategies in connection with this litigation, this Court finds that the privileges must be upheld.

- **NYC _0067301, NYCPRIV01218, and NYCPRIV01728:** These email chains are not protected under the legislative privilege. These documents primarily reflect internal HPD conversations about what to say in response to Council Member Rafael Espinal's inquiries about various topics concerning East New York. Because HPD is an executive agency, not part of the City's legislative branch, its internal communications do not constitute acts that are an "integral step[] in the legislative process." *Bogan*, 523 U.S. at 54-55. To the extent the City asserts that the Council Member's questions should be protected under the legislative privilege, this argument also is unavailing. Although gathering information from persons outside of the legislature in connection with potential legislative activity may be privileged in some circumstances, *see Almonte v. City of Long Beach,* 478 F.3d 100, 107 (2d Cir. 2007), it is not clear here that the Council Member was seeking information in aid of an activity that qualifies as "legislative in nature." *See Ways &* Means, 161 F. Supp. 3d at 237. Rather, many of the questions/topics reflected in the emails seek updates on already-existing City policies and programs, the administration of which falls outside of the legislative sphere of responsibility. *See id.* at 246. Other topics appear to be more along the lines of "cajoling" or attempting to influence the executive branch, rather than gathering information in aid of legislating. *See Gravel*, 408 U.S. at 625 (observing that legislators are "constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to

the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity"). Moreover, no information is being conveyed directly to the Council Member in these communications. Nor is it clear from these emails what information was ever relayed to him. Thus, the City must produce these documents.

- **NYCPRIV00090**: This email chain is not protected under the deliberative process privilege. Although the City attempts to characterize this minimally relevant communication as pertaining to its deliberations regarding MIH and East New York rezoning policies, nothing in this email chain reveals the City's decisionmaking process as it relates to those policies. Rather, the communication simply reflects discussion about how to interpret data regarding the effects of *prior* rezonings and what, if anything, should be communicated about that data. Accordingly, the City must produce this document.

- **NYCPRIV00548**: This spreadsheet is protected in part under the deliberative process privilege. Column A, entitled "[p]roblem raised or inferred by developers," reflects purely factual information that falls outside of the scope of the privilege and can be easily segregated from the privileged portions of the documents. *See Grand Cent. P'ship, Inc.,* 166 F.3d at 482; *Local 3, Int'l Bhd. of Elec. Workers v. Nat'l Labor Relations Bd.*, 845 F.2d 1177, 1180 (2d Cir. 1988) ("Purely factual material not reflecting the agency's deliberative process is not protected."). Information in Column F, labeled "[f]ix [a]lready [p]lanned for HC

2.0," also is not privileged because the heading indicates that a final policy

decision had already been reached about how to correct an identified problem.

Thus, this information can be neither predecisional nor deliberative. However,

the information reflected in Columns B, C, and D does reflect preliminary ideas

and thoughts regarding how best to respond to the identified problems (*i.e.*, the

issues raised by developers regarding Housing Connect and the marketing

process for affordable housing units) and would reveal the manner in which the

City reached a final policy decision. Thus, the information in these three columns

may be redacted on the basis of privilege.

- **NYCPRIV02127**: The legislative privilege does not apply to this email chain

  regarding questions from Council Member Margaret Chin about community

  preference and affordable housing. As the document itself makes clear, a

  member of the Council Member's staff was seeking information for the purpose

  of preparing for a public meeting with members of the community. It is well

  established that the legislative privilege does not extend to preparing for

  comments to be made outside of the legislative body. *See Brewster*, 408 U.S. at

  512; *Hutchinson*, 443 U.S. at 130-33. Accordingly, the City must produce this

  document.

- **NYCPRIV00242 and NYCPRIV00845**: These documents are protected under the

  work product privilege. Both of these documents were prepared in anticipation

  of the HUD compliance review and a potential enforcement action from that

32

review. The law is clear that the work product doctrine protects documents

prepared in anticipation of adversarial proceedings, including governmental

investigations that could lead to litigation, to the same extent as materials

prepared for litigation. *See, e.g., Alaska Elec. Pension Fund v. Bank of Am. Corp.*,

No. 14-cv-7126 (JMF), 2016 WL 6779901, at *4 (S.D.N.Y. Nov. 16, 2016). The

closer question, however, is whether the City has waived its claim of privilege as

to these two documents because the documents were provided to HUD. In *In re*

*Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993), the Second Circuit held that a

party had waived its work product protection as to documents that were

voluntarily provided to a government adversary in a different proceeding. *Id.* at

235-36. However, the Court suggested, albeit in dicta, that the privilege might

not be waived in situations where the disclosing party entered into an

agreement with the government agency to maintain the confidentiality of the

disclosed documents. *Id.* at 236. Following *Steinhardt*, other courts in this Circuit

have upheld claims of work product privilege where the documents had

previously been produced to a government agency pursuant to a confidentiality

agreement. *See, e.g., In re Symbol Techs., Inc. Secs. Litig.*, No. 05-cv-3923 (DRH)

(AKT), 2016 WL 8377036, at *14 (E.D.N.Y. Sept. 30, 2016) (holding that privileges

were not waived as a result of disclosures made to SEC where documents were

produced with understanding of confidentiality); *Maruzen Co., Ltd. v. HSBC USA,*

*Inc.*, No. 00-cv-1079 (RO), 00-cv-1512 (RO), 2002 WL 1628782, at *1-2 (S.D.N.Y.

July 23, 2002) (finding no waiver of privilege where defendant entered into oral

confidentiality agreement with U.S. Attorney's Office). Here, the City has

presented evidence that its submissions to HUD were made with the express

understanding that such documents would be kept confidential. For example,

Ms. Been testified that HUD personnel advised the City that communications and

documents related to the compliance review would be kept confidential and not

shared publicly. (Been Decl., dated Oct. 6, 2017, ¶ 14.) Ms. Sasanow similarly

avers that she understood HUD would treat all documents and communications

related to its review as confidential. (Sasanow Decl. ¶ 9.) This confidentiality

understanding was also explicitly stated in the City's letter to HUD in the

document Bates-stamped NYCPRIV00242. In addition to the presence of a

confidentiality agreement, it is also relevant that Plaintiffs already possess, or

have access to, all of the data that underlies the City's analysis in NYCPRIV00242,

as well as many of the documents referenced in NYCPRIV00845. *See In re Natural

Gas Commodity Litig.,* 03-cv-6186 (VM) (AJP), 2005 WL 1457666, at *8-9

(S.D.N.Y. June 21, 2005) (holding that work product privilege was not waived

where there was a confidentiality agreement in place with the government and

where the factual documents underlying the privileged analysis had been

produced in the litigation); *Alaska Elec. Pension* Fund, 2016 WL 6779901, at *5

(following *In re Natural Gas Commodity Litigation*). Moreover, with respect to

NYCPRIV00242, this document also explicitly states that it was provided for

settlement purposes only and, accordingly, would not be admissible in this litigation in any event. *See* Fed. R. Evid. 408. This document – NYCPRIV00242 – additionally is protected under the deliberative process privilege because it reflects the City's non-final thoughts and assessments concerning potential alternatives to the Community Preference Policy. The document is predecisional because the City's deliberations have not resulted in a final policy decision. For all of the foregoing reasons, the Court finds that the City has not waived its claim of work product privilege and that these documents may be withheld.

- **NYCPRIV00885 and NYCPRIV01023:** The deliberative process privilege protects these draft portions of the Inwood Action Plan and East New York Affordable Housing Strategy from disclosure. It is clear from the face of these documents that they are non-final and predecisional, as they reflect placeholder text, track changes, and/or comment bubbles. Production of these draft documents also would reveal the manner in which the City reached its final policy decisions regarding housing issues in these two neighborhoods. In particular, this Court notes that there are significant differences between the drafts and the final published documents.[1] Given that the final versions of these documents are available to Plaintiffs on the City's website, the City will not be required to

---

[1] While these drafts do reflect some factual material, the nature of the documents precludes the City from segregating the factual portions from the otherwise privileged portions of the documents. *Stinson v. City of New York*, 304 F.R.D. 432, 437 (S.D.N.Y. 2015) (recognizing that it may be impractical to sever the factual portions of a document when "the context in which the facts were written and the fact that they were carefully chosen, worded, and included discloses opinions and thought processes" about the policy decision).

produce its preliminary, non-final drafts of these plans. The Court accordingly

finds that the City is entitled to assert privilege claims over the entirety of these

drafts.

- **NYCPRIV00726**: This email chain regarding the East New York Neighborhood

  Plan is protected under the deliberative process privilege. This communication

  occurred prior to the implementation of the Neighborhood Plan and, as such, is

  predecisional. It is also deliberative, as it reflects debate and discussion over

  policy issues.

- **NYCPRIV00731:** This draft presentation is protected under the deliberative

  process privilege. The City represents that the presentation was created to brief

  the New York State Legislature on proposals that HPD wanted to implement

  regarding tax and rent regulation issues, but that this particular document

  reflects HPD's non-final proposals on the topics. Disclosure of this preliminary

  draft would reveal the process by which the City reached its final decision on

  these policy issues. Although the City additionally asserts that this document is

  protected under the legislative privilege, it has not made a showing sufficient to

  support that assertion. The legislative privilege is "a personal one," meaning that

  it can only be asserted by each individual lawmaker. *See Favors III*, 2015 WL

  7075960, at *8-9. The City has not demonstrated that this document was

  prepared at the behest of a lawmaker, nor is the same apparent from the

  document's face. Nonetheless, because the deliberative process privilege applies

– as explained further in the balancing analysis below – this document is protected against disclosure.

- **NYCPRIV00183:** This draft memorandum regarding HPD's homelessness unit commitment is protected under the deliberative process privilege. This document is still in draft form, as it reflects placeholder text, questions, comment bubbles, and edits made using track changes. The tracked changes also show how various underlying policy decisions were being substantively modified as a result of the City's deliberative process. It is true that the portion of the document concerning the City's announcement of the commitment does not bear on policy-oriented deliberations. Nevertheless, this portion of the document is not at all relevant to the claims or defenses in this case and, accordingly, does not need to be produced.

- **NYCPRIV01556:** This draft memorandum regarding the creation of a mandatory inclusionary housing program is protected under the attorney-client and deliberative process privileges. With respect to attorney-client privilege, the document reflects questions directed to counsel in which the City sought legal advice. It also recites the substance of legal advice rendered by counsel. The deliberative process privilege also applies because the memorandum is a draft, non-final policy proposal that was created for the purpose of assisting the Mayor, and other City decisionmakers, in deciding whether to create a mandatory inclusionary housing program. Although the City additionally claims

that this document is protected under the work product doctrine, it has failed to demonstrate that the memorandum was prepared because of prospective litigation. *See Adlman*, 134 F.3d at 1202. To the contrary, the City acknowledges that this document was intended to communicate proposals to the Mayor regarding a mandatory inclusionary housing program.

- **NYCPRIV00218 and NYCPRIV01648:** These emails are protected under the work product and deliberative process privileges. Both communications relate to the statistical analyses the City conducted as part of its consideration of alternatives to the Community Preference Policy. Ms. Been represents that the analyses discussed in the emails were performed for the purpose of formulating potential settlement proposals for the HUD compliance review. As such, they are protected as work product. They are also protected under the deliberative process privilege because they concern analysis that was done to help guide the City's decisionmaking process on potential Policy alternatives. Moreover, while these documents do mention the Community Preference Policy in passing, they are not particularly relevant to the issues in this litigation because they do not contain any substantive discussion about the Policy or its rationales.

- **NYC_0056994:** This email is protected in part by both the deliberative process privilege and the work product privilege. Specifically, emails from Ms. Been and Matthew Murphy dated September 26, 2016 at 5:23 a.m. and 7:04 a.m., respectively, are privileged. These portions of the document reflect preliminary

thoughts and deliberations about potential alternatives to the Community

Preference Policy. Additionally, to the extent Ms. Been and Mr. Murphy were

weighing and considering Community Preference Policy alternatives at the

direction of counsel in connection with this litigation or the HUD review—and

they would not have otherwise done so in carrying out general responsibilities

within HPD—their thoughts and mental impressions regarding the alternatives

they considered would be protected under the work product privilege,

particularly since Ms. Been has represented that she has engaged in significant

deliberations over Policy alternatives in connection with settlement efforts. With

respect to the rest of the email chain, however, the City has improperly redacted

content that does not reflect deliberations over policy or the exercise of policy-

oriented judgment and does not constitute work product prepared in

anticipation of litigation. At best, the communications concern issues that are

"merely peripheral to actual policy formation" and to which the deliberative

process privilege does not apply. *Grand Cent. P'ship, Inc.*, 166 F.3d at 482. Thus,

the City will be permitted to redact the two emails from Ms. Been and Mr.

Murphy but must produce the remainder of the document in unredacted form.

- **NYCPRIV02154:** This document, which reflects factual information that was

  compiled in anticipation of this litigation, is protected under the work product

  privilege. Although factual work product may be discoverable in some instances,

  Plaintiffs here will not be able to establish a "substantial need" for this document

because the underlying facts all appear to have been gathered from publicly available sources. *See Obeid,* 2016 WL 7176653, at *3. The City accordingly may withhold this document as privileged.

- **NYCPRIV01387**: The City has failed to meet its burden of establishing that this document is protected under the work product privilege. Neither the document itself, nor the City's privilege log or other submissions present any basis for this Court to conclude that the document was created in anticipation of litigation. *See Davis*, 2012 WL 612794, at *5 (finding that "[a]s the parties asserting privilege, defendants have the burden of establishing through its privilege log, affidavits, or other evidentiary material that the elements of the privilege exist" and ordering production where the revised privilege log was insufficient to substantiate the claimed privileges). Therefore, the City must produce this document.

- **NYCPRIV01399:** This email is protected under the work product privilege because it concerns how the City wanted to present its position as part of its strategy in this litigation and was prepared in anticipation of litigation. The email is not, as the City contends, protected under the deliberative process privilege because the claimed "deliberations" contained therein (concerning the Community Preference Policy) reflect only the City's litigation strategy and not any predecisional assessment of potential modifications to the Community

Preference Policy. Nonetheless, because the work product doctrine applies, this document is protected against disclosure.

- **NYCPRIV00281 and NYCPRIV00393:** These documents are protected under the work product and deliberative process privileges. These documents reflect analyses that were conducted as part of the City's consideration of alternatives to the Community Preference Policy. The City represents that they were prepared in connection with either the HUD compliance review or this litigation. Disclosure of these documents would reveal the City's decisionmaking processes concerning potential modifications to the Policy in connection with an adversarial proceeding or in anticipation of litigation.

- **NYCPRIV01840:** This document is a letter from HUD regarding the commencement of its compliance review. While the City concedes that this document is not protected as privileged, it contends that it is entitled to withhold the document on confidentiality grounds. This Court is not persuaded by this argument. Under Rule 26, Plaintiffs are entitled to discovery of all nonprivileged and responsive documents, including documents that may be subject to a third-party confidentiality agreement or understanding. *See In Re Subpoena Duces Tecum Served on Bell Commn'cns Res., Inc.*, No. MA-85, 1997 WL 10919, at *3 (S.D.N.Y. Jan. 13, 1997) (collecting cases that hold confidentiality agreements cannot serve as protection from discovery requests and observing that a contrary holding would "clearly impede 'the truth-seeking

function of discovery in federal litigation,' as all individuals and corporations could use confidentiality agreements to avoid discovery.") (citations omitted). Notably, the question of whether a confidentiality agreement alone can prevent disclosure is distinguishable from the question, addressed above, of whether a confidentiality agreement may help to preserve a document's privilege. Moreover, the parties in this case have entered into a Protective Order that restricts the use of material designated as confidential or for attorneys' eyes only. This Order is sufficient to protect the City's interests in maintaining the confidentiality of this document.

- **NYCPRIV00399:** This memorandum is protected in part under the deliberative process privilege. The memorandum itself reflects predecisional recommendations and thoughts regarding how the City administration should respond to issues related to the mandatory inclusionary housing program. Thus, the City may withhold the memorandum (pages 1-6) as privileged. The Appendices, however, reflect purely factual material that is not protected under the deliberative process privilege. *See Grand Cent. P'ship, Inc.*, 166 F.3d at 482. Since the Appendices can be easily segregated from the underlying privileged memorandum, the City must produce them.

- **NYC_0067432:** This draft presentation is protected under the work product privilege. The document, which was prepared in anticipation of litigation, reflects

the City's litigation strategy, legal assessments, and potential alternatives for settlement.

- **NYCPRIV02361:** The City produced this email chain in redacted form and redacted portions of the document on the basis of the deliberative process privilege. This document is not privileged and should be produced in full without redactions. Communications regarding how to "message" an already-made policy decision to the public, like those reflected in this document, are not protected by the deliberative process privilege. *See Fox News II*, 911 F. Supp. 2d at 276 ("communications concerning how to present agency policies to the press or public, although deliberative, typically do not qualify as substantive policy decisions protected by the deliberative process privilege."); *Nat'l Day Laborer Org. Network v. United States Immigration and Customs Enforcement Agency*, 811 F. Supp. 2d 713, 741 (S.D.N.Y. 2011) (agency deliberations about the "messaging" to be delivered to the public about an existing policy is not protected under the privilege). Although the City contends that the details surrounding the homeless referral policy had not yet been fully finalized at the time of this communication, this document does not reflect or reveal the substantive deliberations about any open policy issues.

### 2. Application Of The Rodriguez Balancing Test To Documents Protected By The Deliberative Process Privilege

#### a. Relevance Of The Evidence

A majority of the documents listed on the City's privilege log are drafts of various documents, including drafts of Disclosure Provisions themselves, public statements, summaries, and analyses, among other examples of preliminary work product. As discussed above, "[d]rafts, by their very nature, rarely satisfy the test of relevance." *Grossman*, 125 F.R.D. at 385. As the court in *Grossman* explained, "administrative decisions . . . are often subjected to repeated revisions, including changes in language and style, correction of typographical errors, editing by superiors of subordinates' work, incorporation of new legal research or a more detailed review of the facts, or simply a more focused view of the issues with each reading." *Id*. It further stated that "[t]he relevance of such revisions to defendants' state of mind is pure speculation. Absent extrinsic evidence tending to show the relevance of a particular draft, production of these documents is likely to lead only to wasteful fishing expeditions concerning the identification and deciphering of handwriting and the reasons for immaterial revisions." *Id*.

Additionally, as discussed above, "relevance" for purposes of invading a privilege is defined narrowly and must be weighed against the potential chilling effect of disclosure on government employees. Information that is presumptively privileged will be deemed relevant only if it is central "to the proper resolution of the controversy." *See Five Borough Bicycle Club*, 2008 WL 4302696, at *1; *cf. Torres*, 1994 WL 502621, at *4.

The City's Excel spreadsheet Bates-stamped NYCPRIV00548, while related to the Community Preference Policy, addresses the policy solely in the context of potential

modifications to the marketing process for affordable housing units. (Defendant's Supplemental Memorandum of Law, p. 9 n.4.) This document does not concern the City's decisions to implement, expand, or maintain the Community Preference Policy, which are the only City decisions at issue in this case. The contents of the spreadsheet, therefore, are not central to the resolution of this litigation, and application of the "relevance" factor weighs against disclosure of the privileged portions of this document under *Rodriguez*.

The documents Bates-stamped NYCPRIV00885, NYCPRIV01023, and NYCPRIV00399 similarly fail to satisfy the heightened relevance standard under *Rodriguez* such that disclosure should be favored. As the City previously indicated, these documents include only "limited discussions of issues responsive to plaintiffs' demands (typically anti-displacement strategies and or [sic] community opposition)." (Defendant's Supplemental Memorandum of Law, p. 9.) The first two documents are draft portions of the Inwood NYC Action Plan and East New York Affordable Housing Strategy, respectively. As such, their relevance would be diminished even if they did contain information central to this litigation, which they do not. The third document is a memorandum concerning the City administration's potential response to issues related to the mandatory inclusionary housing program. This document too, while not a draft, lacks information central to the claims in this action and thus is not "relevant" so as to warrant an invasion of the deliberative process privilege.

The document Bates-stamped NYCPRIV00731 is a draft of a presentation created to brief the New York State Legislature on proposals that HPD wanted to implement regarding tax and rent regulation issues. The document Bates-stamped NYCPRIV00183 is a draft

memorandum concerning HPD's homelessness unit commitment. Neither document contains information central to this litigation; thus, neither document is relevant for purposes of the *Rodriguez* analysis.

The document Bates-stamped NYCPRIV00726 is an email chain concerning the East New York Neighborhood Plan. Although portions of this document are not relevant, other portions reference the Community Preference Policy and its underlying justifications, which are central to this litigation. Accordingly, the Court finds that certain information contained in this document meets the relevance threshold under *Rodriguez*.

### b. Availability Of Other Evidence

With respect to the availability of other evidence, the Court notes that this factor carries minimal, if any, weight when the evidence sought is not central to the litigation. If a privileged document is not relevant under *Rodriguez*, it matters not whether the irrelevant information contained therein is accessible to the requesting party by alternative means. Consideration of this factor thus results in a neutral outcome with respect to the following documents, which do not contain information central to the litigation: NYCPRIV00548, NYCPRIV00885, NYCPRIV01023, NYCPRIV00399, NYCPRIV00731, and NYCPRIV00183. Notwithstanding that these privileged documents fail to satisfy the heightened standard for relevance under the balancing test, should Plaintiffs wish to review the contents of the Inwood NYC Action Plan (NYCPRIV00885) or the East New York Affordable Housing Strategy (NYCPRIV01023), the final versions of these documents are available on the City's website.

Concerning the relevant information contained in NYCPRIV00726, such information might be publicly available, as this email chain addresses revisions to documents that were intended for eventual public release. Nevertheless, the email chain's particular characterization of the Community Preference Policy and its underlying justifications is unlikely to be found elsewhere. Accordingly, this factor weighs in favor of disclosure of the relevant portion of NYCPRIV00726.

### c. Seriousness Of The Litigation

While "relevance" and "availability of other evidence" vary among documents, the third *Rodriguez* factor – the seriousness of the case and issues involved – remains constant across discovery categories. *See Favors II*, 2013 WL 11319831, at *11. As this Court previously found in its analysis regarding the City's clawback demand, the public has a significant interest in a plaintiff's ability to obtain all the information needed to prosecute her discrimination claims but also has an overriding interest in fostering a productive government deliberation process – particularly with respect to deliberations addressing the City's fair housing needs. For all documents at issue here, this factor thus weighs against disclosure of information protected by the deliberative process privilege.

### d. Government's Role In The Litigation

As with the third *Rodriguez* factor, the fourth factor – the role of the government in the litigation – remains constant across discovery categories. *See id.* In this litigation, the City's decisionmaking is the central issue challenged by Plaintiffs, and the government clearly plays a

direct role in the allegedly unlawful conduct. Accordingly, this factor weighs in favor of disclosure for all documents at issue.

### e. *Potential Chilling Effect On Government Employees*

When weighed against the potential chilling effect of court-ordered disclosure of privileged information, the first four factors justify disclosure only of the relevant portion of NYCPRIV00726. This Court reiterates that it is in all parties' interests – including the interests of Plaintiffs and all other individuals who seek affordable housing in New York City – to allow the City to engage in robust deliberations and analysis concerning the future of its fair housing policies. The City is ordered to produce NYCPRIV00726 in redacted form, disclosing the portion that discusses the Community Preference Policy and its underlying justifications.

### C. *The City's Claims Of Privilege During Depositions*

The parties have also marked 14 questions posed to Ms. Been during her deposition for a ruling on the City's invocation of privilege. Under the legal standards set forth above governing the deliberative process, attorney-client, and work product privileges, the Court rules as follows:

- **Been No. 1** (39:25 - 41:11): Plaintiffs asked Ms. Been whether it was her decision to use certain language in a declaration. The City objected on the basis of work product. The City's privilege objection is **sustained**. Been's declaration was prepared with the assistance of counsel in the course of this litigation, and strategic communications and decisions about what content to include in the

declaration are protected as work product. This question also does not seek information that is relevant to the claims or defenses in this litigation.

- **Been No. 2** (69:12 - 70:12): Plaintiffs asked Ms. Been to describe a conversation she had with Mayor DeBlasio in which they were discussing the City's position on pending rent regulation proposals. The City objected on the basis of deliberative process privilege. The City's objection is **sustained.** To respond to Plaintiffs' question, Ms. Been would need to disclose the substance of deliberations she had with Mayor DeBlasio regarding the City's non-final positions on the proposals. The communication Plaintiffs ask Ms. Been to describe is pre-decisional because it occurred before the City formulated its final position regarding rent regulation modifications in 2015. It is also deliberative because, as Ms. Been testified, its purpose was to consider and deliberate pending regulatory proposals for the purpose of reaching a final decision. Because the contents of Ms. Been's conversation with Mayor DeBlasio are protected only by the deliberative process privilege, the Court must next consider whether a balancing under *Rodriguez* would nonetheless favor disclosure. With respect to the first factor, the Court notes that the privileged information is, at least to some degree, relevant to this litigation – particularly to the extent Plaintiffs wish to show that increased rent regulation would serve the government's interest in preventing displacement effectively and with "less discriminatory effect" than the Community Preference Policy. *See Mhany Mgmt., Inc. v. County of Nassau,*

819 F.3d 581, 617 (2d Cir. 2016). However, with respect to the second factor –
availability of other evidence – it is apparent that Plaintiffs could simply ask
HPD's representatives about the effects of rent regulation on displacement
without requesting the specific contents of Ms. Been's conversation with Mayor
DeBlasio. The third and fourth *Rodriguez* factors, as discussed previously, weigh
against and in favor of disclosure, respectively. Ultimately, the ease with which
Plaintiffs could access this information by alternative means, when considered in
light of the potential chilling effect of disclosure on government deliberations,
tips the balance against disclosure.

- **Been No. 3** (178:4 - 180:8): In response to a question inquiring whether HPD
  compared the eligibility for affordable housing on both a city-wide and
  community-district basis in its consideration of whether to retain the Community
  Preference Policy, the City objected on the basis of deliberative process,
  attorney-client, and work product privileges. The City's objections are **overruled.**
  The question posed requires a simple yes-or-no answer, and Ms. Been's
  response will not reveal any privileged communications, impressions, or
  deliberations. Accordingly, Ms. Been is directed to respond to this question.

- **Been No. 4 and 5** (180:9 - 184:3 and 184:18 - 185:17): As a follow-up to the
  question addressed in the prior bullet point, Plaintiffs asked Ms. Been to
  describe what disparate impact analyses HPD conducted regarding the
  Community Preference Policy. The City objected on the basis of deliberative

process, attorney-client, and work product privilege. The City's objections are **sustained**. The details of the City's analyses are protected under attorney-client privilege and the deliberative process privilege. The City sought the advice of counsel regarding whether the Community Preference Policy is compliant with federal and local laws, and part of that legal advice concerned how HPD should conduct its disparate impact analysis, as Ms. Been testified. (*See* Tr. 181:2-5.) Describing what specific statistical analyses were done would reveal privileged communications, as well as the City's preliminary deliberative process with respect to whether to maintain or modify the Policy. Significantly, the City has already identified and produced the data sets relevant to any disparate impact analysis. In the course of expert discovery, both parties will have the opportunity to present their statistical approaches and findings in formal expert reports, as well as to cross-examine the opposing party's statistical expert. Moreover, the manner in which HPD conducted its preliminary data analyses during Ms. Been's tenure has no bearing on whether the Policy is intentionally discriminatory or whether it, in fact, causes (or does not cause) a disparate impact. Thus, the details of HPD's preliminary statistical approaches are not relevant to the claims and defenses in this action. Rather, what is relevant is whether the City conducted an analysis, what data set was used for the analysis, and whether the City concluded that the Policy had a disparate impact on the basis of race.

Plaintiffs may ask these questions but cannot probe further into the specifics of HPD's early data analyses.

- **Been Nos. 6 and 7** (223:18 - 224:17 and 224:18 - 225:6): Plaintiffs asked whether Ms. Been ever expressed concerns about the legality of the Community Preference Policy. The City objected on the basis of attorney-client and work product privilege. The City's privilege objections are **sustained in part**. If Ms. Been's response would require her to reveal statements made during conversations soliciting or receiving legal advice from counsel, then the attorney-client privilege protects such conversations. Similarly, any communications in which Ms. Been discussed the legality of the Community Preference Policy in the context of the HUD compliance review or this litigation at the direction of counsel are protected under the work product privilege. However, if Ms. Been ever expressed concerns about the Policy's legality outside of a discussion with counsel and not in anticipation of litigation or the HUD review, then the privileges would not apply and such communications would be discoverable.

- **Been No. 8** (227:23 - 228:11): Plaintiffs asked Ms. Been whether she ever thought that it was a good idea to eliminate community preference in any low-poverty area during her tenure at HPD. The City objected on the basis of attorney-client privilege. The City's objection is **overruled**. Ms. Been's response to this question would require her to disclose only her own thoughts, not the substance of any privileged communications with counsel that may have

occurred on this topic. Accordingly, Ms. Been shall respond to this question. However, to the extent that Plaintiffs ask follow-up questions that would require Ms. Been to divulge the substance of her conversations with counsel, the City may invoke attorney-client privilege as applicable.

- **Been No. 9** (228:19 - 229:20): Plaintiffs asked Ms. Been to explain what considerations weighed in favor of eliminating the Community Preference Policy in certain low-poverty areas. The City objected on the basis of deliberative process and work product privilege. The City's objections are **sustained.** To the extent that Ms. Been was weighing and considering Community Preference Policy alternatives at the direction of counsel in connection with this litigation or the HUD review—and she would not have otherwise done so in carrying out general responsibilities within HPD—her thoughts and mental impressions regarding the alternatives she considered would be protected under the work product privilege, particularly since Ms. Been has represented that she has engaged in significant deliberations over Policy alternatives in connection with settlement efforts. The deliberative process privilege also applies because Plaintiffs are seeking testimony about how the City reached a final policy determination—that is, its decision not to modify the Policy to eliminate the community preference in certain low poverty areas. However, to the extent the City's decisionmaking process regarding potential modifications to the Community Preference Policy outside the context of settlement-related

discussions considered race, or otherwise implicated race-based concerns, the City will not be permitted to assert the deliberative process privilege to preclude discovery into whether, and how, race was considered. Moreover, the City also must be prepared to articulate its final reasons for why it maintained the Policy in its current form, as the deliberative process privilege does not protect the justifications underlying a final policy determination.

- **Been No. 10** (236:12 - 237:23): After Ms. Been testified that she requested racial diversity index data during her tenure at HPD for the purpose of exploring different approaches to community preference in the context of the HUD compliance review, Plaintiffs asked her to describe the different approaches she explored. The City objected on the basis of deliberative process, attorney-client, and work product privilege. The City's objections are **sustained in part.** Ms. Been's testimony makes it clear that she was using the data indexes and considering different approaches to community preference because of the HUD compliance review. Thus, under the work product doctrine, she will not be required to describe the specifics of her analyses to the extent they  were conducted at the direction of counsel, as she represents they were. The attorney-client privilege would also apply insofar as Ms. Been's response would disclose communications with counsel regarding legal advice, such as conversations between Ms. Been and her attorneys concerning the legal merits or risks of different alternatives to the Policy. Moreover, testimony regarding

what alternatives Ms. Been considered, but did not ultimately adopt, also would be protected under the deliberative process privilege because her analysis was predecisional and would reflect her decisionmaking process.

- **Been No. 11** (262:9 - 265:17): Plaintiffs asked Ms. Been to explain a statement she made in an email about the potential for litigation against the City. The City objected on the basis of attorney-client privilege. The City's objection is **sustained.** As Ms. Been stated during her deposition, her response to Plaintiffs' question would require her to divulge the content of discussions she had with HPD's General Counsel about the potential legal consequences of adopting certain policy positions.

- **Been No. 12** (275:10 - 280:16): In response to Plaintiffs' questions about whether Ms. Been considered a particular document in connection with possible changes to the Community Preference Policy, the City objected on the basis of work product. The City's objection is **overruled.** Responding to this yes-or-no question will not require Ms. Been to disclose legal strategy or the substance of any privileged work product. Moreover, discovery regarding the City's consideration of alternatives to the Community Preference Policy is relevant given the nature of Plaintiffs' claims in this case. Ms. Been is not required to disclose the substance of any discussions she had about this document in connection with this litigation or settlement. At the same time, to the extent HPD has already rejected any of the community preference strategies reflected

in the document at issue, Plaintiffs are entitled to learn why such strategies were deemed insufficient to serve the City's "substantial, legitimate, nondiscriminatory interests" with "a less discriminatory effect" than the Community Preference Policy. *See Mhany Mgmt., Inc.*, 819 F.3d at 617. Questioning must be carefully tailored to the above-described findings.

- **Been No. 13** (280:20 - 282:15): Plaintiffs asked Ms. Been about whether the community preference percentage amount was "frozen" once this litigation began. The City objected on the basis of attorney-client and work product privilege. The City's objections are **sustained**. As Ms. Been testified and as the City represents in its privilege log, decisions regarding whether to modify the 50% preference for community district residents were discussed in the context of this litigation with counsel. Testimony regarding these communications and the related decisionmaking process would reveal legal strategy and advice rendered in connection with this litigation.

- **Been No. 14** (282:16 - 283:23): Plaintiffs asked Ms. Been to explain a statement she made about not changing the Community Preference Policy during the pendency of this litigation. The City objected on the basis of attorney-client privilege. The City's objection is **sustained**. In order to respond to Plaintiffs' question, Ms. Been has stated that she would need to disclose communications with counsel concerning whether or not to modify the Community Preference Policy during the pendency of the litigation. Such discussions regarding legal

strategy in the context of an ongoing litigation are protected by the attorney-client privilege.

## CONCLUSION

For the foregoing reasons, Plaintiffs' objections to the City's clawback demand are DENIED; Plaintiffs' objections to the City's privilege log are GRANTED in part and DENIED in part; and the City's assertions of privilege during depositions are SUSTAINED in part and OVERRULED in part. The City is directed to produce the documents Bates-stamped NYC _0067301, NYCPRIV01218, NYCPRIV01728, NYCPRIV00090, NYCPRIV02127, NYCPRIV01387, NYCPRIV01840, and NYCPRIV02361, as well as redacted copies of the documents Bates-stamped NYCPRIV00548, NYC_0056994, NYCPRIV00399, and NYCPRIV00726 in accordance with this opinion.

**SO ORDERED.**

Dated: February 1, 2018
        New York, New York

_Katharine H. Parker_
KATHARINE H. PARKER
United States Magistrate Judge