UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

JANELL WINFIELD, TRACEY STEWART,
and SHAUNA NOEL,

Plaintiffs,

-against-

CITY OF NEW YORK,

Defendant.

---------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  02/12/2018

**OPINION AND ORDER**

**15-cv-05236 (LTS) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

The parties in this case have had many discovery disputes. The latest one involves a broad deposition notice served on the City pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Rule 30(b)(6)").

As set forth in more detail in this Court's prior rulings,[1] this civil rights action challenges a New York City policy regarding affordable housing lotteries. The policy, which is referred to as the "Community Preference Policy," allocates 50% of units in affordable housing lotteries to individuals who already reside in the Community District where the affordable housing units are located. Plaintiffs allege that the Community Preference Policy violates the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3604 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), NYC Admin. Code § 8-107, *et seq.*, because it perpetuates racial segregation and disparately impacts

---

[1] The facts pertaining to the underlying action have been set forth in the Court's prior decisions. *See Winfield v. City of New York*, No. 15-cv-5236 (LTS) (DCF), 2016 WL 6208564, at *1-3 (S.D.N.Y. Oct. 24, 2016); *Winfield v. City of New York*, No. 15-cv-5236 (LTS) (KHP), 2017 WL 5664852, at *1-6 (S.D.N.Y. Nov. 27, 2017); *see also Winfield v. City of New York*, No. 15-cv-5236 (LTS) (KHP), 2017 WL 2880556, at *1-2 (S.D.N.Y. July 5, 2017), *objections overruled by* 2017 WL 5054727, at *1-2 (S.D.N.Y. Nov. 2, 2017).

racial minorities.  Plaintiffs also claim that the City's decisions to establish, expand, and maintain the policy constitute intentional discrimination.

In order to prove their case, Plaintiffs sought and were provided data maintained by the City on individuals who have applied for housing through affordable housing lotteries and who might have been impacted by the Community Preference Policy through lottery outcomes.  The data is housed in two databases called "Housing Connect" and "Access."  This data is being analyzed by experts and will be the subject of expert reports.

On November 7, 2017, Plaintiffs served a Notice of Deposition (the "Notice") pursuant to Rule 30(b)(6) on the City.  The Notice seeks various information from the City's Department of Housing Preservation and Development ("HPD") concerning the Housing Connect and Access databases and the data maintained therein from both the front-end user and back-end perspectives, as well as information about various policies related to data and data analyses.[2] It is clear from the face of the Notice that no one person alone can testify about the breadth of issues covered therein.

The City has designated one witness to testify as to some of the topics in the Notice but has not yet identified witnesses to testify as to the remaining topics covered by the Notice. Currently pending before this Court are (1) Plaintiffs' motion to compel the City to identify

---

[2] Because the data needed in this case is voluminous and complex, it was critical for the parties to exchange information about it at the start of this case.  For this reason, early in the case, this Court encouraged the City to permit Plaintiffs' counsel and their technology experts to meet informally with appropriate database managers to facilitate the exchange of information about the location of data, the availability of data dictionaries, and limitations of the data.  The parties agreed to this suggestion and met several times to discuss data.  Plaintiffs were able to speak directly with database personnel in these meetings. This Court expressed the hope that such informal exchange of information might obviate the need for formal depositions and/or permit more targeted and specific formal discovery in the form of stipulated facts and/or interrogatories about the data and databases.  The Court did not, however, preclude Plaintiffs from serving a Rule 30(b)(6) Notice for testimony on these topics.

witnesses qualified to provide deposition testimony as to all topics contained in Plaintiffs'

Notice and (2) Defendant's cross-motion for a protective order seeking greater specificity as to

technical data topics, precluding broad, policy-related questioning, and limiting the duration of

the deposition of individuals testifying about technical database issues.[3]  For the reasons set

forth below, Plaintiffs' motion is granted in part and denied in part, and the City's cross-motion

is granted.

## BACKGROUND

Plaintiffs' Rule 30(b)(6) Notice seeks information falling largely into three categories: (1)

the functioning of the lottery and affordable housing marketing process from a front-end

database user perspective; (2) technical questions concerning the Housing Connect and Access

databases (*i.e.*, back-end data questions); and (3) policies underlying the City's data collection

and analyses.  The City has objected to the Notice on various grounds, including its scope, lack

of specificity, and the relative unavailability of some information.  With respect to the first

category of information, however, the City has nevertheless identified at least one witness who

can testify about HPD's lottery and marketing processes and interaction with the two databases

from a front-end user perspective.  With respect to the second category, the City has agreed to

identify knowledgeable data systems witnesses, but the parties have disputes concerning

deposition procedure and length of time for the deposition.  With respect to the third category,

the City objects to the information sought on the grounds that the deposition would be unduly

burdensome insofar as the information is not relevant and the topics noticed seek information

---

[3] The City made its oral cross-motion for a protective order during the January 25, 2018 discovery conference held before this Court.

that is not reasonably available to the City.  The numbered topics in Plaintiffs' Notice fall into

these three categories as illustrated below:[4]

| Category One: The Functioning Of The Lottery And Marketing Processes (*i.e.,* front-end user questions) | (1)     The means by which HPD collects, maintains, and organizes data concerning: (a) Any persons who express interest in, who register to get information about or to prepare to apply for, who request information about, or who apply for any affordable housing opportunities in New York City; and (b) Tenant or owner selection in connection with any affordable housing development in New York City, including all steps involved in a lottery or other selection procedure, and including the tracking or documentation of lottery outcomes, and including all types of preferences tracked or documented. |
|---|---|
|  | (2)     The means by which HPD requires or permits developers of affordable housing units subject to lottery under the auspices of HPD or HDC to collect, maintain, and organize data concerning: (a) Any persons who express interest in, who register to get information about or to prepare to apply for, who request information about, or who apply for any affordable housing opportunities in New York City; and (b) Tenant or owner selection in connection with any affordable housing development in New York City, including all steps involved in a lottery or other selection procedure, and including the tracking or documentation of lottery outcomes, and including all types of preferences tracked or documented. |
|  | (4)     Workflow related to relevant documents, including databases or other data |

[4] The topics numbered (6) and (8) in Plaintiffs' Notice are not subject to a dispute; however, the City has yet to identify one or more witnesses to provide deposition testimony concerning these topics.  The Court, at the January 25, 2018 discovery conference, directed the City to do so.

| | |
|---|---|
| | compilations, including the sources, methods, and means by which data are added, derived, modified, deleted, or extracted by HPD in relation to affordable housing lotteries.<br><br>(7) **How** the data available to the City or a related entity or to a developer relate to and are used by any of them in connection with the lottery process, including determinations of eligibility and ineligibility for apartments, and used by any of them to comply with the rules applicable to lotteries, including rules regarding the sequencing of opening and evaluating applicants, and rules regarding the treatment of different preferences in relation to one another. |
| **Category Two: Technical Questions Concerning Databases (*i.e.,* back-end questions)** | (1) The existence of any written documentation of relevant databases or other documents or data compilations, whether in the form of schema, data "dictionaries," field and field-value definitions or explanations, table definitions or explanations, or otherwise.<br><br>(2) Explanation of the nature, purposes, and uses of such schema, data "dictionaries," or similar documentation as may exist.<br><br>(3) Explanation of the nature, purposes, and uses of code, fields, field-values, and tables used in and in connection with relevant documents, including databases or data compilations.<br><br>(4) Workflow related to relevant documents, including databases or other data compilations, including the sources, methods, and means by which data are added, derived, modified, deleted, extracted, or analyzed.<br><br>(5) Relationship between and among data in the databases or data compilations, |

| | |
|---|---|
| | including the relationship between and among tables and the queries, code, or other means used to generate tables. |
| **Category Three: Policies Underlying The City's Data Collection And Analysis** | (7)      ***Why*** the data available to the City or a related entity or to a developer relate to and are used by any of them in connection with the lottery process, including determinations of eligibility and ineligibility for apartments, and used by any of them to comply with the rules applicable to lotteries, including rules regarding the sequencing of opening and evaluating applicants, and rules regarding the treatment of different preferences in relation to one another.<br><br>Additional Topics:<br><br>The reasons [why] the City and any related entity, including the New York City Housing Development Corporation ("HDC"),[5] collect, maintain, organize, analyze, query, or use data concerning:<br><br>• Any persons who express interest in, who register to get information about or to prepare to apply for, who request information about, or who apply for any affordable housing opportunities in New York City; and<br><br>• Tenant or owner selection in connection with any affordable housing development in New York City, including all steps involved in a lottery or other selection procedure, and including the tracking or documentation of lottery outcomes, |

[5] HPD is the agency that promulgated the Community Preference Policy and oversees the lottery and thus is covered by the Notice.  HDC is an independent public benefit corporation.  The City objected to producing witnesses who can speak for HDC, and Plaintiffs agreed to narrow their request to require the City only to identify witnesses to testify about City agencies' knowledge.

| | and including all types of preferences tracked or documented. |
|---|---|
| | The reasons [why] the City and any related entity, including HDC, require or permit developers of affordable housing units subject to lottery under the auspices of HPD or HDC to collect, maintain, organize, analyze, query, or use data concerning: |
| | • Any persons who express interest in, who register to get information about or to prepare to apply for, who request information about, or who apply for any affordable housing opportunities in New York City; and |
| | • Tenant or owner selection in connection with any affordable housing development in New York City, including all steps involved in a lottery or other selection procedure, and including the tracking or documentation of lottery outcomes, and including all types of preferences tracked or documented. |

### A.    Category One: The Functioning Of The Lottery And Marketing Processes

As noted above, the City has identified at least one witness who will testify about HPD's lottery and marketing processes, including interaction with the databases from a user perspective.  This category includes the workflow related to databases as well as how HPD and/or developers use the data available to them (1) in connection with the lottery process, including determinations of eligibility and ineligibility for apartments; and (2) to comply with the rules applicable to lotteries, including rules regarding the treatment of different preferences in relation to one another.  (*See* Doc. No. 218, Appendix D, at 1-2.)  With respect to

this category of information, the parties disagree only as to the location for the deposition.  The

location dispute is addressed below.

> ### B.     Category Two: Technical Questions Concerning Databases

With respect to Plaintiffs' "technical" questions concerning the Housing Connect and

Access databases, the parties disagreed as to the most efficient approach for providing

Plaintiffs with the relevant information.  The City contended it was impossible to prepare any

witness adequately about detailed database questions without greater specificity as to the

topics.  It also asserted that even the best-prepared witness might need to research certain

questions (including by consulting with other personnel) to ensure that he/she was providing

an accurate answer.  Plaintiffs suggested they could potentially follow-up with detailed

interrogatories (up to at least fifty) and requests to admit.  During a conference on this issue,

the parties discussed with the Court and now have consented to a novel procedure – a

"committee" deposition involving multiple witnesses – which will be outlined in greater detail

below.  Despite having consented to an information-gathering procedure to address Plaintiffs'

technical questions, the parties continue to disagree as to the specific parameters of the

committee deposition, including the number of hours permitted for it, as well as whether

follow-up written discovery should be conducted.

> ### C.     Category Three: Policies Underlying The City's Data Collection And Analysis

Finally, the parties disagree as to the scope of questions that may be asked of Category

Three witnesses.  The City objects to designating witnesses to answer questions about why it

maintains or does not maintain certain categories of data, why it conducts certain analyses and

not others, and similar "why" questions that the City characterizes as policy questions.  The City

argues that it "has been administering affordable housing lotteries for decades" and that "it is neither feasible nor reasonable for [the City] to determine the reasons for all the issues outlined in the Notice." (*Id.* at 3.) Moreover, the City notes that "HPD is a large organization with an extensive mandate, and as such, it is equally not feasible or within the scope of this litigation to assess all the instances that HPD analyzed or is in the process of analyzing information that the City has collected and is collecting relating to affordable housing. To the extent that relevant analyses have been identified, related documents were produced." (*Id.*) In response, Plaintiffs assert that knowledge of the policy justifications underlying the lottery and marketing processes (*i.e.*, the "why") is essential to a complete understanding of the functioning of the lottery and marketing processes themselves (*i.e.*, the "how"). The parties also disagree as to the location for the deposition of designated Category Three witnesses.

## LEGAL STANDARDS

### A.    *Motions To Compel And For Protective Orders*

In evaluating any discovery dispute, the Court must determine whether the information sought is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1) ("Rule 26"). The party moving to compel bears the initial burden of demonstrating relevance and proportionality. *See Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16-cv-1805 (JPO) (JCF), 2017 WL 3055098, at *2-3 (S.D.N.Y. July 18, 2017). When the discovery sought is collateral to the relevant issues (*i.e.*, discovery on discovery), the party seeking the discovery must provide an "adequate factual basis" to justify the discovery, and the Court must closely scrutinize the request "in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*." *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.,* No.

15-cv-0293 (LTS) (JCF), 2016 WL 3906712, at *7 (S.D.N.Y. July 14, 2016) (quoting *Freedman v. Weatherford Int'l Ltd.*, No. 12-cv-2121 (LAK) (JCF), 2014 WL 3767034, at *2-3 (S.D.N.Y. July 25, 2014)).

Once relevance of the information sought or an adequate factual basis for the collateral issue discovery has been shown, the burden falls on the responding party to justify curtailing discovery. *See Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 8 (S.D.N.Y. 2015); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York,* 284 F.R.D. 132, 134 (S.D.N.Y.2012). "In order to justify withholding relevant information, the party resisting discovery must show 'good cause,' the standard for issuance of a protective order under Rule 26(c)." *Johnson*, 2017 WL 3055098, at *3; *cf. State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 233 n.4 (E.D. Pa. 2008) (treating motion to compel and motion for protective order as "mirror-image[s]").

"[T]he court must limit the frequency or extent of discovery when: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues*." In re Weatherford Int'l Sec. Litig.*, No. 11-cv-1646 (LAK) (JCF), 2013 WL 2355451, at *4 (S.D.N.Y. May 28, 2013) (internal quotation marks and citation omitted). In other words, "the court ultimately weighs the interests of both sides in fashioning an order." *See Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010).

### B. Rule 30(b)(6) Depositions

Rule 30(b)(6) permits a notice of deposition to be directed to an organization. Fed. R. Civ. P. 30(b)(6). The party seeking the deposition "must describe with *reasonable particularity* the matters for examination." *Id.* (emphasis added). The named organization then must designate one or more persons to testify on its behalf concerning the topics set forth in the deposition notice. *See id.* "The persons designated must testify about information *known or reasonably available to* the organization." *Id.* (emphasis added).

The primary purpose of a Rule 30(b)(6) deposition is to "streamline the discovery process.*" QBE Ins. Corp. v. Jorda Enter., Inc.*, 277 F.R.D. 676, 687 (S.D. Fla. 2012); *see also Gucci Am., Inc. v. Costco Co.*, No. 98-cv-5613 (RLC) (FM), 2000 WL 60209, at *3 (S.D.N.Y. Jan. 24, 2000) ("The rule has a number of purposes, one of which is to 'curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of the facts that are clearly known to persons in the organization and thereby to it.'"). The witness or witnesses designated must be prepared to testify "fully and non-evasively about the subjects" listed in the notice.[6] *See QBE Ins. Corp.*, 277 F.R.D. at 689.

Once a designated witness testifies on behalf of the company, the testimony is binding on the company. *See Reilly v. Natwest Mkts. Group Inc*., 181 F.3d 253, 268 (2d Cir. 1999); *Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126, 152 (S.D.N.Y. 2007). The

---

[6] A Rule 30(b)(6) deposition notice that is overly broad may necessitate designation of multiple witnesses and provide an avenue for getting around the presumptive ten-deposition limit in a case because one Rule 30(b)(6) notice typically counts as one deposition, regardless of the number of corporate representatives needed to address the topics in the notice. *See* Fed. R. Civ. P. 30(a)(2). At some point, however, an overly broad notice requiring multiple witnesses to testify may be deemed contrary to Rule 30's presumptive limit and to the goal of Federal Rule of Civil Procedure 1, which requires the Court and the parties to construe, administer, and employ the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1.

inability of a designated witness to answer questions that fall within the scope of a proper Rule 30(b)(6) notice can be tantamount to a failure to appear and may subject the company to sanctions under Federal Rule of Civil Procedure 37. *See, e.g., Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.,* 228 F.3d 275, 303-04 (3d Cir. 2000); *Reilly*, 181 F.3d at 268-69 ("When a party fails to comply with Rule 30(b)(6), Rule 37 allows courts to impose various sanctions, including the preclusion of evidence.").

Discovery disputes concerning Rule 30(b)(6) depositions often focus on the particularity of the notice. The Court must evaluate "reasonable particularity" based on the nature of the topics listed in the deposition. "Reasonable particularity" requires the topics listed to be specific as to subject area and to have discernible boundaries. *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125 (D.D.C. 2005); *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000). This means that the topics should not be listed as "including but not limited to;" rather, they must be explicitly stated. *Tri-State Hospital*, 226 F.R.D. at 125. Additionally, the topics should be substantively and temporally relevant to the claims or defenses. Where the topics concern "discovery on discovery" and/or complex data, even greater specificity is required to ensure that the witness can prepare for the deposition, that the deposition is productive, and that the parties' time is not wasted on topics that do not relate to core claims or defenses. *See EEOC v. Thorman & Wright Corp.*, 243 F.R.D. 421, 426 (D. Kan. 2007) (requiring "painstaking specificity"); *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000) (same); The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 51 (2018)

("Discovery requests for electronically stored information should be as specific as possible; responses and objections to discovery should disclose the scope and limits of the production.").

Depositions of data systems witnesses generally fall into the "discovery on discovery" category. They are typically conducted for two primary reasons: (1) to learn about where and how ESI is created or obtained, accessed, stored, maintained, backed up and preserved, and/or destroyed; and (2) to learn about specific software programs and data that may or will be analyzed by experts, including sources of data, completeness of data, validity of data, meaning of various data fields and categories, reporting capabilities, and other technical details about the data. They serve to aid discovery and the search for relevant information and/or provide an explanation of data produced and authentication of ESI.

Because of "the diverse and complicated ways in which database information can be stored," discovery disputes related to data discovery are more and more common, especially as to the best and most efficient way to exchange information, the specificity required in a Rule 30(b)(6) notice, and the extent to which the information sought is reasonably available. *See* The Sedona Conference, *The Sedona Conference Database Principles Addressing the Preservation and Production of Databases and Database Information in Civil Litigation*, 15 Sedona Conf. J. 171, 177 (2014) ("Database Principles"). Despite the increasing frequency of these disputes, there is a dearth of case law discussing how Rule 30(b)(6) is to be applied in the context of depositions of data systems witnesses or whether 30(b)(6) depositions are the best mechanism for learning about data systems.

It is this Court's view that, especially with respect to depositions concerning data, it is the joint responsibility of the parties to cooperate so that the corporate entity has a clear

understanding of the information sought and can designate the persons most appropriate to testify on those subjects. *See Updike v. Clackamas Cnty.,* No. 15-cv-00723, 2016 WL 111424, at *2-3 (D. Or. Jan. 11, 2016). The point of the deposition, after all, is not to engage in obfuscation or game-playing, but rather to exchange accurate information in a cost-effective and efficient manner. If parties cannot agree, the Court must balance their interests with the overall goal of enabling the exchange of information without unduly burdening the corporation, especially if the discovery falls in the category of discovery about discovery. Factors the Court should consider in determining whether a Rule 30(b)(6) deposition notice satisfies the rule's specificity requirement include: (1) the nature of the topics; (2) whether the descriptions of the topics include examples of questions and clarifying information such as references to specific named policies, documents, incidents, and the like; and (3) whether a reasonable person reading the notice would understand how to prepare for the deposition. Analysis of the "reasonably available" standard in the data systems context also requires the Court to consider a number of factors, including: (1) the number of data systems identified in the notice; (2) the level of specificity required about each system; (3) the number of witnesses needed to respond to the topics identified in the notice; (4) the costs and burden on the corporate party to adequately prepare the witnesses; and (5) the availability of other methods to obtain all or some of the information sought that might be less burdensome or costly, particularly in light of the number of topics and witnesses required by the notice.

<u>**DISCUSSION**</u>

**A.    *Category Two: Technical Questions Concerning Databases***

The Court first addresses the parties' disputes about the parameters of the deposition of witnesses who will testify about technical or back-end aspects of the Housing Connect and Access databases, whether greater specificity is required, and the extent to which the information sought is reasonably available.

**1.    *Rule 26 Considerations***

Plaintiffs must provide an "adequate factual basis" to justify the discovery they seek through the noticed Rule 30(b)(6) depositions because the technical database information sought is collateral to the claims and defenses in this action. Additionally, the Court must closely scrutinize Plaintiffs' request "in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*." *Mortgage Resolution Servicing, LLC,* 2016 WL 3906712, at *7 (internal quotations marks omitted).

Here, Plaintiffs have adequately demonstrated that they require certain collateral discovery in order for their expert to be able to analyze the data produced by the City in this case. The Court recognizes that structured databases, like the ones at issue in this litigation, tend to be:

> highly unique and customized to support a specific task or system owner. Thus, in addition to the context typically required to understand the significance of a traditional document, the ability to fully understand . . . data within a database requires knowledge of data relationships, what the information represents, and how it was generated. Without this information, analyzing databases is akin to seeing a thousand-piece jigsaw puzzle without an illustration that shows the final

completed puzzle.  The jigsaw puzzle can be assembled, but only with great effort
and with low efficiency.[7]

*See Database Principles* at 179.  Plaintiffs made sufficiently clear at oral argument that they

require certain back-end information from the City's Rule 30(b)(6) witnesses in order to

understand the data contained in the Housing Connect and Access databases.

Because Plaintiffs have demonstrated an adequate factual basis justifying "discovery on

discovery," the Court next must consider whether the City has demonstrated good cause for

curtailing this discovery.  *See Johnson*, 2017 WL 3055098, at *3.  The City has represented that

it cannot prepare a sole witness to respond to all of the complex questions concerning the

technical details of its databases.  Accordingly, in order to answer all of Plaintiffs' questions, the

City would bear the burden of preparing multiple witnesses for different days of deposition that

would, in all likelihood, be inefficient and unproductive in any event.  It is possible that the City

might not even have the ability to adequately prepare each of these witnesses in the event of a

question that requires research or consultation with another person to ensure an accurate

answer.  These burdens justify development of a non-traditional procedure to balance the

interests and needs of the parties and satisfy the goal of Federal Rule of Civil Procedure 1 as

well as the proportionality requirement of Federal Rule of Civil Procedure 26(b).

In this regard, the parties have consented, following a discussion with this Court, to a

novel procedure consisting of a "committee" deposition.  Specifically, the City will identify four

witnesses who together possess the breadth of knowledge required to answer Plaintiffs' data

---

[7] "The *database application* may be composed of tens – or hundreds – of individual programs.  The *database storage file* that typically contains the information relevant to a specific legal dispute may be a single file, but more commonly, it is composed of multiple separate data storage files in multiple locations.  Large storage systems may be composed of hundreds of separate data files."  *Database Principles* at 180.

questions.  All four witnesses shall be sworn in by a court reporter at HPD's offices, and the City shall designate a primary speaker to whom all questions will be addressed.  That speaker may, if needed prior to answering a question, consult with the other witnesses "off-the-record" to confirm the accuracy of an answer or to elect to designate a co-witness to provide the answer. The court reporter shall note the identity of the witness who supplies each answer.  The Court emphasizes that it is permitting this experimental process for the Category Two witnesses because the parties have an interest in obtaining and providing truthful and accurate information about back-end technical details of the City's databases and the purpose of the witnesses' consultation is not evasion but ensuring accuracy. [8]  Further, none of these witnesses are fact witnesses and thus credibility is not a concern.  Finally, the Court is of the view that this approach will be the most efficient and least burdensome for the parties.

### 2.    *"Reasonable Particularity"*

Although the multi-witness approach addresses certain of the City's concerns regarding the breadth of and burden imposed by Plaintiffs' Notice, the City still seeks greater specificity with respect to the technical questions to be posed during this deposition in order to minimize the time needed to consult off-the-record and to ensure the City is prepared to answer Plaintiffs' questions.  The City has requested that Plaintiffs send it a list of anticipated deposition questions two weeks prior to the scheduled deposition so that it can adequately prepare its witnesses.

---

[8] The parties agree to follow the normal deposition procedure with respect to the designated Category One witness.  That witness will testify individually, and the time for his deposition will be limited to seven hours.

As discussed above, Rule 30(b)(6)'s "reasonable particularity" requirement necessarily must be enforced more strictly in the context of depositions of data systems witnesses so that the entity responding to the notice can identify the appropriate witnesses and prepare them adequately for highly technical questions.  This heightened particularity requirement not only helps the entity, but also assists the party who served the notice to obtain clear and accurate testimony from the deponents.  Factors the Court should consider in determining whether a Rule 30(b)(6) deposition notice requires greater specificity include (1) the nature of the topics; (2) whether the descriptions of the topics include examples of questions and clarifying information such as references to specific named policies, documents, incidents, and the like; and (3) whether a reasonable person reading the notice would understand how to prepare for the deposition.

Turning to the topics Plaintiffs list in their Notice, it is apparent that they have not described the matters for examination with reasonable particularity.  Plaintiffs seek testimony concerning, *inter alia*, (1) the existence of any written documentation of relevant databases or other documents or data compilations, whether in the form of schema, data "dictionaries," field and field-value definitions or explanations, table definitions or explanations, or otherwise; (2) explanation of the nature, purposes, and uses of such schema, data "dictionaries," or similar documentation as may exist; (3) explanation of the nature, purposes, and uses of code, fields, field-values, and tables used in and in connection with relevant documents, including databases or data compilations; and (4) relationships between and among data in the databases or data compilations, including the relationships between and among tables and the queries, code, or other means used to generate tables.

The technical nature of Plaintiffs' deposition topics weighs toward a need for greater specificity; yet, Plaintiffs' descriptions essentially summarize what would be asked of *any* data systems witness in order for the requesting party to understand the data in a given database. These generic descriptions are insufficient to adequately apprise the City of the specific types of questions for which it will need to prepare its witnesses. Presumably, Plaintiffs' expert has reviewed the data produced by the City in this case and has specific questions that can be shared with the City in advance of a Rule 30(b)(6) deposition. As the City has noted, "[t]here are a large number of fields in the Housing Connect database, thus even identifying the fields and tables which will be generally be [sic] the subject of the questions would help Defendant prepare for the deposition." (Defendant's Letter Reply, dated Jan. 30, 2018, at 2.) Additionally, "[s]ample questions would also be helpful, but not in place of providing some actual technical questions." (*Id.*)

Plaintiffs are thus directed to prepare a list of specific questions they wish to ask about the Housing Connect and Access databases during the deposition. When preparing their questions, Plaintiffs should consider the degree of particularity they hope to receive in return through the data systems witnesses' deposition testimony. Plaintiffs shall provide the City with its list of questions two weeks prior to the deposition. The City shall not object to follow-up and/or clarifying questions asked by Plaintiffs in light of the witnesses' testimony. In other words, Plaintiffs are not restricted to asking only the questions contained in the list provided to the City in advance of the deposition, but rather are limited to the specific topics delineated in their Notice as further clarified by the list of questions. The parties shall cooperate to ensure that Plaintiffs have the information needed to analyze the data produced.

To the extent the Notice suggests that Plaintiffs may have questions about changes to the databases outside the period covered by the data produced, the Notice is overbroad. The Court has limited the time period for production of data so that expert analysis can occur based on a discrete set of data. If the Court were to permit ongoing supplements of data and questions concerning the same, the parties would never be able to complete data discovery and analysis given the dynamic nature of database and software updates. Thus, Plaintiffs shall restrict their technical questions to the time period spanned by the data produced.

### 3. Information "Known Or Reasonably Available"

While Plaintiffs are charged with describing the matters for examination with reasonable particularity, the City has a corresponding obligation to designate witnesses who will "testify about information known or reasonably available" to the City. Fed. R. Civ. P. 30(b)(6). Upon receiving Plaintiffs' list of deposition topics, the City undoubtedly will prepare its witnesses using information already known to the City. A closer question is what information is "reasonably available" such that the City has an obligation to seek out information it does not yet have. As discussed above, interpretation of "reasonably available" in the context of data systems witnesses requires the Court to balance a number of factors including: (1) the number of data systems identified in the notice; (2) the level of specificity required about each system; (3) the number of witnesses needed to respond to the topics identified in the notice; (4) the costs and burden on the corporate party to adequately prepare the witnesses; and (5) the availability of other methods to obtain all or some of the information sought that might be less burdensome or costly, particularly in light of the number of topics and witnesses required by the notice.

Plaintiffs' Notice identifies by name two databases: "Housing Connect" and "Access."

The City has represented that in order to provide testimony concerning these two databases

alone, it will need to prepare four witnesses from HPD.  Given the substantial burden of having

to prepare four witnesses – along with at least one or two additional witnesses to address

Plaintiffs' "non-technical" categories of information in separate Rule 30(b)(6) depositions – the

City will not be required to gather information about databases beyond Housing Connect and

Access or answer questions about other databases.  Additionally, the City's witnesses will not

be required to respond to deposition questions concerning information analyzed by HDC

because this extends beyond what the "reasonably available" standard requires given that HDC

is an independent entity.  Similarly, the City's witnesses will not be required to testify about

uses of the data outside of the affordable housing lottery process and application of the

Community Preference Policy.

### 4.  Remaining Issues Concerning Procedure For "Committee" Deposition

The parties dispute how much time should be allotted for the committee deposition.

Plaintiffs suggest they should be permitted an initial 12 hours of on-the-record testimony,[9]

after which they may seek additional time (up to 28 hours – *i.e.*, seven hours multiplied by four

witnesses) depending upon "how much headway [was] made."  (Plaintiffs' Letter Response,

dated Jan. 30, 2018, at 1.)  The City proposes a maximum of 9 hours of on-the-record

deposition testimony.  This Court holds that the committee deposition will be limited to 12

---

[9] The phrase "on-the-record testimony" as used herein is intended to distinguish the deponents' actual testimony from their off-the-record consultations (permitted as part of the experimental committee deposition process), which will not count against the time allotted for the Rule 30(b)(6) deposition.

hours of on-the-record testimony over the course of no more than two days.[10] This amount of

time will allow for at least one hour of off-the-record consultation time and recognizes that this

Court's direction to Plaintiffs to provide more specific questions should limit the need for off-

the-record consultation. This time limit also acknowledges the reality that, while Plaintiffs

require complete answers to complex questions, the discovery sought still is collateral to the

litigation and must not be permitted to proceed *ad infinitum*. *See Mortgage Resolution

Servicing, LLC,* 2016 WL 3906712, at *7. It also takes into account the substantial time spent by

the City providing information on an informal basis to Plaintiffs about the data, which should

have clarified many questions Plaintiffs had.

The parties disagree as to whether Plaintiffs should be permitted, after the Rule 30(b)(6)

deposition, to serve the City with requests to admit and interrogatories "relating to the

technical data elements" of the deposition. (*See* Plaintiffs' Letter Response, at 1-2.) The City

objects on the basis that "[s]uch requests would be duplicative of the 30(b)(6) deposition,

which will bind Defendant to its answers on these technical issues." (Defendant's Letter Reply,

at 1-2.) The Court agrees with the City but only insofar as such written discovery is likely to be

unnecessary in light of the informal exchange of information and deposition. Plaintiffs have

chosen the route of a Rule 30(b)(6) deposition to obtain information about the databases and

---

[10] The Court recognizes that courts typically permit seven hours per designated Rule 30(b)(6) witness. *See, e.g.*, *Patterson v. N. Cent. Tel. Coop. Corp.*, No. 11-cv-0115, 2013 WL 5236645, at *4 (M.D. Tenn. Sept. 17, 2013). However, in this case, the "committee" of witnesses will be testifying as one, and the Court has discretion to limit discovery. *See, e.g., In Re Rembrandt Techs.*, No. 09-cv-00691 (WDM) (KLM), 2009 WL 1258761, at *14 (D. Colo. May 4, 2009) ("A blanket rule permitting a seven-hour deposition of each designated [Rule 30(b)(6)] deponent is unfair (because it rewards broader deposition notices and penalizes corporate defendants who regularly maintain business information in silos and who therefore must either designate multiple individuals to respond or spend time, energy, money and other resources preparing a single individual to respond) and unduly burdensome (because of the manifest increased cost and disruption of preparing more than one person to respond to a deposition notice)."); *Mortgage Resolution Servicing, LLC,* 2016 WL 3906712, at *3. In the Court's view, 12 hours is more than sufficient time.

will not be permitted to propound further written discovery on data and database questions absent leave from this Court.  Accordingly, should Plaintiffs still wish to serve the City with requests to admit or interrogatories concerning data issues, they shall first submit an application to the Court explaining why such discovery is necessary and why the information already provided formally and informally was insufficient to address their data-related questions.

Finally, Plaintiffs propose that the two consecutive days allotted for the committee deposition be scheduled between March 1 and 15, 2018.  The City proposes that the deposition be scheduled between March 8 and 22, 2018.  Accordingly, the Court directs the parties to confer and select two consecutive dates between March 8 and 15, 2018 on which to hold the committee deposition.

### B.    *Category Three: Policies Underlying The City's Data Collection And Analysis*

In addition to seeking technical information concerning the data produced in this case, Plaintiffs seek information about *why* the City and/or developers of affordable housing units collect, maintain, organize, analyze, query, or use data concerning (1) any persons who express interest in, who register to get information about or to prepare to apply for, who request information about, or who apply for any affordable housing opportunities in New York City; and (2) Tenant or owner selection in connection with any affordable housing development in New York City, including all steps involved in a lottery or other selection procedure, and including the tracking or documentation of lottery outcomes, and including all types of preferences tracked or documented.  Additionally, Plaintiffs seek information as to why the City and/or developers use data "to comply with the rules applicable to lotteries, including rules regarding the

sequencing of opening and evaluating applicants, and rules regarding the treatment of different preferences in relation to one another."  These topics comprise the category of information to which the City objects and for which the City now seeks a protective order.

### 1.    Rule 26 Considerations

The Court first addresses relevance.  Why the City collects or does not collect data is irrelevant to the core issues in the case – whether the Community Preference Policy has a disparate impact on minorities who apply for affordable housing through the lotteries and whether the City acted with discriminatory intent in maintaining the policy.  The same is true as to why the City creates certain reports and not others, and why the City conducts certain analyses and not others.  The reasons certain data were or were not collected is beyond what is necessary or reasonable to seek from the City in light of the core issues in the case and the purpose of the data depositions.  The fact of the matter is that whatever data exists exists, and all Plaintiffs truly need is to understand the data, including where and how it is collected, what various abbreviations and fields represent, its reliability, and how it is used in housing lotteries sufficient to enable Plaintiffs' expert to understand it.  Likewise, whatever reporting capabilities the two databases have and whatever analyses are done in the regular administration of the Community Preference Policy are what they are.  Plaintiffs, of course, can ascertain the purpose of a report or regularly conducted analysis to the extent needed to understand the lottery process and how the Community Preference Policy is administered, but other policy-related "why" questions are irrelevant.

Plaintiffs have argued that the "why" questions are needed to understand the data and might have a bearing on intentional discrimination.  The Court does not agree.  Moreover, even

if there were some remote relevance, these policy-related questions concerning data are disproportionate to the needs of the case given all of the other discovery that has been conducted, including depositions of fact witnesses, email, and other paper discovery. Thus, Plaintiffs shall restrict their questions to learning the purpose or use of data related to the Community Preference Policy and administration of the housing lotteries.

### 2. *"Reasonable Particularity"*

The restrictions on the deposition questions noted above do not settle all issues with respect to Category Three topics because the Court will permit questions about the purpose of certain data and analyses. However, to the extent Plaintiffs wish to learn the City's purpose for using data in connection with implementing or evaluating the Community Preference Policy, Plaintiffs' proposed deposition topics need to be narrowly tailored to that end.

In this regard, the City asserts that Plaintiffs' Notice is overbroad insofar as it fails to define "affordable housing." Plaintiffs' listed topics encompass, among other things, rent regulation and housing programs having nothing to do with this litigation. The Court has considered both Plaintiffs' and Defendant's suggested definitions of affordable housing and hereby adopts the City's proposed definition because it is tailored to cover only the affordable housing at issue in this case. Thus, the definition will be: "housing units for income-eligible households that are located in projects subject to the Marketing Guidelines."[11] (*See* Doc. No. 218, Appendix B, at 2.)

To further facilitate efficient depositions, the Court hereby directs Plaintiffs to provide the City with more specific topics consistent with the above to enable the City to identify and

---

[11] The parties also shall use this definition for Category One and Two witnesses.

prepare Category Three witnesses. Plaintiffs should provide examples of questions and clarifying information, incorporating the City's definition of "affordable housing," and omitting (1) any inquiry into the policies of HDC that do not also pertain to HPD; and (2) any inquiry that does not concern the lottery process for affordable housing and the operation of the Community Preference Policy.

### C. Location For Depositions

The final issue the Court addresses is the location for the depositions of Category One and Three witnesses. As a general rule, "[t]he party noticing the deposition usually has the right to choose the location." *See* 7 Moore's Federal Practice § 30.20 [1] [b] [ii]; Fed. R. Civ. P. 30(b)(1). The Court also notes that "[c]orporate defendants are frequently [but not always] deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all parties and in the general interests of judicial economy." *Sugarhill Records Ltd. v. Motown Record Corp.,* 105 F.R.D. 166, 171 (S.D.N.Y. Mar. 19, 1985). The place to conduct the deposition of a corporate defendant and its agents, however, depends upon an analysis of three factors: cost, convenience, and litigation efficiency. *See Gulf Union Ins. Co. of Saudi Arabia v. M/V Lacerta,* No. 91-cv-2814 (PKL), 1992 WL 51532, at *5 (S.D.N.Y. Mar. 9, 1992); *Zurich Ins. Co. v. Essex Crane Rental Corp.,* No. 90-cv-2263 (SWK), 1991 WL 12133, at *2–3 (S.D.N.Y. Jan. 21, 1991); *Mill–Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547, 550– 51 (S.D.N.Y. 1989). Courts retain substantial discretion to designate the site of a deposition, and the presumption that the plaintiff chooses the situs is merely a decisional rule "that facilitates determination when other relevant factors do not favor one side over the other." *Mill–Run Tours,* 124 F.R.D. at 550; *see also Zurich Ins. Co.,* 1991 WL 12133, at *2 ("the

presumption is not a strong one and operates primarily when other factors do not favor any particular site for depositions").

In *Buzzeo v. Board of Education* the court held that the general "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure – as shown through an analysis of cost, convenience, and litigation efficiency – is the appropriate standard under which to evaluate the situs of a corporate deposition when all the parties reside in the same forum district. *Buzzeo v. Bd. of Educ.,* 178 F.R.D. 390, 392-93 (E.D.N.Y. 1998). Noting that the relative burden to the defendant of producing multiple witnesses at the plaintiff's counsel's office was greater than the burden on plaintiff of having just his attorney travel to the school district; the possibility that witnesses might need to reference records on site of the corporate defendant; and that the plaintiff did not argue that it would incur greater expenses in deposing the corporate witnesses at their place of business, the court found that the factors balanced in favor of holding the depositions at the defendant school district. *Buzzeo,* 178 F.R.D. at 393.

Here the City argues it is critical that its designated witnesses be readily available and have access to the City's computer platforms in the event the deposition needs to be interrupted or issues need to be attended to during the lunch break. The Court also notes that the City has easier access to information, if needed, to respond to Plaintiffs' deposition questions if the depositions are held at HPD's offices. Plaintiffs have not explained why they would be inconvenienced by holding the depositions at HPD's offices, and Plaintiffs would incur no additional costs in going to HPD's offices. Therefore, the depositions will take place at HPD's offices.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion to compel is GRANTED in part and DENIED

in part, and the City's motion for a protective order is GRANTED.

SO ORDERED.

Dated: February 12, 2018
        New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge