USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/10/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JANELL WINFIELD, TRACEY STEWART,
and SHAUNA NOEL,

                              Plaintiffs,

           -against-

CITY OF NEW YORK,

                              Defendant.
-------------------------------------------------------------------X

**OPINION AND ORDER**

**15-cv-05236 (LTS) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      At a case management conference on April 9, 2018, Plaintiffs Janell Winfield, Tracey Stewart, and Shauna Noel raised a concern with the quantity of documents on Defendant New York City's privilege log and indicated they wished to challenge the privilege designations. The Court directed the parties to meet and confer about Plaintiffs' concerns. At a case management conference on April 20, 2018, Plaintiffs requested that the Court order Defendant to allow them a "quick peek" at all of the approximately 3,300 documents listed on Defendant's privilege log for purposes of allowing them to determine whether they would challenge the privilege designations based on their review of the privileged documents and (most likely) narrowing the scope of documents at issue in their anticipated motion. The City opposes Plaintiffs' request. The Court requested briefing and heard from the parties on the proposed "quick peek" procedure again at a May 7, 2018 case management conference. For the reasons discussed below, Plaintiffs' request for a compelled "quick peek" procedure is DENIED.

1

**BACKGROUND**

In June 2017, the City moved for return of a privileged document that it had inadvertently produced during discovery pursuant to agreed-upon procedures set forth in the parties' Stipulation of Confidentiality and this Court's Protective Order (the "Clawback Demand"). (*See* Doc. No. 82 for Protective Order.) This led to a broader and ongoing dialogue between the parties about the City's privilege designations. Plaintiffs have long contended that the City has over-designated documents as privileged. The City disputes this, but admitted that its initial privilege review was difficult given a lack of clarity as to what documents were subject to the deliberative process privilege, in particular.

On July 21, 2017, in response to the first concern raised, the Court directed Plaintiffs to identify a subset of 80 documents from the City's privilege log that the City had withheld on the basis of the deliberative process privilege. (Doc. No. 167 at 74:16-18.) The Court further ruled that the City would have an opportunity to re-review the 80-document subset identified by Plaintiffs and determine whether it intended to maintain its privilege claim as to each document.

Following the City's review of the sample set of 80 documents, the City advised that it maintained a claim of privilege over only 27 documents and withdrew its privilege designation as to 51 documents and produced them. This Court subsequently ordered the City to submit all 80 documents to this Court for *in camera* review for purposes of assessing the validity of the initial and remaining privilege designations.

Plaintiffs also contested certain of the City's directions not to answer at the depositions of Vicki Been, former Commissioner of the New York City Department of Housing Preservation

2

and Development (HPD), and Carl Weisbrod, former Director of the New York City Department of City Planning, on the basis of attorney-client, work product, and/or deliberative process privilege. On September 1, 2017, Plaintiffs submitted a letter to the Court seeking privilege rulings on 20 questions to which the City's witnesses were directed not to respond – specifically, four questions posed to Mr. Weisbrod and 16 questions directed to Ms. Been. The City subsequently withdrew its privilege objections as to the four questions directed to Mr. Weisbrod, as well as to Been Deposition Question Nos. 15 and 16, and provided Plaintiffs with responses to these questions in declarations.

On February 1, 2018, this Court issued a lengthy ruling granting the City's Clawback Demand and granting in part and denying in part Plaintiffs' motion to compel production of certain documents from the sample set of documents designated as privileged by the City on its privilege log. The Court also granted in part Plaintiffs' motion to compel answers to questions posed to Ms. Been during her deposition. Plaintiffs objected to this Court's February 1, 2018 privilege rulings, and their objection is now pending before the Honorable Laura Taylor Swain.

This Court directed the City to re-review its privilege designations in light of this Court's February 1, 2018 opinion.[1] Based on this review, the City de-designated certain documents as privileged and produced them. Subsequently, in connection with the review of a particular email exchange between Ms. Been and Mayor De Blasio, the City identified a few additional

---

[1] Relatedly, Plaintiffs have asserted that the City has over-designated certain electronic documents ("ESI") as non-responsive during its review and insufficiently trained the software it is using to assist with the review. Through a meet-and-confer process, and after several conferences with this Court on the matter, the City agreed to supplement its TAR training and produce additional nonprivileged responsive documents, if any, that are located in the process.

documents from the chain that were marked as privileged that it is now de-designating and producing. (*See* Doc. No. 362).

At an April 9, 2018 case management conference, Plaintiffs raised a concern with the volume of documents designated by the City as privileged. There are approximately 3,300 documents designated as privileged on the City's log. Designations include attorney-client, work product, deliberative process, and legislative privileges. Some documents have more than one designation. The log is consistent with Local Rule 26.2 but less than ideal for use in evaluating a claim of privilege, as is true with most privilege logs. Nevertheless, Plaintiffs were able to identify a number of documents from the City's Planning Department that they believe may have been improperly designated as privileged. They also pointed to several instances where "final" talking points were designated (they contend improperly) as privileged. They also noted that 80% of the Planning Department's documents are being withheld based on deliberative process privilege, even though the Planning Department is not involved in deliberations over the Community Preference Policy at issue in this case. Plaintiffs also raised concerns about directions not to answer on privilege grounds at certain depositions. The Court directed the parties to meet and confer concerning a proposal to address Plaintiffs' concerns.

At an April 20, 2018 case management conference, Plaintiffs proposed that the Court order the City to turn over all 3,300 documents designated as privileged so they could take a "quick peek" at them. They contend that this procedure will be fast and efficient and promise to review the documents within several weeks. The City, which has already spent significant time reviewing its documents for privilege prior to producing them, vigorously objects to a Court-mandated "quick peek" procedure. The Court ordered briefing on the proposal in

advance of a May 7, 2018 case management conference.  The Court addresses the reasons for its rejection of Plaintiffs' proposal below.

## **DISCUSSION**

### *I. Scope Of Discovery Under The Federal Rules Of Civil Procedure And Burden Of Demonstrating Privilege*

This Court begins its analysis of the appropriateness of Court-mandated disclosure of documents on a privilege log prior to a specific challenge to the privilege designation with Federal Rule of Civil Procedure ("Rule") 26(b).  Under Rule 26(b), "[p]arties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Thus, when describing the scope of discovery, the Federal Rules of Civil Procedure explicitly exclude privileged information from the category of information that is discoverable.

Nevertheless, a party seeking discovery may challenge a privilege designation.  When a party withholds information otherwise discoverable on the ground of privilege or work product protection, Rule 26(b)(5) states that such party must "(i) expressly make the claim [of privilege]; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  Local Civil Rule 26.2 encourages "[e]fficient means of providing information regarding claims of privilege"

and agreements on "measures that further this end." S.D.N.Y. Civ. R. 26.2. The Local Rule explicitly states: "[W]hen asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category. A party receiving a privilege log that groups documents or otherwise departs from a document-by-document or communication-by-communication listing may not object solely on that basis, but may object if the substantive information required by this rule has not been provided in a comprehensible form." *Id.* Ultimately, the burden is on the party asserting privilege to demonstrate privilege. *Von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987).

When faced with a challenge to documents listed on a privilege log, courts typically review the documents *in camera* and may determine after such review that a document is not privileged, that the privilege is waived, or that the document otherwise must be produced pursuant to another applicable legal exception to privilege.

## II.  *Recent Amendments To The Federal Rules Of Civil Procedure And Rules Of Evidence To Facilitate Production Of ESI And Protect Privilege*

As part of the 2006 amendments to the Federal Rules of Civil Procedure (effective December 1, 2006), and in response to increasing concerns about the risk of privilege waiver in connection with the production of ESI in particular, Rule 26(f), which requires the parties to discuss a discovery plan at the outset of a case, was amended "to provide that the parties should discuss any issues relating to assertions of privilege . . . including *whether the parties can facilitate discovery by agreeing on procedures* for asserting claims of privilege or protection after production and whether to ask the court to enter an order that includes any agreement the parties reach." Fed. R. Civ. P. 26 advisory committee's note to 2006 Amendment; *see also* Fed. R. Civ. P. 26(f) (emphasis added). Rule 16(b), in turn, was modified so that the Court could

6

include in a scheduling order "any *agreements the parties reach* for asserting claims of privilege . . . after information is produced, including agreements reached under Federal Rule of Evidence 502." Fed. R. Civ. P. 16(b)(3)(B)(iv) (emphasis added).

In 2008, Federal Rule of Evidence 502 also was amended (effective September 19, 2008) for two main purposes: (1) to resolve disputes involving inadvertent disclosure of information protected by the attorney-client or work product privilege and subject matter waiver due to the disclosure; and (2) to provide parties with a "uniform set of standards" pursuant to which they can determine the consequences of a disclosure of information protected by the attorney-client or work product privilege. Fed. R. Evid. 502 advisory committee's note (revised 11/28/2007). Under the amended evidence rule, a disclosure in a federal proceeding of information protected by the attorney-client or work product privilege does not operate as a waiver if the disclosure was inadvertent, the producing party took reasonable steps to prevent disclosure, and the producing party promptly took reasonable steps to rectify the error, including following Rule 26(b)(5)(B).[2] Fed. R. Evid. 502(b). Rule 26(b)(5)(B) directs that if a party produces privileged information during discovery, it may notify the receiving party, who must promptly return, sequester, or destroy the information and must not use or disclose the information until the claim, including an assertion of privilege waiver, is resolved. *See* Fed. R. Civ. P. 26(b)(5)(B). Federal Rule of Evidence 502 also empower a federal court to enter an order that "privilege . . . is not waived by disclosure connected with the litigation pending before the court," and, if such

---

[2] Federal Rule of Evidence 502(a) provides that a voluntary disclosure of information protected by the attorney-client or work product privilege, if a waiver, generally results in waiver only of the document disclosed and not a waiver of all privileged documents and information concerning the subject matter of the disclosed document. *See* Fed. R. Evid. 502(a); Fed. R. Evid. 502 advisory committee's note (revised 11/28/2007).

7

an order is entered, the disclosure will not constitute a waiver in any other federal or state proceeding. Fed. R. Evid. 502(d).

The Advisory Committee Notes discussing Federal Rule of Evidence 502(d) recognize the high costs of electronic discovery, and the rule contemplates enforcement of voluntary agreements reached by parties in their initial meeting pursuant to Rule 26(f) such as "claw-back" and "quick peek" arrangements as a way "to avoid the excessive costs of pre-production [privilege] review." Fed. R. Evid. 502 advisory committee's note (revised 11/28/2007); *see also* Fed. R. Evid. 502(e) (parties can agree to limit the effect of disclosure of privileged information). According to the Advisory Committee Notes, the new Federal Rule of Evidence 502(d) allows the parties to "plan in advance to limit the prohibitive costs of privilege" review. Fed. R. Evid. 502 advisory committee's note (revised 11/28/2007). The rule incentivizes parties to voluntarily agree to procedures that will alleviate the burdens of pre-production privilege reviews by offering protection from waiver of privilege to the producing party. "Rule 502(d) does not authorize a court to require parties to engage in 'quick peek' and 'make available' productions and should not be used directly or indirectly to do so." The Sedona Conference, *The Sedona Conference Commentary on Protection of Privileged ESI*, 17 Sedona Conf. J. 1, 137 (2016).

Importantly, amended Federal Rule of Evidence 502 "governs only certain waivers by disclosure." Fed. R. Evid. 502 advisory committee's note (revised 11/28/2007). It does not alter federal or state law on privilege nor "supplant applicable waiver doctrine generally." *Id.* It likewise does not address privileges other than attorney-client and work product. *See* Fed. R. Evid. 502(g).

### III. *Case Law Concerning Compelled Disclosure Of Privileged Documents*

The Second Circuit has held that "compelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, is contrary to well established precedent." *In re Dow Corning Corp.*, 261 F.3d 280, 284 (2d Cir. 2001). The rationale for this rule is that such an order, even if it included protections against disclosure to non-parties, is an "inadequate surrogate for the privilege." *Id.*; *see also Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 160-162, 166 (2d Cir. 1992) (issuing a *writ of mandamus* vacating a district court order directing the producing party to disclose, on an attorneys'-eyes-only basis, privileged documents so that the opposing counsel could determine which documents it agreed were privileged and which would be subject to motion practice).

Plaintiffs contend that this case law predates new Federal Rule of Evidence 502(d) and therefore is non-binding. They also point to an October 2017 decision from the United States Court of Federal Claims, *Fairholme Funds, Inc. v. United States*, 134 Fed. Cl. 680 (2017), as well as to *Summerville v. Moran*, No. 14-cv-02099 (WTL) (TAB), 2016 WL 233627 (S.D. Ind. Jan. 20, 2016) and *Good v. Am. Water Works Co.*, No. 14-cv-01374, 2014 WL 5486827 (S.D.W. Va. Oct. 29, 2014), for the proposition that the Court does have the power to mandate disclosure of privileged information pursuant to Federal Rule of Evidence 502(d).

#### A. The *Fairholme* Decision

*Fairholme Funds* involved a claim by shareholders of non-cumulative preferred stock issued by the Federal National Mortgage Association (Fannie Mae) and Federal Home Loan Mortgage Corporation (Freddie Mac) contending that denial of dividend payments constituted a taking in violation of their rights under the Fifth Amendment to the U.S. Constitution. Plaintiffs moved

9

to compel production of about 1,500 documents withheld from production by the government on the grounds of deliberative process and bank examination privileges. Without conducting oral argument and before conducting an *in camera* review of the documents, the court ordered the government to turn over the documents to plaintiffs for a "quick peek" so that plaintiffs could identify those documents on the privilege log that they believed were relevant and not privileged. It further ordered the government to meet and confer with plaintiffs concerning the documents identified to resolve differences "without further court involvement." *Fairholme Funds*, 134 Fed. Cl. at 688-689. The court allowed for a renewed motion to compel if the parties could not resolve differences on documents that were relevant and not privileged.

The court noted that the parties' stipulation of confidentiality and protective order contemplated a "claw back" procedure that would be governed by Federal Rule of Evidence 502(d). Although there was no claim that the government failed to satisfy its discovery obligations, the court noted that the government's production of documents was "piecemeal." *Id.* at 686. Thus, in an effort to "facilitate speedy and efficient conclusion of jurisdictional discovery," the court ordered production of the privileged documents, subject to Federal Rule of Evidence 502(d), over the government's objection. *Id.* It reasoned that it had broad power to fashion any discovery order it deemed appropriate, including the mandatory "quick peek" order. *Id.* at 687. It also reasoned that, absent the "quick peek" order, it would be faced with a motion to review *in camera* all 1,500 documents on the government's privilege log. Therefore, in light of the court's heavy caseload and limited resources, the court viewed the "quick peek" order as "a much more viable and attractive option." *Id.* Although noting that the purpose of Federal Rule of Evidence 502(d) was to address two specific issues (noted above), it reasoned

10

that Rule 502(d) allows a court to provide protection against waiver in other federal and state proceedings and therefore can be used to compel a "quick peek" procedure on theory that the party whose privilege is at issue will be protected from waiver. *Id.*

This Court respectfully disagrees with the court in *Fairholme* for a number of reasons. First, while it is true that the trial court has broad discretion to fashion discovery orders, it nevertheless must do so in accordance with the Federal Rules of Civil Procedure. As a general matter, Rule 26(b)(1) limits the scope of discoverable information to *nonprivileged* information. Fed. R. Civ. P. 26(b)(1); 6 Moore's Federal Practice, § 26.47[1][a] (recognizing that discovery is not permitted as to privileged matters). Therefore, information that is properly protected by a privilege is presumptively not discoverable absent a waiver, voluntary disclosure, or other legally recognized exception.

Second, contrary to what the court in *Fairholme* apparently concluded, the Federal Rules of Evidence do not abrogate common law privileges. Rather, Federal Rule of Evidence 501 prescribes that federal common law regarding privileges applies to federal question cases and state common law regarding privileges applies in diversity cases. Fed. R. Evid. 501. The Advisory Committee Notes to Federal Rule of Evidence 501 state that the rule "left the law of privileges in its present state and further provided that privileges shall continue to be developed by the courts of the United States under a uniform standard applicable both in civil and criminal cases." Fed. R. Evid. 501 advisory committee's note to 1974 Enactment. Federal Rule of Evidence 502(d), on which the court in *Fairholme* relied, authorizes a court to issue an order *protecting* privilege – it does not create an exception to the law of privilege or authorize a court to compel disclosure of privileged information in the absence of a legally recognized

11

exception to the law of privilege.  And, other rules contemplate only a voluntary agreement between parties for a "quick peek" procedure.  Fed. R. Civ. P. 26(f), 16(b)(3)(B)(iv).

Moreover, in authorizing the U.S. Supreme Court to prescribe general rules of practice and procedure and rules of evidence, the Rules Enabling Act explicitly prohibits such rules from abridging, enlarging, or modifying any substantive right.  28 U.S.C. § 2072; *see also* Fed. R. Evid. 501; Fed. R. Evid. 501 advisory committee's note to 1974 Enactment; H. Rep. No. 93-650, at 9 (1973) ("The rationale underlying the proviso is that federal law should not supersede that of the States in substantive areas such as privilege absent a compelling reason.").  It is well-established that the attorney-client privilege is a substantive right.  *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 555 n.2 (2d Cir. 1967) ("Rules of privilege are not mere 'housekeeping' rules. . . . Such rules 'affect people's conduct at the stage of primary private activity and should therefore be classified as substantive or quasi-substantive.'") (quoting *Massachusetts Mut. Life Ins. Co. v. Brei*, 311 F.2d 463, 466 (2d Cir. 1962); *see also* Fed. R. Evid. 501 advisory committee's note to 1974 Enactment (recognizing various non-constitutional privileges which federal courts must recognize including lawyer-client and secrets of state and other official information).  The legislative and deliberative process privileges likewise are substantive rights.  *See* U.S. Const. art. I, § 6, cl. 1); N.Y. Const. art. III, § 11; *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.,* 446 U.S. 719, 732-33 (1980) (state legislators, like Members of Congress, are entitled to absolute "immunity from liability for their legislative acts" as a matter of federal common law); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501-503 (1975); *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951); *United States v. Biaggi*, 853 F.2d 89, 102-103 (2d Cir. 1988); *Marisol A. v. Giuliani*, No. 95-cv-10533 (RJW), 1998 WL 132810, at *6 (S.D.N.Y.

Mar. 23, 1998) (quoting *Hopkins v. H.U.D.*, 929 F.2d 81, 84 (2d Cir. 1991)); *People v. Ohrenstein*, 77 N.Y.2d 38, 53-54 (1990) (recognizing that the New York State Constitution "provide[s] at least as much protection as the immunity granted by the [Speech or Debate Clause]"); *see generally Citizens Union of the City of New York v. Attorney Gen. of the State of New York*, No. 16-cv-09592 (RMB) (KHP), 2017 WL 3836057 (S.D.N.Y. Sept. 1, 2017) (discussing legislative and deliberative process privileges). In short, the court is precluded from interpreting the Federal Rules of Civil Procedure and the Federal Rules of Evidence in a manner that infringes on a substantive right, including privilege rights, as such rules may not by statute abridge substantive rights. *See* 28 U.S.C. § 2072.[3]

Unlike the legal privileges discussed above, the work-product privilege is a judicial doctrine developed to protect attorney mental impressions and work in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495 (1947); *Jansson v. Stamford Health, Inc.,* No. 16-cv-260 (CSH), 2018 WL 2095169 (D. Conn. May 7, 2018) (discussing history of work product doctrine) (citing *United States v. Constr. Prod. Research, Inc.,* 73 F.3d 464, 473 (2d Cir. 1996) (referring to work product doctrine as work product privilege)); *see also* Bradley J. Bondi, *No Secrets Allowed: Congress's Treatment and Mistreatment of the Attorney-Client Privilege and the Work-Product Protection in Congressional Investigations and Contempt Proceedings*, 25 J.L. & Pol. 145, 146 (2009) (discussing history of attorney-client privilege and work product doctrine and Congress's authority to compel testimony; work product protection "is primarily a

---

[3] Some commentators have suggested compelled disclosure or mandatory "quick peek" procedures may implicate due process concerns as well. The Sedona Conference, *The Sedona Conference Commentary on Protection of Privileged ESI*, 17 Sedona Conf. J. 1, 137-38 (2016); Martin R. Lueck & Patrick M. Arenz, *Federal Rule of Evidence 502(d) & Compelled Quick Peek Productions*, 10 Sedona Conf. J. 229, 230-31 (2009).

13

procedural right regarding the permissible scope of discovery during a judicial proceeding"). So, in theory, the doctrine could be abrogated by the Federal Rules of Evidence and Federal Rules of Civil Procedure. But, Rule 26 and Federal Rule of Evidence 502(d) recognize and accept the work product doctrine – they do not establish a procedure for compelling disclosure of work product over a party's objection.

Third, the court in *Fairholme* incorrectly held that Federal Rule of Evidence 502(d) allowed it to issue an order providing protection for information protected by the deliberative process and bank examination privileges – the privileges cited by the government in that case for withholding the 1,500 documents. But the rule does not address those privileges; rather, it is directed solely to the attorney-client and work product privileges. *See* Fed. R. Evid. 502(d). This Court is unaware of a rule that would permit it to issue an order that would allow the parties to disclose information protected by the deliberative process and legislative privileges – or any privileges other than attorney-client and work product – and avoid waiver of such privileges in other federal and state proceedings.

Fourth, to the extent the court in *Fairholme* justified its order on the ground that it needed to move discovery along and did not have the time or resources to conduct an *in camera* review, it did so in complete disregard of Federal Rule of Civil Procedure 53, which allows for the appointment of a special master to address pretrial matters "that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). The Advisory Committee Notes to Rule 53 explicitly contemplate appointment of a special master for "reviewing discovery documents for privilege." Fed. R. Civ. P. 53 advisory committee's note to 2003 Amendment. In other words,

14

the rules themselves provide an option for a court faced with a time-intensive *in camera* privilege review that does not involve compelled disclosure to an adversary. For all of the above reasons, this Court does not agree with *Fairholme's* reasoning or reliance on Federal Rule of Evidence 502(d) as the basis for its order.

### B. The Summerville And Good Decisions

Plaintiffs also cite to *Summerville* and *Good* in support of their contention that a court has the power to compel a producing party to disclose privileged documents to its adversary for a "quick peek" over its objection. Neither case is controlling or persuasive, however. In *Summerville*, the court was presented with "inadequate objections and an inadequate privilege log" and thus found that the party withholding documents on the basis of attorney-client privilege, an attorney, had failed to meet his burden that the privilege applied to the documents in question. 2016 WL 233627, at *5. The court also expressed frustration with the parties' conduct in discovery and admonished them to read the Advisory Committee Notes to Federal Rule of Civil Procedure 1 and "recognize their shared responsibility to cooperate and employ the Federal Rules." *Id.* Although the court did indicate it would compel a "quick peek" of 12 of 479 documents on the privilege log if certain conditions were not met, it did so in the context of finding that the party withholding the documents had failed to meet his burden that a privilege applied. Moreover, it did not compel disclosure of all documents on the privilege log – just a portion to facilitate discussion and potentially obviate the need for *in camera* review of the remainder of the documents on the log. *Id.*

*Summerville* is distinguishable on the facts. Unlike in *Summerville*, this Court has reviewed the City's privilege log and finds that it is in conformance with Local Rule 26.2 and

15

certainly was not prepared in bad faith. There are many entries on the log that appear to be valid privilege designations; there are also entries identified by Plaintiffs' counsel where the designation may be inappropriate. Additionally, *Summerville's* contingent "quick peek" procedure was limited and did not entail reliance on Federal Rule of Evidence 502(d), cite any authority for the procedure, or contain any rationale for use of the procedure. As discussed above, this Court does not interpret Rule 502(d) as authorizing a compelled "quick peek" procedure. Thus, this Court respectfully disagrees with the *Summerville* court's procedures for resolving the dispute over the withheld documents to the extent it compelled disclosure of documents that were validly protected by the attorney-client privilege over the objection of the party who possessed the privilege.

The *Good* case involved a dispute between the parties at the outset of discovery concerning the handling of attorney-client and work product information inadvertently disclosed. 2014 WL 5486827, at *1. The defendants wished to conduct some manual privilege review prior to producing ESI. The plaintiffs, who feared delays in the production of information, objected and contended that the protections afforded pursuant to Federal Rule of Evidence 502(d) were sufficient protection for defendants such that a "quick peek" procedure should be used, meaning that there would be no manual review for privilege prior to production of ESI. The Court noted that nothing in Federal Rule of Evidence 502(d) prohibited defendants' proposed approach and adopted defendants' proposed approach based on their representation that they would conduct the manual privilege review quickly. The Court did state that if there were delays in production, the plaintiffs could move for a change to the mandatory "quick peek" procedure they advocated. *Id.* However, the Court did not engage in

any analysis as to whether such a procedure could be compelled or cite the source of its authority to order such a procedure. Thus, *Good* is distinguishable on the facts and not instructive on the law.

### C. *Federal Rule Of Evidence 502(d)*

Finally, contrary to Plaintiffs' suggestion, Federal Rule of Evidence 502(d) did not supersede Second Circuit case law that clearly states a court may not compel disclosure of privileged information absent waiver or other applicable exception. *See In re Dow Corning*, 261 F.3d at 284-85 (criticizing district court for ordering a party to turn over documents protected by work product and attorney-client privileges); *see also United States v. Zolin*, 491 U.S. 554, 572 (1989) (stating court could not require the defendant to turn over attorney-client communications for *in camera* review unless the government could show that the communications fell under the crime-fraud exception to the privilege). As discussed above, the rule explicitly did not abrogate privilege law. Fed. R. Evid. 501.

Controlling precedent, along with the structure and commentary on the Federal Rules of Civil Procedure and Federal Rules of Evidence discussed above, make clear that the court may not run roughshod over a party's assertion of privileges merely to expedite discovery or relieve itself from determining a party's substantive or common law rights. What would be expedient here is simply not right in terms of the resolution of the parties' dispute. Moreover, given that a large number of the documents are being withheld by the City pursuant to the deliberative process privilege, a Rule 502(d) order is of no help. Once these documents are turned over, the privilege will be subject to waiver arguments in other proceedings.

17

## IV. *Procedure For Resolving Dispute Over Privilege Designations*

At the case management conference on May 7, 2018, Plaintiffs' counsel indicated that, absent this Court granting a compelled "quick peek" procedure, they would request *in camera* review of all of the documents being withheld by the City as privileged. The task of reviewing 3,300 documents is enormous and one that this Court cannot complete before the end of fact discovery on July 31, 2018 given other demands in this and other cases. Appointment of a Special Master to conduct the privilege review pursuant to Rule 53 is therefore warranted. The scope of the appointment will be to prepare a report the recommends to the Court (1) documents, identified by privilege log number, that the City has improperly withheld and must produce, and (2) documents, identified by privilege log number, that are partially privileged and that the City must produce in redacted form.

This Court proposes the appointment of the Honorable Frank Maas (Ret.) of JAMS, who recently retired as a Magistrate Judge in this District and is available to conduct a review. In accordance with Rule 53(b)(1), the parties may file a letter regarding their position on the appointment of a Special Master, whether they have identified any conflict-of-interest issues that would preclude appointment of Judge Maas, and suggest other candidates for appointment if they so desire. The parties shall file their letters by no later than May 16, 2018.

Given the costs of a Special Master, Plaintiffs are directed to evaluate whether they can narrow the documents for review so as to reduce the time and thus the costs of the review.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion is DENIED.

**SO ORDERED.**

Dated: May 10, 2018
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge