UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

SHAUNA NOEL and EMMANUELLA
SENAT,

        Plaintiffs,

   -v-                               No.  15 CV 5236-LTS-KHP

CITY OF NEW YORK,

        Defendant.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is an objection (Docket Entry No. 293) (the "Objection"), filed

by Shauna Noel and Emmanuella Senat (collectively "Plaintiffs") pursuant to Federal Rule of

Civil Procedure 72(a), to an opinion and order entered by Magistrate Judge Katharine H. Parker

on February 1, 2018, <u>Winfield v. City of New York</u>, No. 15-cv-05236, 2018 WL 716013 (the

"February 2018 Order"), ruling that the City of New York ("Defendant" or the "City") could

claw back and withhold, in substantial part, on deliberative process privilege grounds a

previously disclosed document (the "Clawback Document"), and upholding Defendant's

deliberative process, attorney-client, legislative and/or work product privilege claims, at least in

part, as to 12 documents and four deposition questions (together with the Clawback Document,

the "Disputed Materials").  After considering carefully the submissions of both parties, the Court

sustains Plaintiffs' objections, in part, sets the February 2018 Order aside insofar as it addresses

the deliberative process privilege and returns the matters to the Magistrate Judge for further

proceedings consistent with this Memorandum Opinion and Order.

Familiarity with the factual context of the underlying case, of which the Court has jurisdiction pursuant to 28 U.S.C. sections 1331 and 1343 and 42 U.S.C. section 3613(a), is presumed.

In the underlying case, Plaintiffs claim Defendant has discriminated against them in violation of the Fair Housing Act, 42 U.S.C. § 3604, and the New York City Human Rights Law, NYC Admin. Code § 8-107, through its Community Preference Policy of allocating "50% of units in affordable housing lotteries to individuals who already reside in the community district where the new affordable housing units are being built." Winfield v. City of New York, No. 15-CV-05236-LTS-KHP, 2017 WL 2880556, at *1 (S.D.N.Y. July 5, 2017), objections overruled, No. 15 CV 5236-LTS-KHP, 2017 WL 5054727 (S.D.N.Y. Nov. 2, 2017).

"During a conference on June 5, 2017, Plaintiffs' counsel handed up . . . several documents that the City had produced in discovery in redacted form, including [the Clawback Document, which is] a presentation Bates-stamped 21052-21089 entitled 'Affirmatively Furthering Fair Housing: A Preliminary Guide to NYC's Submission.' As the title suggests, the presentation is a preliminary overview of the City's prospective submission in response to [the U.S. Department of Housing and Urban Development's ('HUD')] new Affirmatively Furthering Fair Housing ('AFFH') rule which requires HUD program participants, such as New York City, to submit an Assessment of Fair Housing ('AFH') in 2019. Upon reviewing the presentation, counsel for the City indicated that she believed the document should have been withheld in its entirety on privilege grounds and that it had been inadvertently produced." February 2018 Order, 2018 WL 716013, at *2. Plaintiffs argue that the Clawback Document provides circumstantial evidence that the Community Preference Policy is motivated by discriminatory

intent because it contains acknowledgements by Defendant that members of the public opposed unspecified city housing policies. Plaintiffs assert that such opposition is based on a desire to maintain the current racial status quo in certain neighborhoods, and that Defendant implemented the Community Preference Policy as a knowing accommodation of such opposition.

In response to Plaintiffs' repeated assertions that Defendant had over-designated other responsive documents as confidential, the Magistrate Judge directed Defendant, at a July 21, 2017, conference, to identify 80 documents from its privilege log for her further review. Id. at *3. The City responded to the direction by confining its privilege claims to 27 documents. Id.

Plaintiffs deposed Carl Weisbrod, the former Chairman of the City Planning Commission and Director of the New York City Department of City Planning and Vicki Been, the former Commissioner of the New York City Department of Housing Preservation and Development, on July 27, 2017, and August 2, 2017, respectively. Id. at *1, 3. Defendant's counsel asserted the deliberative process privilege and directed Been and Weisbrod not to respond to 20 questions. Id. at *3. By letter dated September 1, 2017 (Docket Entry No. 177), Plaintiffs requested privilege rulings from the court on these 20 questions, and Defendant then withdrew its objections to six of Plaintiffs' questions. Id.

In her February 2018 Order, the Magistrate Judge overruled Plaintiffs' objection to Defendant's privilege assertion as to the Clawback Document and also overruled Plaintiffs' objections to Defendant's privilege claims as to all but 12 of the remaining 27 documents (the objections to four of these 12 documents were sustained only in part). See generally id. Twelve of Defendant's remaining 14 privilege-based objections to Plaintiff's deposition questions were sustained in whole or in part. Id. at *18-21.

Plaintiffs object to the Magistrate Judge's determination that the deliberative process privilege protects 12 of the documents that the court allowed the City to withhold, bearing Bates numbers 56994 and NYCPRIV 00017, 00218, 00242, 00393, 00399, 00548, 00726, 00885, 01023, 01156, and 01648, and the information sought by the deposition questions denominated as Been Nos. 4, 5, 9, and 10.  (Objection ¶¶ (b), (c).)  The February 2018 Order also upheld Defendant's claims of other privilege protections as to several of the documents and deposition questions.

In evaluating Defendant's deliberative process privilege claims, the February 2018 Order rejected Plaintiffs' contention that the privilege is entirely inapplicable when litigation is focused on government decision making, and instead recognized the privilege as a qualified one and engaged in a two-step analysis.  First, to determine whether the Disputed Materials were within the broad scope of potential protection by the privilege, the court examined whether and to what extent the materials for which Defendant had claimed the privilege are both deliberative and pre-decisional.  February 2018 Order, 2018 WL 716013 at *5.

Finding that the Disputed Materials met those threshold criteria, the court next examined whether the privilege claim should be upheld as to each challenged item in the particular circumstances of this case.  Id. at *5-6.  The February 2018 Order acknowledged that some courts in this circuit "have held that deliberative process privilege is per se inapplicable in a case[, such as here,] where the government's decision-making process was itself the subject of the litigation," but adopted the balancing test applied in Rodriguez v. Pataki, 280 F. Supp. 2d 89, 99-101 (S.D.N.Y. 2003), to determine on a document-by-document basis whether the disclosure of the Disputed Materials is warranted, a methodology to which Plaintiffs do not object. February 2018 Order, 2018 WL 716013 at *5-6; (see Pls.' Mem. in Supp. of their Objection to

the February 2018 Order ("Pls.' Mem."), Docket Entry No. 294, 7-34 (analyzing the Rodriguez

factors without objection to their application)). Under the Rodriguez standard, a court, "in

deciding whether and to what extent the [deliberative process] privilege should be honored,"

should weigh such factors as: "(i) the relevance of the evidence sought to be protected; (ii) the

availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; and

(iv) the role of the government in the litigation" against "the possibility of future timidity by

government employees who will be forced to recognize that their secrets are violable," in

"balanc[ing] the extent to which production of the information sought would chill . . .

deliberations concerning . . . important matters . . . against any other factors favoring disclosure."

280 F. Supp. 2d at 100-101 (quoting In re Franklin Nat'l Bank Secs. Litig., 478 F. Supp. 577,

583 (E.D.N.Y. 1979)). "'If consideration of the first four factors leads to the conclusion that

they outweigh the risk addressed by the fifth – possible future timidity – then the demanded

document ought to be disclosed,' despite the claim of privilege." February 2018 Order at *10

(quoting Favors v. Cuomo, 11-CV-5632 (DLI)(RR)(GEL) 2013 WL 11319831 at *11 (E.D.N.Y.

February 8, 2013)). Although Plaintiffs do not object to the use of the Rodriguez construct, they

contend that the Magistrate Judge misapplied the standard. (See Pls.'s Mem. at 7-34.)

   In applying the relevance element of this analysis, the February 2018 Order used a

"heightened standard" in excess of that which would ordinarily apply in a discovery

determination under Federal Rule of Civil Procedure 26(a), finding that, to qualify as relevant in

the deliberative process context, the material must be "central 'to the proper resolution of the

controversy.'" February 2018 Order, 2018 WL 716013 at *10, 18 (citing Five Borough Bicycle

Club v. City of New York, No. 07-CV-2448 (LAK), 2008 WL 4302696, at *1 (S.D.N.Y. Sept.

16, 2008)).

In evaluating the seriousness of the current action, the February 2018 Order

acknowledged that "every federal case is serious" but held that the seriousness of a case in the

deliberative process privilege context turns on the whether the public's interest in the outcome of

the case "favor[s] disclosure or . . . favor[s] . . . protecting the ability of the City officials to

function properly in their roles without the distraction of civil litigation."  February 2018 Order,

2018 WL 716013 at *11 (internal quotation marks and citations omitted).  In the February 2018

Order, the Magistrate Judge found that, although claims of "racial discrimination raise serious

issue[s] of public concern," compelling disclosure of material not relevant to "core issues of this

case—whether the Community Preference Policy was adopted or maintained for discriminatory

motives and/or has a racially disparate impact"—would impermissibly chill Defendant's

deliberations regarding serious housing issues.  Id. at *11, 18.  For this reason, the February 2018

Order concluded that the seriousness factor "weighs against disclosure."[1]  Id. at *11, 18.

In evaluating the availability of other evidence, the February 2018 Order

concluded that the underlying HUD data contained and discussed in the Clawback Document

was already available to Plaintiffs and that "[a]ny remaining privileged material in the

[Clawback Document] is . . . not central to this litigation," and thus found that the availability-of-

other-evidence factor weighed against disclosure.  Id. at *11.  Similarly, the February 2018 Order

found that, because most of the other Disputed Materials did not meet the heightened standard of

relevance, the availability-of-other-evidence factor was neutral with respect to those documents.[2]

---

[1]    The February 2018 Order did not explain its analysis of the Rodriguez factors in connection with the deposition questions as extensively as it addressed its reasoning regarding the documentary evidence.  See 2018 WL 716013 at *19-20.

[2]    The February 2018 Order did, however, conclude that, in addition to not being relevant, drafts of the Inwood NYC Action Plan (NYCPRIV00885) and the East New York Affordable Housing Strategy (NYCPRIV01023) were publicly available in their final form, and that this factor thus weighed against disclosure.  2018 WL 716013 at *18.  The

Id. at \*18.  The February 2018 Order largely upheld Defendant's invocation of the deliberative

process privilege.  The court also ruled on the validity of claims of attorney-client, work product,

and legislative process privileges that were asserted in Defendant's privilege log or put forward

in the context of depositions, upholding many of those claims.  In their objection, Plaintiffs

attack the Magistrate Judge's interpretation and application of the Rodriguez standard in

connection with the deliberative process privilege claims, and also challenge the rulings

upholding other privilege claims on legal and factual grounds.

DISCUSSION

A party may file an objection with a district judge to an order issued by a

magistrate judge within 14 days of service of a copy of that order.  Fed. R. Civ. P. 72(a).  The

district judge shall not disturb the order unless such "order is clearly erroneous or contrary to

law." 28 U.S.C. § 636(b)(1)(A) (LexisNexis 2017).  A ruling is "clearly erroneous where on the

entire evidence, the [district court] is left with the definite and firm conviction that a mistake has

been committed."  Equal Emp't Opportunity Commission v. Teamsters Local 804, No. 04 CV

2409-LTS, 2006 WL 44023, at \*1 (S.D.N.Y. Jan. 9, 2006) (internal quotation marks and

citations omitted).  An order is considered to be "'contrary to law' when it 'fails to apply or

misapplies relevant statutes, case law or rules of procedure.'"  Collens v. City of New York, 222

F.R.D. 249, 251 (S.D.N.Y. 2004) (citation omitted).  However, the fact that "reasonable minds

may differ on the wisdom of granting [a party's] motion is not sufficient to overturn a magistrate

judge's decision."  Edmonds v. Seavey, No. 08 CV 5646-HB, 2009 WL 2150971, at \* 2

---

February 2018 Order also found that the characterizations contained in the
NYCPRIV00726 email chain were unlikely to be available from other sources and that
the availability-of-other-evidence factor favored disclosure in connection with that
document.  Id.

(S.D.N.Y. July 20, 2009) (internal quotation marks and citation omitted). "[M]agistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." Thai Lao Lignite (Thailand) Co. v. Gov. Lao People's Democratic Republic, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013) (internal quotation marks and citations omitted).

### Objections to Deliberative Process Privilege Analysis

The Magistrate Judge's analysis and conclusions concerning Defendant's invocation of the deliberative process privilege are the primary focus of Plaintiffs' objections. Plaintiffs argue, in short, that the February 2018 Order erred in applying a limited definition of "relevance" for purposes of the Rodriguez balancing test, and that the Order's evaluation of each of the other criteria improperly conflated consideration of the importance of the privilege with analysis of other, separate, elements of the balancing test.

The Court respectfully disagrees with the interpretation of the Rodriguez test that underlies the February 2018 Order's careful analysis of the City's deliberative process privilege claims. The February 2018 Order will, accordingly, be set aside insofar as it addresses the deliberative process privilege, and the privilege issues will be returned to the Magistrate Judge for further consideration in light of the discussion that follows.

As noted above, the February 2018 Order treats the relevance element of the Rodriguez test as one that applies a narrow, heightened standard, recognizing only evidence that is "central to the proper resolution of the controversy" as potentially subject to exemption from the protection of the deliberative process privilege. February 2018 Order, 2018 WL 71603 at *10 (internal quotation marks and citations omitted). The Court finds no support for this proposition in the authorities cited. Rather, relevance is defined broadly in the first instance by

Federal Rule of Evidence 401 for all evidentiary and discovery purposes.  Federal Rule of Civil

Procedure 26(b)(1) and applicable privilege doctrines impose restrictions on the scope of

discovery, but not on the basic contours of the universe of relevant information.  While it is true

that, as the district court observed in <u>Five Borough Bicycle Club</u>, "[t]he more important the

presumptively privileged information is to the proper resolution of the controversy, the more

likely the party seeking the discovery is to prevail" in a controversy concerning invocation of the

deliberative process privilege, <u>id.</u>, 2008 WL 4302696 at *1, the <u>Rodriguez</u> test must be applied to

all relevant pre-decisional deliberative material that is sought.  The weight of the relevance factor

in the final balancing analysis will vary with the court's assessment of the degree to which the

evidence tends "to make [a fact that is of consequence in the resolution of the action] more or

less probable than it would be without the evidence."  <u>See</u> Fed. R. Evid. 401.

Each <u>Rodriguez</u> element must nonetheless be analyzed separately in the first

instance.  The February 2018 Order accurately recognizes that Plaintiffs' intentional

discrimination claims focus on the motivations of City policy makers in adopting, and

continuing, the Community Preference Policy.  Evidence specific to that policy, and to

motivations for action or inaction regarding potential changes to that policy, is highly relevant to

Plaintiffs' claims.  On the other hand, while evidence of information available to or considered

by policy makers in connection with City housing policies and practices more generally may

well be relevant to the Community Preference Policy claims within the meaning of Rule 401, the

first <u>Rodriguez</u> factor carries less weight when the evidence sought does not pertain directly to

the specific policy as to which claims have been asserted.

The second factor – availability of other evidence – must be considered for each

item of Disputed Material that is relevant, wherever that material falls on the spectrum of

relevance.  The depth of inquiry as to availability may, logically, vary with the degree of relevance.[3]

The third factor – seriousness of the case and the issues involved – goes, as the February 2018 Order recognizes, "to the nature of the claims themselves."  Id., 2018 WL 71603 at *11.  Here claims of racial and ethnic discrimination in the formulation of affordable housing allocation policy are, objectively, serious.  Because the nature of the claims does not vary, although the relevance of the evidence to proof of those claims may vary, the February 2018 Order errs in its importation of the fifth factor ("whether the public interest weighs in favor of disclosure") in assessing this third factor.  See id.  The weight of this third factor may thus be a constant in the balancing exercises with respect to the various items of Disputed Material, with relevance and other variables playing more significant roles in specific determinations as to whether to uphold the privilege.

The February 2018 Order correctly characterized and applied the fourth – role of government – Rodriguez factor to evidence falling within its narrow definition of relevance.  See id. at *12.  In the proceedings that follow the issuance of this Memorandum Opinion and Order, the fourth factor must also be considered in connection with each item of Disputed Material that is within the broader spectrum of relevance.

---

[3]     The February 2018 Order erroneously relied on relevance in conducting its evaluation of the availability of other evidence.  For example, after finding that the relevant HUD data discussed in the Clawback Document had already been provided to Plaintiffs for analysis, the February 2018 Order concluded that other information contained in the Clawback Document and information in several of the other documents subject to Plaintiffs' objections was not relevant under the Order's narrower standard, and on that basis concluded that the availability-of-evidence factor weighed against the disclosure of the Clawback Document and was neutral with respect to most of the other documents that Plaintiffs claim should not be protected. February 2018 Order, 2018 WL 716013 at * 11, 18.

These four factors, analyzed independently, must then be weighed as a group against the fifth factor – the potential chilling effect that disclosure would have on government employees and thus on robust governmental decision making processes – in determining whether the claim of deliberative process privilege should be upheld with respect to the particular item of Disputed Material. The weight of the relevance factor is likely to play a significant, although not necessarily determinative, role in this exercise, as efforts to glean circumstantial evidence by examining deliberations and communications across wide areas of governmental functioning raise greater prospects of impeding the City government's ability to "promote the quality of agency decisions" through the "encourage[ment of] candid discussion between officials," than do more targeted inquiries focused on the motivation of decision makers in implementing or continuing the specific challenged policy. See Macnamara v. City of New York, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (quoting Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2002)) (internal quotation marks omitted). To the extent the information sought consists of evidence as to whether community groups or other third parties have communicated information indicative of bias to the City, the availability of information regarding those communications from other sources may also play a significant role in the balancing phase of the Rodriguez inquiry.

Accordingly, the February 2018 Order is set aside insofar as it addresses the claims of deliberative process privilege issues, and those issues are recommitted to the Magistrate Judge for further proceedings consistent with the foregoing discussion. The Magistrate Judge's determinations with respect to the other claims of privilege are not modified or set aside, since briefing may have been incomplete, both before the issuance of the February

2018 Order and upon the objections.  The Magistrate Judge may in her discretion permit further

submissions in connection with those determinations.

This Memorandum Opinion and Order resolves Docket Entry No. 293.

SO ORDERED.

Dated: New York, New York
       December 12, 2018

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge