USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/23/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHAUNA NOEL and EMMANUELLA SENAT,

                Plaintiffs,

  -against-

CITY OF NEW YORK,

                Defendant.
-------------------------------------------------------------------X

**OPINION AND ORDER**

**15-CV-05236 (LTS) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

In light of the Honorable Laura Taylor Swain's December 12, 2018 Order, this Court directed the parties to supplement their prior briefing on deliberative process privilege as to certain documents submitted for *in camera* review in late 2017 and addressed in this Court's February 1, 2018 privilege decision. (Doc. Nos. 259, 655, 661.) *See Noel v. City of New* York, No. 15-cv-05236 (LTS) (KHP), 2018 WL 6786238 (S.D.N.Y. Dec. 12, 2018); *Winfield v. City of New York*, No. 15-cv-05236 (LTS) (KHP), 2018 WL 716013 (S.D.N.Y. Feb. 1, 2018). Judge Swain's Order also impacted this Court's September 13, 2018 decision as to a PowerPoint presentation that the City claimed was subject to the deliberative process privilege and was substantially identical to two of the documents addressed in the Court's February 1 decision (referred to collectively as the "Clawback Documents"). (Doc. No. 547.) Eight documents in total are at issue.[1] The parties submitted their supplemental briefs on January 11, 2019. This Court has

---

[1] Plaintiffs objected to this Court's determination that the deliberative process privilege protected the following documents from disclosure: Bates Nos. 21052-21089, 22822-22859, a multi-page document commencing with Bates No. 53095, 56994-56997, and NYCPRIV Nos. 00017, 00218, 00242, 00393, 00399, 00548, 00726, 00885, 01023, 01556, and 01648. Of these, the following documents also were designated and found to be protected work product: NYC_0056994, and NYCPRIV00017, 00218, 00242, 00393, and 01648. *Winfield*, 2018 WL 716013. NYCPRIV01556 was designated and found to be protected by the attorney-client privilege. *Id.* Judge Swain's December 12 Order did not disturb this Court's findings as to applicability of the work product doctrine or

1

now re-reviewed the documents and the parties' original, as well as the supplemental briefing. Its analysis, consistent with Judge Swain's December 12 Order, is discussed below.

## DISCUSSION

### I. *Legal Standard*

The deliberative process privilege, also referred to as the executive privilege, protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks and citation omitted). It applies to both the ultimate executive decision-maker and the executive's staff members. *See Hopkins v. H.U.D.*, 929 F.2d 81, 85 (2d Cir. 1991) (work product, opinions, and recommendations of staff are part of the deliberative process). It also applies to both inter- and intra-agency deliberative communications. *See In re Delphi Corp.*, 276 F.R.D. 81, 84 (S.D.N.Y. 2011) (citing *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 77 (2d Cir. 2002)).

The privilege "'protects the decision-making processes of the executive branch in order to safeguard the quality and integrity of governmental decisions.'" *Marisol A. v. Giuliani*, No. 95-cv-10533 (RJW), 1998 WL 132810, at *6 (S.D.N.Y. Mar. 23, 1998) (quoting *Hopkins*, 929 F.2d at 84). It is motivated by "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news" and the desire to "enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Fed. Hous. Fin. Agency v. HSBC N. Am.*

---

attorney-client privilege. Therefore, the only documents challenged by Plaintiffs for which the Court must reassess applicability of the deliberative process privilege are the Clawback Documents (21052-21089, 22822-22859, and the document beginning with No. 53095), as well as NYCPRIV00399, 00548, 00726, 00885, and 01023.

2

*Holdings Inc.*, No. 11-cv-6189 (DLC), 2014 WL 1909446, at *1 (S.D.N.Y. May 13, 2014) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)); *see also Marisol A.*, 1998 WL 132810, at *6 (the deliberative process privilege is premised upon the notion that "effective decision-making requires a free flow of information amongst government officials and that this free flow would be constrained if these communications had the potential to be revealed to outsiders") (internal citations omitted).

The privilege protects the documents and communications used in the decision-making process when such documents are both (1) pre-decisional and (2) deliberative. *Marisol A.*, 1998 WL 132810, at *6. A document is "pre-decisional" when it is prepared to aid the decisionmaker in arriving at a decision. *Hopkins*, 929 F.2d at 84; *Marisol A.*, 1998 WL 132810, at *6. In assessing whether a document is pre-decisional, courts also consider whether the government can: "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates." *Nat'l Congress for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) (internal quotation marks and citation omitted). This assessment is designed to distinguish pre-decisional documents from those that are "merely part of a routine and ongoing process of agency self-evaluation," which are not covered by the privilege. *Tigue*, 312 F.3d at 80; *see also Charles v. City of New York*, No. 11-cv-0980 (KAM) (JO), 2011 WL 5838478, at *1 (E.D.N.Y. Nov. 18, 2011).

A document is "deliberative" when it relates to the process by which policies are formulated. *Hopkins*, 929 F.2d at 84. "[D]raft documents, by their very nature, are typically

3

pre-decisional and deliberative. They reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors." *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, No. 11-cv-6749 (RKE), 2015 WL 3404111, at *3 (S.D.N.Y. May 27, 2015) (internal quotation marks and citation omitted).

The privilege is qualified, and a document is subject to disclosure after application of a five-factor balancing test articulated in the *Rodriguez v. Pataki* case. *Noel*, 2018 WL 6786238, at *2; *In re Delphi Corp.*, 276 F.R.D. at 85; *Five Borough Bicycle Club v. City of New York*, No. 07-cv-2448 (LAK), 2008 WL 4302696, at *1 (S.D.N.Y. Sept. 16, 2008); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 99-101 (S.D.N.Y. 2003).[2] The balancing factors are:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Noel*, 2018 WL 6786238, at *2.

In her Order, Judge Swain found that relevance, for purposes of the balancing test, is defined broadly and consistently with Federal Rule of Evidence 401 and Federal Rule of Civil Procedure 26(b)(1). *Id.*, at *4. She rejected the narrower, heightened relevance standard this Court applied in its February 1 Order. *Id.* "[T]he *Rodriguez* test must be applied to all relevant pre-decisional deliberative material that is sought. The weight of the relevance factor in the final balancing analysis will vary with the court's assessment of the degree to which the evidence tends 'to make [a fact that is of consequence in the resolution of the action] more or

---

[2] *But see Children First Found., Inc. v. Martinez*, No. 04-cv-0927 (NPM/RFT), 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007) (finding privilege inapplicable in a case where government decisionmaking was subject of litigation).

4

less probable than it would be without the evidence.'" *Id.* (citing Fed. R. Evid. 401). As Judge Swain held in her December 12 Order, the relevance factor carries less weight when the evidence sought does not pertain directly to the specific policy as to which claims have been asserted. *Id.*, at *5; *cf. Torres v. City Univ. of New York*, No. 90-cv-2278 (LAP), 1994 WL 502621, at *4 (S.D.N.Y. Sept. 14, 1994) (holding that balancing test weighed against disclosure of confidential information where such information was "not necessary to [the plaintiff's] case" and did not "have any significant probative value in proving discriminatory intent").

The second factor, the availability of other evidence, must be considered for each challenged document withheld on the basis of the privilege, regardless of where it "falls on the spectrum of relevance." *Noel*, 2018 WL 6786238, at *5. However, the depth of inquiry as to availability may vary based on where the relevance factor falls on that spectrum. *Id.*

The third balancing factor, the seriousness of the case and issues involved, is constant with respect to this Court's assessment of each document. *Id.* As this Court has previously recognized, claims of racial and ethnic discrimination in affordable housing policy are irrefutably serious.

The fourth *Rodriguez* factor looks to the role of government in the litigation. *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 169 (S.D.N.Y. 2017). This refers, specifically, to the government's role in the allegedly unlawful conduct. *See Favors v. Cuomo*, No. 11-cv-5632 (DLI) (RR) (GEL), 2013 WL 11319831, at *12. In this case, the City's decisionmaking clearly is the central issue challenged by Plaintiffs. Thus, this factor, which also is constant as to each document at issue, favors disclosure in this litigation. *See Noel*, 2018 WL 6786238, at *5.

The first four factors discussed above are weighed as a group against the fifth factor in determining whether the document should be produced. "The weight of the relevance factor is likely to play a significant, although not necessarily determinative, role in this exercise, as efforts to glean circumstantial evidence by examining deliberations and communications across wide areas of governmental functioning raise greater prospects of impeding the City government's ability to 'promote the quality of agency decisions' through the 'encourage[ment of] candid discussion between officials,' than do more targeted inquiries focused on the motivation of decision makers in implementing or continuing the specific challenged policy." *Id.*, at *5 (citing *MacNamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (quoting *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2002)) (internal quotation marks omitted)).

## II. The Clawback Documents (Bates Nos. 21052-21089, 22822-22859, 53095)

The Court first turns to the three Clawback Documents, factual portions of which have been produced pursuant to this Court's prior orders. All were prepared in the same time frame after the U.S. Department of Housing and Urban Development ("HUD") established a new rule and Assessment of Fair Housing ("AFH") approach for recipients of HUD funds. *Affirmatively Furthering Fair Housing*, 80 Fed. Reg. 42,271 (July 16, 2015). The new rule established criteria for evaluating fair housing barriers and developing fair housing goals, and provided an assessment tool. It required local governments to submit their AFH approach in conjunction with preparation and submission of their Consolidated Plan on or after January 1, 2019. *Id.* Its articulated purpose was to provide HUD program participants "with an effective planning approach to aid them in taking meaningful actions to overcome historic patterns of

6

segregation, promote fair housing choice, and foster inclusive communities that are free from discrimination." 80 Fed. Reg. 42,353. Under the prior rule, a local government merely had to certify that it was affirmatively furthering fair housing by conducting an analysis of impediments to fair housing choice, taking appropriate actions to overcome the effects of any impediments, and keeping records reflecting the analysis and actions. The new rule established a more standardized assessment and planning process by, *inter alia*, clarifying what constituted an impediment to fair housing choice and appropriate actions to overcome such impediments, requiring public participation in the analysis of impediments, requiring submission of the analysis of impediments to HUD, requiring incorporation of the AFH in the municipality's Consolidated Plan, and setting forth a schedule for renewal of the AFH.[3] The new rule sets forth various factors that can contribute to housing discrimination and/or segregation including community opposition, displacement, lack of community revitalization strategies, lack of private investments in specific neighborhoods, lack of public investments in specific neighborhoods, including services or amenities, lack of regional cooperation, land use and zoning laws, lending discrimination, location and type of affordable housing, occupancy codes and restrictions, private discrimination, and history of segregation. Cities are obliged to evaluate each of these factors to determine whether they are impediments and develop strategies for addressing them. *See* 22 C.F.R. § 5.154(d)(4).

---

[3] On January 5, 2018, HUD suspended most municipalities' obligation to submit an AFH until after October 2020 and as late as 2025, postponing implementation of the 2015 rule. Reasons for the delay in implementation included difficulties some local governments are having in developing meaningful and achievable goals, as well as appropriate metrics and milestone to measure progress toward affirmatively furthering fair housing. *Affirmatively Furthering Fair Housing: Extension of Deadline for Submission of Assessment of Fair Housing for Consolidated Plan Participants*, 83 Fed. Reg. 683 (Jan. 5, 2018).

The Clawback Documents all describe the requirements of the new AFH rule. They also set out preliminary steps the City will need to take to identify the impediments to fair housing in New York City, data it will need to collect to prepare its AFH, and potential issues with HUD metrics and assessment criteria as applied to New York City. The documents also contain some preliminary analyses utilizing HUD data and criteria. City officials have testified that deliberations regarding the AFH submission to HUD involved multiple agencies and required collaboration among agencies. (*See* Doc. No. 470-4, Excerpts from Deposition Transcript of Matthew Murphy ("Tr.") at 101:7-21, 102:18-103:3.) The City also has made clear that the Clawback Documents do not reflect any final decisions by the City as to its AFH approach or any contributing factor. (Declaration of David Quart ("Quart Decl.") ¶¶ 7-13.) All of the documents contain "next steps" slides that, among other things, indicate that policy recommendations as to how to use the AFH, how to set goals, how to compile data, and how to measure low and high opportunity areas need to be formulated. The Clawback Documents list a number of these HUD-provided "contributing factors" and summarize issues to consider when evaluating how they affect fair housing goals. (*See, e.g.,* NYC 0105039.)

In connection with the Court's re-review of these documents, neither party disputes that the Clawback Documents are pre-decisional. Nor do they dispute that the documents reflect deliberative content. They disagree on the outcome of the *Rodriguez* balancing factors.

The Court first addresses the relevance factor. Plaintiffs correctly state that relevant evidence includes information specific to the challenged Community Preference Policy, including information reflecting the City's motivation in adopting and maintaining the policy. Likewise, information suggesting that race-based views were a significant factor "in the position

8

taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive" with respect to the Community Preference Policy is relevant. *Winfield v. City of New York*, No. 15-cv-05236 (LTS) (DCF), 2016 WL 6208564, at *7 (S.D.N.Y. Oct. 24, 2016). Plaintiffs contend that community opposition to fair housing was race-based and that the City's Community Preference Policy was designed to placate such opposition and mitigate perceived fears of or resistance to racial integration in neighborhoods of opportunity posed by the building of affordable housing.

Factors to be considered in establishing discriminatory intent of the City in implementing and maintaining the Community Preference Policy include: whether the official action bears more heavily on one race than another, the decision's historical background, the specific sequence of events leading up to the decision, departures from normal procedure, substantive departures, and contemporary statements by members of the decision-making body. *See Vill. of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977); *United States v. Yonkers*, 837 F.2d 1181, 1221 (2d Cir. 1987). While nothing in the Clawback Documents discusses the Community Preference Policy or even the extent of race-based opposition to affordable housing, it is nonetheless relevant to establishing what the City may have known in 2015 or earlier about race-based opposition to affordable housing. That the presentations are merely a preliminary overview of the City's prospective AFH submission does not render them irrelevant; rather, the nature of the document (*i.e.*, a draft containing preliminary thoughts about the assessments the City would need to make to comply with the new AFH rule) affects the weight of the document – its place on the relevance spectrum – and influence on the balancing test. Likewise, that the presentations do not reflect analysis of the

9

racial impact of the Community Preference Policy on affordable housing applicants or the Policy's impact on the demographics of community districts does not render them irrelevant for purposes of the first *Rodriguez* factor – it goes to the weight of this factor.

Plaintiffs point to pages within the Clawback Documents in which, they claim, the City makes the observation that community opposition is a contributing factor or impediment to fair housing. In actuality, HUD designated community opposition as a contributing factor that each municipality must consider when creating its AFH under the new rule. But, in any event, this Court does not make any decisions as to the import of the document or any information in it as to liability – this Court's review of the document content and relevance is made solely for the purpose of assessing its discoverability under the Federal Rules of Civil Procedure. Plaintiffs also point to issues noted by the City with respect to the Community Opposition "contributing factor." One issue is that "Both low and higher income areas don't necessarily support integration (anti-displacement, ethnic solidarity)." Another issue in relation to publicly supported housing is described as "Opposition can be high in higher opportunity areas (e.g. Queens, Staten Island) except for senior housing." Plaintiffs contend that the issues identified by HPD with respect to the HUD-specified factor of "Community Opposition" reflects a recognition by the City that opposition to affordable housing in some neighborhoods is race-based. Because Plaintiff allege that one purpose of the Community Preference Policy is to address racially-motivated resistance to affordable housing development, Plaintiffs argue that the recognized issues are relevant and support their theory of liability. Plaintiffs point to other information in the documents that they deem relevant to establishing a history of segregation in New York City, disproportionate development across community districts, and lack of


community revitalization strategies. As mentioned above, this Court previously circumscribed the relevance factor in a manner that Judge Swain found too narrow. Based on Judge Swain's Order, relevance must be construed broadly. That the City disputes Plaintiffs' allegations, characterization of the meaning of the documents, and import of the documents does not render them irrelevant for discovery purposes. In light of the broader definition of relevance, and based on the content in the documents mentioned above, this Court finds that the relevance factor weighs in favor of disclosure.

The Court considers the second *Rodriguez* factor – availability of other evidence – for each of the Clawback Documents. *Noel*, 2018 WL 6786238. As noted by Judge Swain, the depth of inquiry as to availability may vary based on where the relevance factor falls on that spectrum. *Id.* Plaintiffs argue that the presentations call into question or supplement testimony of key witnesses on whether they had been briefed on (1) whether getting community support for residential racial integration is difficult and (2) whether getting community support for fair housing is difficult, among other issues. While the City rightly points out that Plaintiffs had a full opportunity to depose witnesses on the topic of community support or opposition to fair housing, and that other information on these topics has been provided, it is unclear to what extent there are other documents that might refresh a witness's knowledge and memories on these topics. In light of the Court's reevaluation of the relevance factor, and the supplemental information provided by Plaintiffs as to the necessity of the documents in light of other information learned in discovery, this factor weighs in favor of disclosure.

The Court evaluates the third *Rodriguez* factor – seriousness of issues in the case – differently than it did in February in light of Judge Swain's December 12 Order. Specifically, the Court does not consider or import the fifth factor in its assessment of this factor. Because discrimination cases are objectively serious, this factor weighs in favor of disclosure.

The fourth *Rodriguez* factor looks to the role of government in the litigation. *Id.* This refers, specifically, to the government's role in the allegedly unlawful conduct. *See Favors*, 2013 WL 11319831, at *12. As this Court previously found, the fourth factor favors disclosure.

Lastly, the Court weighs the first four factors as a group against the fifth factor – the potential chilling effect that disclosure will have on government employees. As this Court has previously recognized, a key rationale for the deliberative process privilege is the need to ensure the effective functioning of our government. *See Citizens Union of City of N.Y.*, 269 F. Supp. 3d at 169. City officials cannot engage in open, productive deliberations about how to best address the City's fair and affordable housing needs if all communications are subject to disclosure. It is in all parties' interests – including the interests of Plaintiffs and all other individuals who seek affordable housing in New York City – to allow the City to engage in the candid exchange of ideas and opinions concerning the future of its fair and affordable housing policies and how best to comply with federal regulations. In light of this Court's recalibration of the first four factors against the fifth factor, the Court finds that the balance, though a close call, weighs in favor of disclosure of the Clawback Documents.

### III. *Chart of Issues Regarding Housing Connect (NYCPRIV00548)*

This document is a chart that summarizes issues raised by developers regarding Housing Connect and the marketing process for affordable housing units. It contains HPD's assessment

12

of those issues and possible responses to developers and was used to facilitate discussions on possible improvements to the marketing process. The City produced this document in redacted form to Plaintiffs. The redacted columns contain preliminary thoughts and potential responses to the issues raised by the developers. In looking at the first *Rodriguez* factor, the Court notes that the issues raised in the document do not pertain to the Community Preference Policy. Rather, they concern potential changes to the marketing and lease-up process. This information is relevant background information – understanding the marketing and lease-up process for affordable housing is important to Plaintiffs' disparate impact analysis. However, given the nature of the information in the document (*i.e.*, deliberations and not a description of the City's final position as to the issues), it falls on the lower range of the relevance spectrum. Thus, this factor weighs only slightly in favor of disclosure. The second factor, however, availability of other information, weighs against disclosure. Plaintiffs have had a full opportunity to learn the actual marketing and lease-up processes for affordable housing, as well as how the Community Preference Policy fits into those processes. The City already has produced the final marketing guidelines that were in place during the applicable period. The City also has provided information about the lease-up process. Moreover, Plaintiffs deposed the Assistant Commissioner in charge of marketing, Margaret Brown, the Director of Operations who oversaw policy changes to the marketing process, Emily Osgood, and the Director of Marketing, Victor Hernandez. Plaintiffs had the redacted document and could have questioned these deponents about the document and related topics. Thus, as there was other evidence available regarding this minimally relevant information, the second *Rodriguez* factor weighs against disclosure. The third and fourth factors weigh in favor of disclosure. When the

13

first four factors are weighed against the fifth factor, however, the balance tips against disclosure and in favor of upholding the privilege. Nothing in the document bears on motivations for the policy at issue, nor would disclosure improve Plaintiffs' knowledge of the actual marketing guidelines and lease-up process used during the applicable period. The potential chilling effect of exposing internal deliberations on an issue of little relevance to this case and the information Plaintiffs already have on the guidelines and lease-up process inform this Court's decision.

### IV. *Documents Concerning East New York Plan (NYCPRIV00726 and 01023) and Inwood NYC Action Plan (NYCPRIV00885)*

Document 00726 is an email chain discussing HPD's East New York plan, portions of which have been produced. The redacted portions discuss research on income levels, affordability requirements for housing on public sites in the neighborhood, and how HPD might provide subsidies for private sites in order to keep the housing affordable and best serve the community. The first *Rodriguez* factor weighs against disclosure. HPD's discussions and deliberations on income levels and affordability in East New York are not relevant to the issues in this litigation. None of the redacted information goes to motivations for adopting and maintaining the Community Preference Policy or even circumstantial information touching on the *Arlington Heights* factors referenced above. The second factor – availability of other information — also weighs against disclosure. Plaintiffs have received data about developments in East New York and the income criteria applied to those developments. Plaintiffs have had the opportunity to question former Deputy Commissioner for Neighborhood Strategies, Daniel Hernandez, former Deputy Commissioner for Strategy Research and Communications, David Quart, as well as former HPD Commissioner Vicki Been on how income

levels for projects are determined as well as subsidies provided by HPD in connection with affordable housing developments.  Also, the final version of the East New York plan is publicly available, so Plaintiffs are aware of HPD's final decisions on the matters being discussed in the redacted portions of the email.  The third and fourth factors weigh in favor of disclosure.  When the first four factors are balanced against the fifth factor, the balance tips against disclosure.  Again, there were various other avenues by which Plaintiffs could have obtained this minimally relevant information.  The potential chilling effect of exposing internal deliberations on an issue of little relevance to this case and the information Plaintiffs already have concerning the East New York Plan inform this Court's decision.

Document 01023 is a draft of the East New York Affordable Housing Strategy.  For the same reasons discussed above, the balance of the *Rodriguez* factors weighs against disclosure.  The Court finds that the first two factors weigh against disclosure, the third and fourth weigh in favor of disclosure, and that the first four factors balanced against the fifth factor ultimately weighs against disclosure.

Document 00885 is a draft of the Inwood NYC Action Plan – Housing Section.  The deliberative material in this document consists of comments as well as draft language, some of which does not appear in the final publication (which Plaintiffs have).  For the same reasons set forth above with respect to the East New York plan documents, the first *Rodriguez* factor weighs against disclosure.  The second factor too weighs against disclosure, given that the final version of the Inwood NYC Action Plan – Housing Section is publicly available and that Plaintiffs have had the opportunity to depose individuals with knowledge of the plan.  The Court finds that the first two *Rodriguez* factors weigh against disclosure, the third and fourth weigh in favor

of disclosure, and that the first four factors balanced against the fifth factor ultimately weighs against disclosure.

V.  *Decision Memo Regarding Certain ULURP Applications (NYCPRIV00399)*

This document is a memorandum to the Mayor requesting that he make a decision regarding what the Administration's policy will be regarding certain ULURP applications in the mandatory inclusionary housing ("MIH") program. The Uniform Land Use Review Procedure ("ULURP") is a standardized procedure whereby applications affecting land use in New York City are publicly reviewed. Potential modifications to the ULURP application process have no bearing on the claims in this case. Therefore, the first *Rodriguez* factor weighs against disclosure. The second factor also weighs against disclosure, as Plaintiffs already have information on the ULURP process in place during the relevant period. The third and fourth *Rodriguez* factors weigh in favor of disclosure. When the first four factors are balanced against the fifth factor, disclosure is not warranted. Plaintiffs could have again questioned Deputy Commissioner Hernandez, Deputy Commissioner Quart, and Commissioner Been, on ULURP issues during their depositions. Therefore, both the first and second prongs of *Rodriguez* weigh against disclosure. The potential chilling effect of exposing internal deliberations on an issue of little relevance to this case and the information Plaintiffs already have concerning the ULURP process inform this Court's decision.

VI.  *Additional Documents Protected by the Deliberative Process Privilege and Not Challenged by Plaintiffs*

This Court, in its February 1 decision, additionally held that NYCPRIV00183 and NYCPRIV00731 were protected from disclosure by the deliberative process privilege. Although Plaintiffs do not challenge this Court's ruling as to these two documents, the Court nevertheless

16

reevaluates its analysis in light of Judge Swain's December 12 Order. Document 00183 is a draft memorandum to the Mayor requesting that he make a decision regarding whether to announce a commitment that HPD would finance 10,000 housing units for homeless households. Document 00731 is a draft of a presentation created to brief the New York State Legislature on proposals that HPD wanted to implement regarding tax and rent regulation issues. Neither document contains information relevant to this litigation. Therefore, the first *Rodriguez* factor weighs against disclosure as to both documents. To the extent Plaintiffs wish to obtain public remarks made by the Mayor to the Legislature and debates about tax and rent regulation, they may obtain this information. Plaintiffs also have access to the final decision made by the Mayor about the number of homeless households that would be financed. Thus, factor two weighs against disclosure. The third and fourth *Rodriguez* factors weigh in favor of disclosure. When the first four factors are balanced against the fifth factor, disclosure is not warranted as to either document.

## CONCLUSION

For all of the foregoing reasons, the Court reverses its prior rulings on the Clawback Documents but sustains its prior rulings as to the remainder of documents addressed above.

**SO ORDERED.**

Dated: January 23, 2019
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge