USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/02/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

SHAUNA NOEL and EMMANUELLA SENAT,

                            Plaintiffs,

      -against-

CITY OF NEW YORK,

                            Defendant.

----------------------------------------------------------------X

**OPINION AND ORDER ON PLAINTIFF'S REQUEST FOR ADDITIONAL DEPOSITION**

**15-CV-5236 (LTS) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      This case involves a challenge to New York City's Community Preference Policy. Under the policy, which was established approximately 30 years ago, a certain percentage of affordable housing units in some affordable housing projects are set aside for individuals living within the Community District where the project is located. These individuals, who are applicants in the affordable housing lottery, receive a preference in the application process by virtue of their being residents in the community, but also must meet the income requirements for the housing. The Court assumes familiarity with the factual background of the case and does not repeat it here.

      Over a year ago, this Court expressed the need for discovery to come to an end. *Winfield v. City of New York*, 15-cv-5236, 2018 WL 1631336 (S.D.N.Y. Mar. 29, 2018). Nevertheless, this Court extended the discovery schedule in this case several times to permit the parties a full opportunity to exchange documents and question witnesses. Fact discovery concluded over three months ago. Plaintiffs obtained discovery from over 50 custodians and

took depositions of 21 different fact witnesses and several days of depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Rule 30(b)(6)").  Plaintiffs also received extensive data related to the affordable housing lottery for analysis.  Presently, the parties are in the midst of expert discovery, during which at least five experts will be deposed.  Nonetheless, Plaintiffs have now moved for permission to conduct yet another deposition pursuant to Rule 30(b)(6) of a representative of the City's Department of Education ("DOE").  (Doc. No. 711.)  The purpose of the deposition is to learn about "fear of, or opposition or resistance to, potential or realized changes in the racial or ethnic composition of schools resulting from City policies or practices."  For the reasons set forth below, the motion is DENIED.

A party seeking to re-open discovery bears the burden of showing good cause, the primary consideration for which being whether there has already been adequate opportunity for discovery.  *See Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir. 1991); *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011).  Other factors relevant to the Court's inquiry include (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.  *Bridgeforth v. City of N.Y.,* 286 F. Supp. 3d 629, 632 (S.D.N.Y. 2017); *City of Almaty, Kazakhstan et al. v. Mukhtar Ablyazov et al.,* 15-cv-5345, 2019 WL 275701, at *3-4 (S.D.N.Y. Jan. 22, 2019); *Bakalar*, F. Supp. 2d 489 at 493.

As is clear from this Court's summary of discovery conducted, Plaintiffs have had a full opportunity to conduct relevant discovery. This factor weighs against granting Plaintiff's request. Although trial is not imminent, the parties are fully occupied with expert discovery and one last brief concerning certain of the City's privilege designations. Upon completion of expert discovery, summary judgment briefing will commence. On balance, this factor does not weigh in favor of the additional discovery. The City opposes Plaintiff's request for additional discovery on several grounds, including that the additional discovery will prejudice the City insofar as the limited staff of attorneys working on this matter will have to divert time and energy to preparing for and defending the deposition at a time when they are fully engaged in expert discovery. The City also points out the added costs to taxpayers, noting that a significant amount of tax payer dollars already have been spent on discovery. This Court agrees with the City—factors two and three weigh against granting the additional discovery.

A discussion of factors four through six requires additional context and discussion. Plaintiffs have been nothing if not diligent. They have been zealous advocates for their clients and pursued all avenues of discovery. Early in discovery Plaintiffs sought documents about the City's schools and school policies. The City objected to these requests on relevance grounds. This Court agreed that these requests were at best tangentially relevant and directed Plaintiffs to focus on documents and depositions pertaining to the Community Preference Policy at issue in this case. Nonetheless, this Court did not restrict Plaintiffs from questioning fact witnesses as to their knowledge about neighborhood resistance to racial change in schools to the extent that came up in the context of affordable housing and community opposition or support for the

Community Preference Policy. Plaintiffs concede that they did so question at least four fact witnesses. In response to questions on the topic, Vicki Been, former Commissioner of the City's Department of Housing Preservation and Development ("HPD"), stated that she did not talk with any City Council Members about school integration. Rather, she testified that her conversations were focused on affordable housing and the City's housing plan. Been's successor, Maria Torres-Springer, also testified that she did not participate in conversations about racial integration of the City's schools with any Schools Chancellor. Deputy Mayor Alicia Glen stated that she did not participate in any meetings with the Mayor and Schools Chancellor about integration in City schools. Leila Bozorg, HPD's Deputy Commissioner for Neighborhood Strategies, who has been interacting with various communities on fair housing issues, pointed Plaintiffs to certain documents dealing with the educational dimension of fair housing. At the same time, she stated that she had not had any direct conversations with representatives from the DOE regarding school integration and community opposition to it. In sum, the individuals responsible for the Community Preference Policy at issue in this case do not appear to have much interaction with DOE representatives or much knowledge on the topic of community opposition to school integration. In other words, discovery has not yielded any factual support for the proposition that community views on school segregation and DOE policymakers influenced HPD policymakers in their administration of the Community Preference Policy.

Plaintiffs point to a recent report issued by the City's School Diversity Advisory Group called "Making the Grade," issued in coordination with the DOE (the "Report"). *See* Making the Grade: The Path to Real Integration and Equity for NYC Public School Students, School Diversity

Advisory Group (Feb. 2019), https://docs.wixstatic.com/ugd/1c478c_4de7a85cae884c53a8d48750e0858172.pdf. The Report contains a short section on "Redlining, Restrictive Covenants, and Public Housing," which discusses the practice of "redlining" created pursuant to the National Housing Act of 1934 and simultaneous influx of large numbers of African Americans from the southern United States and Central American immigrants into the New York City. It states that "[a]ctions by the New York City Public School system [in the first half of the 20th Century] exacerbated the housing segregation as school zones were adjusted to keep black children out of nearby predominantly white schools." *Id.* at 43. Additionally, in a letter from the Executive Committee introducing the Report, the following statement is made, "Our societal decisions about public housing and private housing, our history of creating and believing stereotypes about race and immigration and income have created neighborhoods and zoned schools that mirror housing discrimination and poverty." *Id.* at 6. The Report acknowledges a correlation between non-diverse neighborhoods and non-diverse neighborhood schools and a history of policies (discriminatory in intent or effect) that contributed to the current and regrettable reality that poor neighborhoods of color tend to have under-resourced, underperforming, and non-diverse public schools. Plaintiffs speculate that a representative from the DOE will have information about resistance to racial change in schools. They go on to state that community resistance to changes in school zones and school admissions policies may reveal racism within certain communities which Plaintiffs would use to demonstrate that the Community Preference Policy was maintained to placate this opposition. They also state that they have an expert (who

already has prepared a report) who will state that "[c]oncerns about schools are often a major source of opposition to affordable housing."

What the above demonstrates is that Plaintiffs were diligent in seeking and obtaining discovery regarding the connection (if any) between opposition to school desegregation and the Community Preference Policy. It also demonstrates that Plaintiffs learned that HPD policymakers had few if any communications with the DOE or others about City school zoning and admissions policies and do not appear to have taken neighborhood concerns about schools into account when administering the Community Preference Policy (at least for the time period about which the HPD witnesses were deposed). It also demonstrates that if Plaintiffs had wanted additional discovery from DOE, they could have raised it prior to the close of fact discovery. It demonstrates that Plaintiffs already have an expert and other documents concerning school segregation in New York City. And, it demonstrates that it is unlikely that the deposition will lead to additional and necessary relevant evidence. In fact, in August 2018, Plaintiffs conceded that they did not need more discovery from the DOE on school policies. By a Stipulation dated August 3, 2018, which was entered into by the parties with the intent to resolve all outstanding fact discovery issues and so ordered by this Court, Plaintiffs agreed (1) not to pursue additional document demands they had propounded concerning racial change in New York City schools and (2) not to seek the deposition of a past or current DOE employee. (Doc. No. 518 ¶¶ 21, 22, 25.) This was a strategic decision by Plaintiffs that they cannot revisit now. Moreover, nothing that has occurred since entering into the August 2018 Stipulation renders a deposition of a DOE representative necessary or likely to lead to relevant information

now. Anecdotal testimony about allegedly racist opposition from members of the public to changes to City school policy does not mean that City officials yielded to that opposition in formulating school policy or in adopting and maintaining and administering the Community Preference Policy. Thus, the last three factors of the good cause inquiry weigh against granting Plaintiffs' request. *See Richardson v. New York City*, 326 F. App'x. 580, 582, 2009 U.S. App. LEXIS 9300, at *3-4 (2d. Cir. Apr. 30, 2009) (upholding district court's denial of motion to compel discovery made one month after the close of discovery as untimely); *Cavanagh v. Ford Motor Co.,* No. 13-CV-4584 (JS)(SIL), 2017 U.S. Dist. LEXIS 90050, at *29-32 (E.D.N.Y. June 9, 2017) (denying additional discovery in the context of summary judgment); *Slomiak v. Bear Stearns & Co.*, No. 83-CV-1542 (CSH), 1985 WL 410, at *1 (S.D.N.Y. Mar. 12, 2015) (denying discovery after the close of fact discovery when the party seeking the discovery had known of the witnesses and "arguable need for their testimony" before the close of discovery); *Abdelal v. Kelly*, No. 13-CV-4341 (ALC)(SN), 2018 WL 3812443, at *2-3 (S.D.N.Y. Aug. 10, 2018) (holding that "[t]he Court will not reopen discovery now simply because Plaintiff made a strategic decision during the discovery process not to depose a high-ranking official").

For the reasons set forth above, Plaintiff's motion is DENIED.

SO ORDERED.

Dated: April 2, 2019
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge