Page 1

```
 1            UNITED STATES DISTRICT COURT
 2            SOUTHERN DISTRICT OF NEW YORK
 3   ------------------------------------x
     JANELL WINFIELD, TRACEY STEWART
 4   and SHAUNA NOEL,
 5                      Plaintiffs,
 6            -against-              Civil Action No.:
                                     15-CV-5236 (LTS)(KHP)
 7   CITY OF NEW YORK,
 8                      Defendant.
     ------------------------------------x
 9
10
                         April 10, 2018
11                       9:20 a.m.
12
13
14         VIDEOTAPED DEPOSITION of VICKI BEEN, held
15   at the law offices of the Anti-Discrimination
16   Center, located at 1745 Broadway, New York, New
17   York 10019, before Anthony Giarro, a Registered
18   Professional Reporter and a Notary Public of the
19   State of New York.
20
21
22
23
24
25
```

Page 108

1   VICKI BEEN
2              MR. GURIAN: Okay.
3              THE VIDEOGRAPHER: The time
4     is 12:02. We are off the record.
5              (A short recess was taken.)
6              THE VIDEOGRAPHER: Here
7     begins Video Recording No. 2. The
8     time is 12:12. We are on the record.
9         Q    Ms. Been, did you discuss
10    your testimony or upcoming testimony with
11    your attorney during the break?
12        A    Just now?
13        Q    Yes.
14        A    She said --
15             MS. SADOK: No. You don't
16    have to tell him what I said. Just
17    whether or not we discussed testimony
18    or not.
19        A    Yes.
20        Q    So where we were was what
21    for you was the counterfactual scenario
22    that reducing or eliminating Community
23    Preference would not reduce the amount of
24    Affordable Housing being built. We took
25    it from there.

VICKI BEEN

After, you had said that you'd have to think about whether reducing from 50 would serve the city's interests best or whether sticking with 50 would serve the city's interest best. You distinguished two things, I think. One is the actual city -- the actual circumstance that the city finds itself in where it's not on a blank slate where it's currently 50 percent.

A Right.

Q So your answer in that scenario in terms of how the city's interests would be best served, reducing from 50, not reducing?

 MS. SADOK: Objection.

A I'm sorry. I wouldn't make a decision on the fly in a situation like this. I would need to think it through, do the analysis, think through what -- the reason why I raised a concern about, are we lowering it, are we talking in the abstract and writing on a blank slate. When you take something away

Page 110

VICKI BEEN

from people, they feel differently about it than when they've never had it before; right. So I'd have to think that through, think through the messaging, et cetera. So I'm having a hard time answering just the abstract question. I can tell you how I would think it through. But I would need to then get all that analysis and think it through.

Q   So now you're not talking about the abstract question being the starting on a clean slate?

A   Right.

Q   You're talking about having enough information to be able to make the decision?

MS. SADOK:  Objection.

A   Under the scenario that you've posed.

Q   And sitting here today, you don't have the necessary information?

MS. SADOK:  Objection.

A   I haven't thought the question all through in the way that you

```
                                          Page 111
 1                    VICKI BEEN
 2    posed it.
 3         Q      When you say that, you mean
 4    both today and at any point prior to
 5    today?
 6                MS. SADOK:  Objection.
 7         A      You're asking me to assume a
 8    counterfactual that I don't believe.  No.
 9    I never sat down and said if I didn't
10    believe any of the things that I believe,
11    what would I do?  I haven't done that.
12         Q      That answers the question.
13                So we're going to stick with
14    that same scenario just for another
15    moment.  And now we're going to add in
16    one thing which is your only concern is
17    yielding the greatest reduction in racial
18    segregation.
19                Would you keep the Community
20    Preference policy at 50 percent?
21                MS. SADOK:  Objection.
22         A      I guess what I would say is
23    if I didn't believe that the Community
24    Preference was serving any of the
25    purposes that we've described that we
```

1  VICKI BEEN
2  think it serves, would I have the
3  Community Preference if my main goal was
4  to reduce the city's racial segregation
5  as much as possible; is that the
6  question?
7       Q    No.
8       A    Okay. I'm sorry. Where am
9  I going off the rails in terms of your
10 question?
11      Q    I understand and the record
12 reflects that there are premises that you
13 don't agree with. I just want to make
14 sure that I can pose the question in a
15 way and you could answer it in a way, so
16 that the question and answer are clear.
17           So we're saying for the
18 purposes of thinking about this question
19 that the absence or a lowered Community
20 Preference would not reduce the amount of
21 Affordable Housing being built and that
22 in this particular circumstance, your
23 only concern, your only policy concern is
24 reducing racial segregation as much as
25 possible. Do you understand those two

Page 113

1      VICKI BEEN
2  premises?
3          MS. SADOK: Objection.
4      A      I think so.  So you're
5  assuming that my only concern is reducing
6  racial segregation.  So I don't have a
7  concern about displacement.  I don't have
8  a concern about fear of displacement.
9      Q      I'm not trying to disguise
10 anything.  Your only concern is reducing
11 racial segregation to the maximum extent
12 you can.
13          Would you retain a
14 50 percent Community Preference?
15         MS. SADOK: Objection.
16     A      I don't think so.  But I'd
17 want to be sure that I had gone through
18 all the analysis which I haven't done
19 here today.  But I don't think so if it
20 were serving none of those purposes.  And
21 my only concern was reducing racial
22 segregation.
23     Q      This next document may be a
24 little confusing.  So it's going to take
25 a couple of minutes.  Ms. Sadok may have

STATE OF New York )
) :ss
COUNTY OF New York )

I, VICKI BEEN, the witness herein, having read the foregoing testimony of the pages of this deposition, do hereby certify it to be a true and correct transcript, subject to the corrections, if any, shown on the attached page.

_____
VICKI BEEN

Sworn and subscribed to before me, this 25th day of May, 2018.

_____
Notary Public

KRISTIN E SILBERMAN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01SI6137116
COMM. EXP. 2/22/22

# ERRATA

I wish to make the following changes, for the following reasons:

PAGE   LINE

12   25   CHANGE: "texted" to "e-mailed"

REASON: The City has filed a Declaration by the deponent (ECF Document 362-1) to clarify misstatements by deponent regarding the existence of text messages which, upon subsequent reconsideration and recollection by deponent and explained in greater detail in the aforementioned Declaration, were actually e-mail communications and not text messages.

24   3   CHANGE: "present" to "prevent"

REASON: Deponent stated "prevent" but reporter transcribed incorrectly.

30   10-11   CHANGE: "math" to "map"

REASON: Deponent stated "map" but reporter transcribed incorrectly.

32   20   CHANGE: "forward" to "hard"

REASON: Deponent stated "hard" but reporter transcribed incorrectly.

48   23   CHANGE: "mentioning" to "mandatory"

REASON: Deponent stated "mandatory" but reporter transcribed incorrectly.

72   20-22   CHANGE: "whether -- to the best of my knowledge, I haven't looked at it recently. The new construction…" to "whether-- to the best of my knowledge, I haven't looked at it recently -- the new construction…"

REASON: Clarify intent of statement.

115   18   CHANGE: "there" to "their"

REASON: Clarify intent of statement.

117   20   CHANGE: "rooted" to "routed"

REASON: Deponent stated "routed" but reporter transcribed incorrectly.

231   7   CHANGE: "evaluate" to "evaluated"

REASON: Deponent stated "evaluated" to reflect past tense but reporter transcribed incorrectly.

_____       May 25, 2018
WITNESS' SIGNATURE             DATE