UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

SHAUNA NOEL, and EMMANUELLA SENAT,

                                              Plaintiffs,

                                15 CV 5236 (LTS)(KHP)

        -against-

CITY OF NEW YORK,

                                              Defendant.

------------------------------------------------------------------------ x


**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**


                                   HON. SYLVIA O. HINDS-RADIX
                                   Corporation Counsel of the City of New York
                                   Attorney for Defendant
                                   100 Church Street
                                   New York, New York 10007
                                   (212) 356-4371

SHERYL R. NEUFELD,
MICHELLE GOLDBERG-CAHN
MELANIE V. SADOK,
GATI DALAL,
        Of Counsel.


June 29, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... II

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT

    POINT I

        PLAINTIFFS FAILED TO MEET THE STRICT STANDARD FOR RECONSIDERATION ............................................... 2

        A. The Court's Decision is Not Inconsistent with *Inclusive Communities* ............................................................................ 3

        B. The Court did Not Misstate Plaintiffs' Position ................................. 5

        C. The Court Did Not Err in Considering When an Injury Occurs .......................................................................................... 5

        D. Purportedly "Overlooking" the Amicus Brief and Part(s) of Plaintiffs' Reply Brief Does Not Necessitate Reconsideration ................................................................. 7

        E. The Court's Treatment of the CD Typologies as Fungible and Reliance Upon *Comer v. Ciscneros* was Not Erroneous ............................................................................... 8

        F. The Court Applied the Proper Standard to the City Human Rights Law ........................................................................ 11

CONCLUSION ........................................................................................................................ 12

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                    **Pages**

*Analytical Surv., Inc. v. Tonga Partners, L.P.*,
   684 F.3d 36 (2d Cir. 2012)...............................................................................................3, 8

*Comer v. Cisnerno*,
   37 F.3d 775 (2d Cir. 1994)........................................................................................6, 7, 8, 9

*Connecticut v. Teal,*
   457 U.S. 440 (1982)............................................................................................................10

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)..............................................................................................................6

*JLM Couture, Inc. v. Gutman*,
   2023 U.S. Dist. LEXIS 42966 (S.D.N.Y. 2023)...............................................................2, 3, 7

*Liu v. Credit Suisse First Boston Corp. (In re Initial Pub. Offering Sec. Litig.)*,
   399 F. Supp 2d 298 (S.D.N.Y. 2005)....................................................................................2

*MPD Accessories B.V. v. Urban Outfitters, Inc.*,
   No. 12-CV-6501, 2014 U.S. Dist LEXIS
   96353 (S.D.N.Y. 2014)..........................................................................................................2

*Noel v City of NY*,
   2023 U.S. Dist LEXIS 74009 (S.D.N.Y. 2023).....................................................................4

*Shrader v. CSX Transp., Inc.,*
   70 F.3d 255 (2d Cir. 1995)................................................................................................2, 3

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016)..............................................................................................................6

*Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*,
   576 U.S. 519 (2015)..............................................................................................................3

*United States v. Zhu*,
   41 F. Supp. 3d 341 (S.D.N.Y. 2014)..................................................................................3, 7

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992)................................................................................................3

## PRELIMINARY STATEMENT

Plaintiffs' motion for partial reconsideration of this Court's April 28, 2023 Memorandum Decision and Order granting in part Defendant's motion for summary judgment and denying Plaintiffs' motion for summary judgment on the disparate impact claims should be denied. Plaintiffs' convoluted motion does not meet the strict burden for reconsideration. Plaintiffs fail to cite to any intervening change in case law, new evidence, or any actual error by the Court.

Plaintiffs' motion is based upon a misunderstanding and mischaracterization of the Court's decision. The motion reads as if the Court adopted the City's analysis and, rather than defend Plaintiffs' own analysis, the motion instead attacks the City's analysis and posits Plaintiffs' perception of the implications of the Court's ruling on disparate impact analysis generally. Through this approach, Plaintiffs create a false dichotomy between the City's citywide analysis and Plaintiffs' race-based Community District ("CD") typology analysis. However, the Court did not adopt the City's analysis, or even define how disparate impact must be undertaken. Instead, the Court appropriately found that Plaintiffs' analysis failed as a matter of law to demonstrate a disparate impact against African Americans. Plaintiffs fail to articulate or demonstrate why this finding necessitates reconsideration.

Further, instead of defending their analysis as it was presented in their motion for summary judgment, Plaintiffs now attempt to reframe their analysis in requesting reconsideration. Based on the framing in this motion, one may think that Plaintiffs' analysis was either based on groups of lotteries within the same Community District ("CD"), or individual lotteries. In fact, Plaintiffs' analysis was based upon race-based CD typologies, which Plaintiffs glaringly fail to defend. Contrary to Plaintiffs' attempt to convince this Court otherwise, the CD typologies are not a "geography," but are groupings of lotteries based upon the racial demographics of where the lotteries are located. In any CD typology, there are lotteries from many different CDs and even

different boroughs. Consequently, there is a disconnect between Plaintiffs' argument as to why reconsideration is warranted, which is based upon lotteries grouped by CD or individual lotteries, and the artificial race-based CD typology analysis presented by Plaintiffs in their motion for summary judgment. Thus, even if Plaintiffs' arguments were meritorious (and they are not), they are irrelevant and not grounds for reconsideration.

In sum, as Plaintiffs' motion mischaracterizes the Court's decision and attempts to reframe its own analysis, rather than defend it, and does not point to any new controlling law, evidence, or error, it must be denied in its entirety.

## ARGUMENT

### POINT I

### PLAINTIFFS FAILED TO MEET THE STRICT STANDARD FOR RECONSIDERATION

"Reconsideration of a court's previous order is 'an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *MPD Accessories B.V. v. Urban Outfitters, Inc.*, No. 12-CV-6501, 2014 U.S. Dist LEXIS 96353 at *1 (S.D.N.Y. 2014) (quoting *Liu v. Credit Suisse First Boston Corp. (In re Initial Pub. Offering Sec. Litig.)*, 399 F. Supp 2d 298, 299 (S.D.N.Y. 2005)). *Accord JLM Couture, Inc. v. Gutman*, 2023 U.S. Dist. LEXIS 42966 *10 (S.D.N.Y. 2023). Accordingly, it is well-settled that "the standard for granting such a motion is strict, and reconsideration will generally be denied." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). Thus, a motion for reconsideration may only be granted if there is (1) "an intervening change of controlling law;" (2) "the availability of new evidence;" or (3) "the need to correct a clear error of law or prevent manifest injustice." *JLM Couture,* 2023 U.S. Dist. LEXIS 42966 *10 (quoting *United States v. Zhu* , 41 F. Supp. 3d 341,

2

342 (S.D.N.Y. 2014), in turn quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Additionally, this new evidence, law, or correction of an error must be so significant that it "might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surv., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted). Although Plaintiffs' arguments are convoluted, what is clear is that Plaintiffs have failed to meet this strict standard.

### A.   The Court's Decision is Not Inconsistent with *Inclusive Communities*

Plaintiffs first appear to argue that the Court's decision is inconsistent with the causality standard set forth in *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015),. In particular, they assert that Plaintiffs met the causation requirement, making the Court's "suggest[ion]" that the purported impact of the community preference policy as analyzed by Professor Beveridge is merely a function of pre-existing racial demographics incorrect. Plaintiffs' Memorandum of Law in Support of Reconsideration ("Ps' MOL") at 2 (ECF 973).

Plaintiffs' argument lacks merit. First, Plaintiffs already set forth their interpretation of *Inclusive Communities* in their extensive briefing, and thus this argument is nothing more than mere disagreement with the Court. Additionally, the premise of Plaintiffs' argument is incorrect, as the Court's decision did not turn on a lack of causation, but the lack of a disparate impact on a protected class. The Court stated that "[a]lthough Plaintiffs have shown that multiple racial demographic groups are affected within multiple CD typologies, they have failed to make the requisite showing that members of the protected class at issue—African American

3

New Yorkers—are <u>disproportionately</u> or <u>disparately</u> impacted by the CP policy." Memorandum Decision and Order, dated April 28, 2023 ("Decision") at 15 (ECF 970) (emphasis in original).[1] The Court further explained that all that Plaintiffs demonstrated was that "members of each demographic group are both 'help[ed] and hurt[]' by the Policy depending on where 'the applied-for-housing is located'" and correctly concluded that Plaintiffs' analysis did not show a disparate impact on the protected class at issue, African American New Yorkers. *Id.*

Plaintiffs' substantive attack on the Court's statement about a "correlation" between the distribution of the advantages and disadvantages of the CP policy and "preexisting racial demographics" also fails. *See* Ps' MOL at 3. Plaintiffs boldly assert that "the application pool in a lottery does not correlate to the pre-existing racial demographics of the community district in which the housing is located." *Id*. Yet, Plaintiffs do not cite to their expert's analysis, or anything else, in support of this assertion. Nor can they, because they did not undertake such an analysis. Despite their best efforts to reframe their analysis as if it were undertaken on community districts or individual lotteries, their analysis was not done on either. Plaintiffs' analysis grouped the lotteries by the racial demographics of the CDs in which they are located.

Moreover, Plaintiffs' argument is again based upon a mischaracterization of the Court's order. The Court did not say that the advantages and disadvantages correlate to the preexisting racial demographics of the *community district*, as Plaintiffs claim, but said that the advantages and disadvantages of the CP policy "largely correlate to the preexisting racial demographics *of the CD typology in which the affordable housing is located.*" Decision at 15 (emphasis added). Plaintiffs cannot attack the Court's actual statement, as that is exactly what

---

[1] The Decision has been published and can be located at *Noel v City of NY*, 2023 U.S. Dist LEXIS 74009 (S.D.N.Y. 2023).

Plaintiffs' expert's analysis demonstrated. *See* Ps' MOL in Support of their Motion for Summary Judgment at 4 (ECF 882 ) ("In all of the majority CD typologies the advantages of insider status *always* flowed most strongly to the majority group of the CD typology."); Declaration of Andrew Beveridge, dated March 4, 2020, at ¶¶ 24-25 (ECF 883). Thus, Plaintiffs' attack of the Court's ruling is in fact an attack of their own expert's analysis. *See id*.

**B.**     **The Court did Not Misstate Plaintiffs' Position**

Plaintiffs claim that the Court misstated Plaintiffs' position when it said that their analysis "conflates the right not to be discriminated against on the basis of race, or another protected status, in the provision of housing with their alleged right to equal competition among all applicants." Ps' MOL. at 4-5. However, the Court was not restating Plaintiffs' position but was characterizing and criticizing Plaintiffs' position. Plaintiffs may disagree with the Court's perspective on their position, but mere disagreement does not warrant reconsideration. Moreover, even if, *arguendo*, the Court misunderstood Plaintiffs' position as they claim, Plaintiffs have failed to point to intervening case law or new evidence that demonstrates that the Court's statement is erroneous and would change the outcome of the Court's decision (as it would not).

**C.**     **The Court Did Not Err in Considering When an Injury Occurs**

Plaintiffs try to convince the Court that the injury occurs at the individual lottery level and cannot be "balanced out." They argue that the Court's decision effectively holds that "[b]eing discriminated against in one place [such as the Upper East Side] and potentially being favored in another place [such as Central Harlem] balance each other out, unless you show that the Upper East Side lies within an "inherently more desirable community district." Ps' MOL at 5. However, this is not what the Court held. All the Court held is that Plaintiffs' own analysis of race-based CD typologies did not show a disparate impact on African American New Yorkers. In

rejecting Plaintiffs' expert's analysis, the Court did not adopt the City's disparate impact methodology or any other methodology.[2]

Moreover, Plaintiffs did not undertake an analysis based upon individual lotteries, neighborhoods, or community districts, yet they ground their attacks on the Court's decision as if they had. Plaintiffs go so far as to attempt to convince this Court that their expert's CD typologies are geographic areas. *See* Ps' MOL at 6, fn 9. This is nonsensical. A geography is a particular area, neighborhood or district that has defined borders on a map. Plaintiffs' CD typologies are not that and are not even the combination of certain geographies. CD typologies are a fictitious concept, created by Plaintiffs' expert by combining lottery data into groups based upon the racial demographics of the community districts in which the lotteries are located, irrespective of the physical location of the lotteries. A CD typology does not have distinct borders and cannot be "mapped" (although lotteries within a CD typology could be located on a map, and that map would show that each CD typology has lotteries from multiple geographic areas).

The case law in support of Plaintiffs' "injury" argument is inapposite for the same reason. Plaintiffs rely upon *Comer v. Cisnerno*, 37 F.3d 775 (2d Cir. 1994), this Court's decision denying Defendant's motion to dismiss, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), and *Spokeo, Inc. v. Robins,* 578 U.S. 330 (2016), for the proposition that the relevant "playing field is one lottery" and that the injury occurs when an applicant is denied housing at a single lottery. *See* Ps' MOL at 8. However, as stated above, Plaintiffs never undertook their analysis on a lottery by lottery basis. Moreover, in *Comer*, Plaintiffs were seeking access to a specific suburban area. This Court's decision on Defendant's initial motion to dismiss in this case was also based upon

---

[2] Nor is the City's analysis one of "balancing out" disparities. The City undertook a citywide analysis as the community preference policy is applied citywide.

pleadings that alleged that Plaintiffs were seeking to move to "neighborhoods of opportunity." Decision at fn 10. However, as this Court explained, and as Plaintiffs do not dispute, "Plaintiffs have abandoned this approach in connection with the motion practice currently before the Court."[3] *Id.* Thus, as Plaintiffs have failed to cite to any case law that necessitates reconsideration, their motion must be dismissed. *See Zhu*, 41 F. Supp. 3d at 343 (denying motion for reconsideration as the movant had failed to identify an "intervening change in controlling law that the Court demonstrably did not consider.")

**D.   Purportedly "Overlooking" the Amicus Brief and Part(s) of Plaintiffs' Reply Brief Does Not Necessitate Reconsideration**

Plaintiffs next argue that the Court's decision "overlooked" the *amicus* brief and part of their reply brief, where they and *amicus curia* argued against the City's purported "separate but equal" approach. Ps' MOL at 9. However, not directly addressing the arguments set forth in an *amicus* brief is not grounds for reconsideration. The Court is not obligated to acknowledge and address each and every argument made by a party, let alone an *amicus curiae*. In any event, Plaintiffs merely block quote the *amicus* brief and their reply papers, improperly attempting to relitigate issues that were already before the Court. *See JLM Couture, Inc.*, 2023 U.S. Dist. LEXIS 42966 *10-11 (denying motion for reconsideration as the movant was merely "reiterat[ing]" the same arguments made in a prior motion).

Finally, even if the Court had not previously considered this argument, it would not change the Court's outcome. The Court did not adopt the City's analysis (which Plaintiffs inaccurately characterize as "separate but equal"), but found that Plaintiffs' analysis based upon

---

[3] It appears that Plaintiffs have now also abandoned their CD typology analysis, as their motion for reconsideration focuses on arguments in support of analysis by community district or by individual lottery.

7

the race-based CD typologies did not demonstrate a disparate impact on African American New Yorkers. Thus, whether the Court "overlooked" this argument attacking the City's analysis is of no consequence and does not serve as grounds for reconsideration.[4]

E.  **The Court's Treatment of the CD Typologies as Fungible and Reliance Upon *Comer v. Ciscneros* was Not Erroneous**

Next Plaintiffs take issue with part of the Court's explanation for why it rejected Plaintiffs' CD typology analysis, namely that Plaintiffs failed to "demonstrate that certain CD typologies are inherently more desirable." Ps' MOL at 11 (quoting Decision). Rather than defending why undertaking the analysis based upon CD typologies was appropriate, Plaintiffs provide an "excuse" for why they failed to rank the CD typologies, claiming that it is impossible to know the subjective desires of an applicant at a particular point in time. This is a classic example of seeking a second bite at the apple, which is not permitted on a motion for reconsideration. *See Analytical Surv., Inc.*, 684 F.3d at 52.

Further, such argument begs the question, if one cannot know how applicants value a particular lottery over another lottery at any point in time, why did Plaintiffs separate the lotteries into groups, let alone groups arranged by racial demographics? By creating the CD typologies, and not providing any objective criteria by which to assess desirability, one must treat each apartment in each CD typology the same. Plaintiffs' acknowledgement that they cannot know why applicants apply to various lotteries supports the City's argument, and the Court's implicit conclusion that each apartment must be treated as fungible.

Plaintiffs' argument that the Court's interpretation of the phrase "locally preferred area" in *Comer v. Cisneros* is incorrect and also lacks merit. While Plaintiffs provide an alternative

---

[4] Moreover, the concept of "separate but equal" addresses segregation, not disparate impact. Plaintiffs' perpetuation of segregation claim remains in the case.

8

interpretation, i.e., that it means "the local area in which the preference has effect," Plaintiffs provide no support for that interpretation. And in fact, in *Comer*, the plaintiffs were seeking access to a particular suburban area, and thus, it is quite likely the Court's interpretation is accurate.

Even if, *arguendo,* Plaintiffs' interpretation were correct it would not necessitate any change in the Court's decision. Plaintiffs have still not demonstrated that the CP policy "filters only a small percentage of minorities to [the area with the CP]." Unlike in *Comer*, where the Plaintiffs sought access to a particular suburban area where a preference was applied, here, the CP policy is applicable wherever affordable housing projects are built across New York City, and there is not a single area where the CP policy is applied.  Consequently, the Court appropriately did not focus on a single CD typology when assessing disparate impact, but looked at the pattern found among the CD typologies. As the Court aptly explained, Plaintiffs "proffer evidence that the Policy bestows advantages and disadvantages on African American New Yorkers seeking affordable housing in a manner commensurate with its impact on applicants from other racial demographic groups." Decision at 16. Plaintiffs cannot and do not dispute that conclusion.

Indeed, Plaintiffs' highlight that their methodology results in such a conclusion by pointing to a hypothetical posed to the City's experts in which a local preference results in Black applicants being awarded all of the units in the 100% Black borough and White applicants being awarded all of the units in the 100% White borough. Plaintiffs attack the City's expert's position that this does not create a disparate impact because each race is getting an equal amount of housing, and boldly conclude that such conclusion of no disparate impact "cannot be correct as a matter of law or policy." Yet, Plaintiffs cite to no law to support their conclusion, and ignore the ample case law relied upon by the City to support its argument that Plaintiffs' methodology is incorrect. Additionally, rather than defending their analysis, they are attacking what they perceive to be the

9

City's analysis, implying that by rejecting their analysis the Court adopted such analysis. However, that is not the case. The Court found that Plaintiffs failed to meet their burden to demonstrate a disparate impact and did not adopt the City's alternative disparate impact methodology. Thus, Plaintiffs have failed to demonstrate any error in the Court's conclusion that in order for Plaintiffs' CD typology approach to potentially be meaningful, Plaintiffs needed to "demonstrate that certain CD typologies are inherently more desirable."

Finally, Plaintiffs' critique of the Court's statement that CP beneficiary status does not "uniformly correlate" to any particular race also fails. Plaintiffs claim that "uniform correlation" is not required, and point to *Connecticut v. Teal,* 457 U.S. 440 (1982), in support. *See* Ps' MOL at 17-18. However, *Connecticut v. Teal* does not speak to this issue whatsoever. That case stands for the proposition that when challenging an employment practice, such as an examination, as having a disparate impact on a protected class, one must study the impact of the practice and not the final outcome (i.e. who is actually hired).

Moreover, the Court was not necessarily opining that "uniform correlation" between CP beneficiary status and race is *required* for there to be a disparate impact, but was stating an observation of Plaintiffs' own analysis. Plaintiffs cannot and do not dispute that fact.

F.     **The Court Applied the Proper Standard to the City Human Rights Law**

Plaintiffs argue that the Court failed to apply the "broadest vision of social justice" as purportedly required by the New York City Human Rights Law when denying Plaintiffs' disparate impact claim under the NYCHRL. *See* Ps' MOL at 14. Plaintiffs' argument implies that the Court found some discrimination but that it did not satisfy the FHA, but that it should satisfy the NYCHRL under this broader standard. However, that is not the case. The Court was clear that under both the FHA and the NYCHRL, a showing of disparate impact was required, and that Plaintiffs failed as a matter of law to make such a showing. Moreover, the Court acknowledged in its decision that the New York Courts "broadly" construe the NYCHRL, and still granted the City summary judgment. Finally, Plaintiffs have pointed to no intervening case law that necessitates reconsideration of the granting of summary judgment to the City on this claim.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that Plaintiffs' motion for reconsideration be denied in its entirety, together with such other and further relief as this Court may seem just, proper and equitable.

Dated:     New York, New York
              June 29, 2023

Respectfully submitted,

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of
  the City of New York
Attorney for Defendant
100 Church Street, Room 5-171
New York, New York 10007
(212) 356-2190

BY:       /s/
        MELANIE V. SADOK
        Assistant Corporation Counsel