UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SHAUNA NOEL and
EMMANUELLA SENAT,

       Plaintiffs,

  -v-                                  No.  15-CV-5236-LTS-KHP

CITY OF NEW YORK,

       Defendant.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

Before the Court is Plaintiffs' motion for reconsideration of the Court's April 28, 2023 Opinion and Order (docket entry no. 970 (the "SJ Opinion")) insofar as it relates to disparate impact liability.  (Docket entry no. 972 (the "Motion")).  Specifically, Plaintiffs request an order modifying the SJ Opinion under Local Rule 6.3—to (a) deny Defendant's cross-motion for summary judgment and (b) grant Plaintiffs' motion for partial summary judgment—on the grounds that the community preference policy ("CP Policy") has a discriminatory effect when subjected to a disparate impact analysis.[1]  Defendant has filed its opposition to the motion for reconsideration (docket entry no. 985 ("Def. Mem.")) and Plaintiffs filed a reply (docket entry no. 988 ("Reply")).  The Court has reviewed thoroughly the parties' submissions.  For the following reasons, Plaintiffs' motion is denied in its entirety.

---

[1]    In their Reply (docket entry no. 988), Plaintiffs also request that the Court, "[i]ndependent of its ultimate determination on the cross-motions in respect to disparate impacts, elaborate on its finding by confirming that plaintiffs demonstrated the existence of material disparate racial impacts at the community-district typology level. . . ." (<u>Id.</u> at 15.)

BACKGROUND

The Court adopts the factual background and relevant procedural history set forth in the SJ Opinion and assumes familiarity with the facts stated therein.[2]

DISCUSSION

"Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." MPD Accessories B.V. v. Urban Outfitters, Inc., No. 12-CV-6501-LTS-KNF, 2014 WL 3439316, at *1 (S.D.N.Y. July 15, 2014) (internal quotation marks and citation omitted). To prevail on a motion for reconsideration under Local Rule 6.3, the movant must point to an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Nguyen v. MaxPoint Interactive, Inc., No. 15-CV-6880-LTS, 2017 WL 3084583, at *1 (S.D.N.Y. May 12, 2017) (quoting Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). A motion for reconsideration does not serve as "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Cohen v. New York City Dep't of Educ., No. 19-CV-3863-LTS-SDA, 2021 WL 2158018, at *2 (S.D.N.Y. May 26, 2021) (quoting Analytical Surv., Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012)). To the contrary, reconsideration is not warranted "[u]nless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court[.]" Id. (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 256 (2d Cir. 1995)).

---

[2]   Plaintiffs' Motion did not take issue with the recitation of facts in the SJ Opinion.

Here, Plaintiffs identify no intervening change of controlling law warranting reconsideration of the SJ Opinion; nor do Plaintiffs identify any new evidence made available; nor do Plaintiffs identify clear error by the Court.  Instead, Plaintiffs identify a number of points of disagreement with the Court's analysis of their disparate impact claims:

**First**, Plaintiffs assert that "the SJ Opinion misapprehended both the concern expressed in Inclusive Communities and how and when 'preexisting racial demographics' of a CD typology come into play."  (Docket entry no. 973 ("Pl. Mem.") at 2-4.)  Specifically, Plaintiffs argue that, in Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc., 576 U.S. 519 (2015), the Supreme Court required Plaintiffs to "point[] to a specific policy as the cause for the racial disparities (and go[] on to prove it)" to support a disparate impact claim under the Fair Housing Act.  (Pl. Mem. at 3.)  Plaintiffs further insist that they "have done exactly what is required" by Inclusive Communities, and the Court's conclusion "that there is merely 'correlat[ion]' between distribution of advantage and disadvantage, on one hand, and "preexisting racial demographics,' on the other, . . . is incorrect."  (Id. (quoting SJ Opinion at 15).)

In so doing, Plaintiffs express a disagreement with the Court's conclusion and merely seek a "second bite at the apple."  Cohen, 2021 WL 2158018, at *2.  In the SJ Opinion, the Court explicitly considered—and rejected—Plaintiff's argument that the CP Policy caused a disparate impact on the basis of race because "applicants would begin with the ability to compete on a level playing field were it not for the [P]olicy" and "[t]he [P]olicy is determinative in taking that level playing field away."  (SJ Opinion at 12 (quoting docket entry no. 928 at 16).)  A motion for reconsideration is not an appropriate tool to rehash this argument.  See Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc., No. 18-CV-12255-LTS-KHP, 2022

WL 4484515, at *1 (S.D.N.Y. Sept. 27, 2022) (denying motion for reconsideration where, as here, "[t]he Court in fact examined and discussed [the same] arguments, in depth, in connection with its resolution of the parties' cross-motions for summary judgment").

**Second**, Plaintiffs present a number of arguments that "the SJ Opinion misapplied controlling law and statutory language and ignored critical evidence, all contributing to the erroneous proposition that distinct disparate impacts can balance each other out." (See Pl. Mem. at 4-14.)  These arguments include:

- "[T]he SJ Opinion was incorrect when it stated that plaintiffs' approach 'conflates the right not to be discriminated against on the basis of race, or another protected status, in the provision of housing with their alleged right to equal competition among all applicants.'"  (Pl. Mem. at 4-5 (quoting SJ Opinion at 16).)

- "The SJ Opinion failed to appreciate when injury occurs" by failing to acknowledge that a "single lottery's playing field is not level in racial terms."  (Id. at 5-9.)

- "The SJ Opinion failed to appreciate case law and evidence that different protected groups can be helped and hurt at the same time without that circumstance immunizing the challenged practice."  (Id. at 9-10.)

- "The 'weighing of injury against advantage' approach is not countenanced by the case law and the idea that all apartments are fungible to an individual is entirely unsupported."  (Id. at 11-12.)

- "Allowing for this 'discrimination-offset' – that is, permitting disparate impacts at the lottery level because they are 'balanced out' in the City overall – is breathtakingly consequential and pernicious."  (Id. at 12-14.)

Not one of these arguments, however, "might reasonably be expected to alter the conclusion reached by the court" (Cohen, 2021 WL 2158018, at *2) because the SJ Opinion did not, in fact, conclude that distinct disparate impacts can "balance each other out."

Contrary to Plaintiffs' assertions (see Pl. Mem. at 12), and to be clear[3], the SJ Opinion's holding did not hinge on the notion that the City could be insulated from liability because African American New Yorkers—the relevant protected class in this case—are both helped and hurt by the CP Policy.  The Court concluded that "Plaintiffs have failed to demonstrate that the Policy causes a disparate impact by race as a matter of law" by failing to "demonstrate that the CP Policy causes an 'adverse impact on a particular minority group.'"  (SJ Opinion at 14 (citation omitted).)  This conclusion was bolstered by Plaintiffs' evidentiary proffers that any "'racial disparities' depend[ed] on the [community-district typology ("CD typology")][4] where the affordable housing project is located."  (Id. (quoting docket entry no. 928 at 26).)  In other words, an individual applicant to a specific affordable housing unit in a specific lottery can expect to be "helped or hurt" by the CP Policy based on the location of the desired unit—not based on their race.[5]  Because "CP Policy beneficiary or non-beneficiary status does not uniformly correlate to any particular race(s)[,]" the SJ Opinion determined that Plaintiffs failed, as a matter of law, to demonstrate that the Policy causes a disparate impact on the basis of

---

[3]   Plaintiffs requested in their Reply that the Court "elaborate[e] on the SJ Opinion's finding on what happens at the CD-typology level [in order to] streamline trial and clarify the record for appeal."  (Reply at 9.)  Here, the Court further explains its conclusion that "Plaintiffs have proffered evidence showing that the advantages and disadvantages of the CP Policy largely correlate to the preexisting racial demographics of the CD typology in which the affordable housing unit is located. . . ."  (SJ Opinion at 15.)

[4]   As explained in the SJ Opinion, a "community district," or "CD," refers to the district in which housing is located; there are 59 CDs in New York City.  (SJ Opinion at 3 & n.5.)

[5]   Critically, Plaintiffs' argument that "the individual's 'missed opportunity' to compete on a level playing field without regard to race in that one lottery is a discrete violation that is completed when it occurs" (Pl. Mem. at 7) does not alter the conclusion.  As the SJ Opinion concluded, there is no disparate impact on an individual competing in a specific lottery on the basis of their race; whether or not that individual benefits from or is disadvantaged by the CP Policy "depend[ed] on the CD typology where the affordable housing project is located."  (SJ Opinion at 14.)

race. (Id. at 16.) It is also for this reason that Plaintiff's assertion that the Court relied on the "erroneous proposition that distinct disparate impacts can balance each other out" (Pl. Mem. at 4) is mistaken.

**Third**, Plaintiffs insist that "the SJ Opinion fails to conduct the independent analysis required by the City Human Rights Law and is inconsistent with its required construction principles." (Pl. Mem. 14-15.) Plaintiffs point to a number of cases indicating that the City Human Rights Law seeks to "meld the broadest vision of social justice with the strongest law enforcement deterrent[,]" and that its amendments "have expressed a very specific vision: a Human Rights Law designed as a law enforcement tool with no tolerance for discrimination in public life." (Pl. Mem. at 14 (quoting Williams v. NYCHA, 61 A.D.3d 62, 68-69 (N.Y. App. Div. 1st Dept. 2009).) Plaintiffs argue that the SJ Opinion could not have "engage[d] in the required process of applying those interpretative principles" because "[i]f it had, it would be seen that the City HRL's 'no tolerance for discrimination' approach is altogether incompatible with allowing continuing and widespread discrimination. . . ." (Id.)

Again, this argument merely expresses a disagreement with the Court and does not identify clear error. As an initial matter, the SJ Opinion explicitly acknowledged that the NYCHRL "is construed more broadly than its federal and state counterparts" and that "New York Courts have held that they are required to construe [the law] broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." (SJ Opinion at 30 (internal quotation marks and citations omitted).) In any event, the SJ Opinion did not "allow[] continuing and widespread discrimination" (Pl. Mem. at 14); the Court concluded that the NYCHRL's broad construction was not implicated because "Plaintiffs have failed to raise a genuine issue of material fact as to whether members of the protected class at issue . . .

are disproportionately impacted by the CP Policy" (SJ Opinion at 30-31). Therefore, Plaintiffs have failed to "point to controlling decisions . . . that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court" and justify reconsideration. Cohen, 2021 WL 2158018, at *2.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reconsideration is denied in its entirety. The final pretrial conference in this case is scheduled for May 3, 2024, at 10:30 a.m. This Memorandum Order resolves docket entry no. 972.

SO ORDERED.

Dated: December 21, 2023
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge